## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NORTHWESTERN CORPORATION, | ) | Case No. 03-12872 (KJC) |
| | ) | |
| Debtors. | ) | |
| ——————————————— | ) | |
| | ) | |
| LAW DEBENTURE TRUST COMPANY | ) | C.A. No. 05-603 (JJF) |
| OF NEW YORK, | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NORTHWESTERN CORPORATION, | ) | |
| | ) | |
| Appellee. | ) | |
| ——————————————— | ) | |

## APPELLEE NORTHWESTERN CORPORATION'S ANSWERING BRIEF

Victoria W. Counihan (No. 3488)
Sandra G. M. Selzer (No. 4283)
GREENBERG TRAURIG, LLP
The Nemours Building
1007 North Orange Street
Suite 1200
Wilmington, DE 19801
(302) 661-7000

Dated: February 2, 2007

ATTORNEYS FOR APPELLEE,
NORTHWESTERN CORPORATION

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ........................................................................ 1

II.   STATEMENT OF APPELLATE JURISDICTION ............................................ 2

III.  STATEMENT OF THE ISSUES PRESENTED .................................................. 2

IV.   STATEMENT OF THE APPLICABLE STANDARD OF REVIEW ................. 2

V.    STATEMENT OF THE CASE.......................................................................... 5

VI.   ARGUMENT .................................................................................................. 19

      A.    The Bankruptcy Court's Findings In The Fee Order That Appellant Did Not Substantially Contribute To The Debtor's Case Should Be Affirmed. ............................................. 19

      B.    The Bankruptcy Court's Fee Order Should Be Affirmed Because Appellant Fails To Meet Its Burden To Demonstrate That The Bankruptcy Court Abused Its Discretion In Not Applying Appellant's Judicial Estoppel Argument. ....................................................................................... 29

      C.    The Bankruptcy Court's Fee Order Should Be Affirmed Because The Implied Covenant Of Good Faith And Fair Dealing Does Not Apply................................................................. 35

VII.  CONCLUSION ................................................................................................ 39

# FEDERAL CASES

Anderson v. City of Bessemer City, N.C.,
  470 U.S. 564 (1985)................................................................................. 3

Estades-Negroni v. Assocs. Corp. of North America,
  377 F.3d 58 (1st Cir. 2004)..................................................................... 4

Grenier v. Cyanamid Plastics, Inc.,
  70 F.3d 667 (1st Cir. 1995)..................................................................... 5

Guthrie v. Lady Jane Collieries, Inc.,
  722 F.2d 1141 (3d Cir. 1983)................................................................. 4

Hannah v. Philadelphia Asbestos Co.,
  743 F.2d 996 (3d Cir. 1984)................................................................... 4

In re Allegheny Intern., Inc.,
  954 F.2d 167 (3d Cir. 1992)............................................................ 3, 19

In re Anes,
  195 F.3d 177 (3d Cir. 1999)................................................................... 3

In re Buckhead America Corp.,
  161 B.R. 11 (Bankr. D. Del. 1993) ...................................................... 21

In re Celotex Corp.,
  227 F.3d 1336 (11th Cir. 2000) ..................................................... 3, 19

In re Chambers Dev. Co., Inc.,
  148 F.3d 214 (3d Cir. 1998)................................................................. 31

In re Coastal Plains, Inc.,
  179 F.3d 197 (5th Cir. 1999) ............................................................... 30

In re Consol. Banc Shares,
  785 F.2d 1249 (5th Cir. 1986) ........................................................ 3, 27

In re Essential Therapeutics, Inc.,
  308 B.R. 170 (Bankr. D. Del. 2004) .................................................... 28

In re EXDS, Inc.,
  316 B.R. 817 (Bankr. D. Del. 2004) .................................................... 31

In re Granite Partners, L.P.,
  213 B.R. 440 (Bankr. S.D.N.Y. 1997).................................................. 21

In re IT Group, Inc.,
  448 F.3d 661 (3d Cir. 2006)........................................................... 36, 38

In re Nosek,
  Case No. 06-40170, 2006 WL 3262629 (D. Mass. Nov. 13, 2006) ........................... 36

In re O'Brien,
    188 F.3d 116 (3d Cir. 1999)..................................................................... 4, 30

In re PWS Holding Corp.,
    Case No. 98-212, 2002 WL 32332066 (Bankr. D. Del. Jan. 30, 2002).............. 25, 26

In re Revere Cooper and Brass Incorporated,
    60 B.R. 892 (Bankr. S.D.N.Y. 1986)......................................................... 27

In re The Columbia Gas System,
    224 B.R. 540 (Bankr. D. Del. 1998) .......................................................... 21, 27

In re Trans World Airlines, Inc.,
    261 B.R. 103 (Bankr. D. Del. 2001) .......................................................... 32

In re UNR Indus.,
    173 B.R. 149 (N. D. Ill. 1994) ................................................................. 4, 35

In re Worldwide Direct, Inc.,
    334 B.R. 112 (Bankr. D. Del. 2005) .......................................................... 22

Klein v. Stahl GMBH & Co.,
    185 F.3d 98 (3d Cir. 1999)..................................................................... 31

Lebron v. Mechem Fin., Inc.,
    27 F.3d 937 (3d Cir. 1994)...................................................................... passim

Matter of Baldwin-United Corp.,
    79 B.R. 321 (Bankr. S.D. Ohio 1987) ........................................................ 27

Matter of Cassidy,
    892 F.2d 637 (7th Cir. 1990) ................................................................... 30

McNemar v. Disney Store, Inc.,
    91 F.3d 610 (3d Cir. 1996), cert. denied, 519 U.S. 1115 (1997) ........................ 4, 30

Montrose Med. Group Participating Sav. Plan v. Bulger,
    243 F.3d 773 (3d Cir. 2001)..................................................................... 4, 30

New Hampshire v. Maine,
    532 U.S. 742 (2001)............................................................................. 31

Okmyansky v. Herbalife Int'l of America, Inc.,
    415 F.3d 154 (1st Cir. 2005)................................................................... 38

Oneida Motor Freight, Inc. v. United Jersey Bank,
    848 F.2d 414 (3d Cir. 1988)..................................................................... 31

Persson v. Scotia Price Cruises, Ltd.,
    330 F.3d 28 (1st Cir. 2003)..................................................................... 4

Ryan Operations G.P. v. Santiam-Midwest Lumber Co.,
    81 F.3d 355 (3d Cir. 1996)..................................................................... 30, 31

Salmon v. Laser Plot, Inc.,
    189 B.R. 559 (D. Mass. 1995) ................................................................ 4, 35

Texas Gen. Petroleum Corp. v. Leyh,
    52 F.3d 1330 (5th Cir. 1995) ................................................................ 4, 35

United States v. U.S. Gypsum Co.,
    333 U.S. 364 (1948)................................................................................ 3

Zeisler & Zeisler, P.C. v. Prudential Ins. Co. (In re JLM, Inc.),
    210 B.R. 19 (2nd Cir. B.A.P 1997)........................................................ 4, 19

### STATE CASES

Aspen Advisors LLC v. United Artists Theatre Co.,
    843 A.2d 697 (Del. Ch. 2004) ............................................................... 36, 38

Carma Developers (California), Inc. v. Marathon Dev. California,
    826 P.2d 710 (Cal. 1992) ...................................................................... 38

Dave Greytak Enters., Inc. v. Mazda Motors of Am., Inc.,
    622 A.2d 14 (Del. Ch. 1992), aff'd, 609 A.2d 668 (Del. 1992) ........................ 37, 38

Kelly v. McKesson HBOC, Inc.,
    Case No. 99c-09-265 (WCC), 2002 WL 88939
    (Del. Super. Ct. Jan. 17, 2002).............................................................. 36, 38

Moore Bus. Forms, Inc. v. Cordant Holdings Corp.,
    Case No. 13911, 1995 WL 662685 (Del. Ch. Nov. 2, 1995)........................... 37, 38

Shenandoah Life Ins. Co. v. Valero Energy Corp.,
    Case No. 9032, 1988 WL 63491 (Del. Ch. June 21, 1988) .............................. 37, 38

### FEDERAL STATUTES

11 U.S.C. § 503(b)(3)(D) ........................................................................... 20

11 U.S.C. § 503(b)(4) ............................................................................... 20

11 U.S.C. § 503(b)(5) ............................................................................... 20

28 U.S.C. § 158(a)(1)................................................................................. 2

### FEDERAL RULES

FED. R. BANKR. P. 8013 ............................................................................. 3

FED. R. BANKR. P. 8001 ............................................................................. 2

### OTHER AUTHORITIES

COLLIER ON BANKRUPTCY,
    503.12[4], 503.11[2] (15th ed. rev. 2006)............................................... 20, 27

JAMES WM. MOORE, ET AL., MOORE'S FEDERAL PRACTICE,
    § 206.03[3] (3d. ed. (2006) ................................................................. 3

NorthWestern Corporation, the reorganized debtor and appellee in the above-captioned appeal (**"NorthWestern," "Appellee"** or **"Debtor"**), hereby files its response to the *Opening Brief of Appellant Law Debenture Trust Company of New York, as Indenture Trustee* (**"Law Debenture"** or **"Appellant"**), in support of Appellant's appeal of the *Order Granting in Part and Denying in Part the Request for Payment of Administrative Expenses pursuant to 11 U.S.C. § 503 by Law Debenture Trust Company of New York as successor trustee for the 8.45% Cumulative Preferred, Series A* (the **"Fee Order"**) which was entered by the United States Bankruptcy Court on July 5, 2005. App. 33. NorthWestern respectfully states as follows:

## I.
## PRELIMINARY STATEMENT

Appellant has not met its burden to prove that the Bankruptcy Court abused its discretion or erroneously applied the law in entering the Fee Order. Moreover, the factual determinations of the Bankruptcy Court are entitled to deference and should not be reversed.

Appellant has not proved that the Bankruptcy Court committed clear error in determining that Appellant did not make a substantial contribution to the Debtor's case. Indeed, the Bankruptcy's Court's determination is well supported by numerous examples in the record of Appellant's efforts of hindering reorganization and acting solely in its own interest. Moreover, Appellant has failed to demonstrate that the Bankruptcy Court abused its discretion in dismissing Appellant's argument that the Debtor should be judicially estopped from asserting its legal right to have Appellant's request for fees and expenses reviewed subject to the "substantial contribution" standard of section 503(b) of title 11 of the United States Code (the **"Bankruptcy Code"**). In reality, in dealing with Appellant's proposed fees and expenses, the parties followed the procedures set forth in the Debtor's plan of reorganization. Finally, Appellant has failed to prove why this Court should consider its

additional argument that the Debtor's exercise of its legal right to object to Appellant's fee and expense requests is somehow a breach of some implied covenant of good faith and fair dealing. The fact is no reading of the law would preclude the Debtor from acting in accordance with the terms of its plan, and no covenant of good faith could divest the Bankruptcy Court from its power to decide Appellant's Fee Application (as defined below). Because Appellant has not met is burden in this appeal, this Court should affirm the Fee Order without further consideration.

**II.**
**STATEMENT OF APPELLATE JURISDICTION**

This Court has jurisdiction to hear this appeal pursuant to Section 13.1 of the Second Amended and Restated Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the **"Plan"**), 28 U.S.C. § 158(a)(1) and Rule 8001 of the Federal Rules of Bankruptcy Procedure.

**III.**
**STATEMENT OF THE ISSUES PRESENTED**

A.     Whether the Bankruptcy Court's findings in the Fee Order that Appellant did not substantially contribute to the Debtor's case should be affirmed.

B.     Whether the Bankruptcy Court's Fee Order should be affirmed because Appellant fails to meet its burden to demonstrate that the Bankruptcy Court abused its discretion in not applying the Appellant's judicial estoppel argument.

C.     Whether the Bankruptcy Court's Fee Order should be affirmed because the Bankruptcy Court accurately followed the law in not applying Appellant's argument concerning the implied covenant of good faith and fair dealing to the Plan.

**IV.**
**STATEMENT OF THE APPLICABLE STANDARD OF REVIEW**

Appellant[1] seeks to have this Court affirmatively determine that the Bankruptcy Court erred by entering an order granting in part and denying in part the

---

[1]     Capitalized terms used herein but not defined shall have the meanings ascribed to them in the Statement of the Case section *infra* or, if not defined therein, shall have the meanings ascribed to them in the Plan. App. 16.

2

Appellant's *Request for Payment of Administrative Expenses pursuant to 11 U.S.C. § 503 by Law Debenture Trust Company of New York as Successor Trustee for the 8.45% Cumulative Preferred, Series A* (**"Administrative Expense Claim"**), where the denial was based on an analysis of section 503(b) of the Bankruptcy Code, made applicable pursuant to the terms of the Debtor's confirmed Plan.

      With respect to Appellant's specific arguments on appeal, the standards of review are as follows. On appeal, a bankruptcy court's factual findings on core matters, such as determination of substantial contribution to a debtor's estate pursuant to section 503 of the Bankruptcy Code, are reviewed for clear error, while its legal conclusions are reviewed *de novo*. See FED. R. BANKR. P. 8013; In re Anes, 195 F.3d 177, 180 (3d Cir. 1999). The Third Circuit has held that "[t]he inquiry concerning the existence of a substantial contribution is one of fact, and it is the bankruptcy court that is in the best position to perform th[is] necessary fact finding task." See Lebron v. Mechem Fin., Inc., 27 F.3d 937, 946 (3d Cir. 1994) (citing In re Consol. Banc Shares, 785 F.2d 1249, 1253 (5th Cir. 1986) "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." In re Allegheny Intern., Inc., 954 F.2d 167, 173 (3d Cir. 1992) (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)). "Even if the appellate court believes that it would have found differently, so long as the trial court's factual finding is plausible, the appellate court may not reverse it." JAMES WM. MOORE, ET AL., MOORE'S FEDERAL PRACTICE, § 206.03[3] (3d. ed. 2006) (citing Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573-74 (1985).

      Additionally, courts review a decision to allow attorneys fees under section 503(b)(4) of the Bankruptcy Code for an abuse of discretion. See, e.g., In re Celotex Corp., 227 F.3d 1336, 1338 (11th Cir. 2000); Pierson & Gaylen v. Atwood (In re Consol. Banc

3

Shares, Inc.), 785 F.2d at 1252 (fee awards are subject to abuse of discretion standard of review); Zeisler & Zeisler, P.C. v. Prudential Ins. Co. (In re JLM, Inc.), 210 B.R. 19, 23 (2d Cir. B.A.P. 1997) (same). A court "abuses its discretion when its ruling is founded on an error of law or a misapplication of law to the facts." Montrose Med. Group Participating Sav. Plan v. Bulger, 243 F.3d 773, 780 (3d Cir. 2001) (citing In re O'Brien, 188 F.3d 116, 122 (3d Cir. 1999)). Accordingly, this Court must affirm the Bankruptcy Court's order on Appellant's request for fees and expenses unless and only unless Appellant proves that the Bankruptcy Court abused its discretion or erroneously applied the law.

Decisions regarding whether the equitable doctrine of judicial estoppel should be applied are also reviewed for abuse of discretion. McNemar v. Disney Store, Inc., 91 F.3d 610, 613 (3d Cir. 1996), cert. denied, 519 U.S. 1115 (1997). Decisions regarding whether the implied covenant of good faith and fair dealing applies to a plan of reorganization and whether a contract is ambiguous such that the implied covenant of good faith and fair dealing should be invoked are questions of law that are therefore reviewable by this Court de novo. See Salmon v. Laser Plot, Inc., 189 B.R. 559, 561 (D. Mass. 1995).[2]

Finally, it is a well settled principle of appellate procedure that an appellate court can affirm a judgment on any ground revealed by the record. Hannah v. Philadelphia Asbestos Co., 743 F.2d 996, 1001 (3d Cir. 1984); Guthrie v. Lady Jane Collieries, Inc., 722 F.2d 1141, 1145, n.1 (3d Cir. 1983). See also Estades-Negroni v. Assocs. Corp. of North America, 377 F.3d 58, 62 (1st Cir. 2004) ("We may affirm the district court's decision on any grounds supported by the record"); Persson v. Scotia Price Cruises, Ltd., 330 F.3d 28, 31 (1st Cir. 2003) ("We may affirm the judgment on any grounds revealed by the record"); Grenier

---

[2]    See, e.g., Matter of Texas Gen. Petroleum, Corp., 52 F.3d 1330, 1335 (5th Cir. 1995); In re UNR Indus., Inc., 173 B.R. 149, 157 (N.D. Ill. 1994) (and cases cited therein). The determination whether a contract is ambiguous or unambiguous is a question of law, see ITT Corp. v. LTX Corp., 926 F.2d 1258, 1261 (1st Cir. 1991), requiring this Court to review de novo the Bankruptcy Court's conclusion on that issue.

v. Cyanamid Plastics, Inc., 70 F.3d 667, 671 (1st Cir. 1995) ("An appellate panel is not restricted to the district court's reasoning but can affirm a summary judgment on any independently sufficient ground"). Because this Court may affirm the Bankruptcy Court's decision on any ground apparent in the record, Appellant must prevail on each of the three arguments it sets forth for reversal -- that the Bankruptcy Court: (a) erred in not applying the doctrine of judicial estoppel; (b) erred in its determination that Appellant did not substantially contribute to the Debtor's estate; and (c) erred in determining that the Debtor did not breach any implied covenant of good faith and fair dealing which may (or may not) attach to the Debtors' Plan. As the record and a *de novo* review of the law clearly support (1) the Bankruptcy Court's refusal to apply the doctrine of judicial estoppel, (2) the conclusion that Appellant did not substantially contribute to the Debtors' estate, and (3) the conclusion that the Plan allowed the Debtor to object to Appellant's fees and expenses as it did, the Bankruptcy Court's order on Appellant's Administrative Expense Claim should be affirmed.

## V.
## STATEMENT OF THE CASE

On September 14, 2003 (the **"Petition Date"**), NorthWestern filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. NorthWestern and its direct and indirect energy subsidiaries comprise one of the largest providers of electricity and natural gas in the upper Midwest and Northwest regions of the United States serving customers throughout Montana, South Dakota and Nebraska.

An Official Committee of Unsecured Creditors was appointed by the Office of United States Trustee on September 30, 2003 (the **"Committee"**). On or about February

20, 2004, the Appellant was appointed as a member of the Committee, as successor to Bank

of New York.  App. 1.[3]

### The QUIPS Indenture

Appellant is the successor trustee to the Bank of New York under an

Indenture dated November 1, 1996, as amended (the **"Indenture"**), pursuant to which the

Montana Power Company (**"Montana Power"**) issued certain unsecured 8.5% Junior

Subordinated Debentures (**"Debentures"**) to Montana Capital I Trust (the **"Trust"**) in order

to raise capital.  See App. 27, p. 2.  Simultaneously with the issuance of the Debentures, the

Trust issued 8.45% Cumulative Quarterly Income Preferred Securities, Series A

(the **"QUIPS"**), which were sold on the public market.  Id.  On or about November 15, 2002,

NorthWestern, through a series of transactions, ultimately assumed the obligations of

Montana Power Company under the Debentures and the Indenture.  Id.  The Indenture made

clear that the Debentures underlying the QUIPS were junior and were unsecured.  Id.

### The QUIPS Litigation

On April 16, 2004, while still a member of the Committee, Appellant and one

of the largest QUIPS holders, Magten Asset Management Corporation (**"Magten"**), filed an

adversary complaint (the **"Complaint"**) initiating litigation against NorthWestern (the

**"QUIPS Litigation"**), asserting that a November 2002 transfer of certain Montana assets and

liabilities from a NorthWestern subsidiary, Clark Fork & Blackfoot LLC (**"Clark Fork"**), to

NorthWestern (the **"Going Flat Transaction"**) was a fraudulent conveyance, and seeking to

avoid the transfer and thereby remove the Montana assets and liabilities from the Debtor's

estate to the harm of all the Debtor's other creditors.  App. 2.  The Bankruptcy Court

specifically ruled that Magten and Appellant did not have standing to pursue their claims

---

[3]      Exhibit references related to items identified in NorthWestern's Appendix, filed
contemporaneously herewith, are referred to herein as "App. ___."

against NorthWestern unless they could prove that the release of Clark Fork's obligations had been obtained by fraud. App. 2. As a result of having brought the QUIPS Litigation, Appellant and Magten were removed from the Committee by the Office of the United States Trustee, effective May 6, 2004. App. 4.

In the Bankruptcy Court's August 20, 2004 opinion granting in part NorthWestern's motion to dismiss the Complaint, Judge Case held that in order to pursue a recovery, Appellant would need to establish that it was a creditor of Clark Fork and thus prove under applicable law that the release of Clark Fork, as obligors on the QUIPS, given in connection with the Going Flat Transaction was obtained through actual fraud or as part of a fraudulent scheme. App. 14. On September 22, 2005, this Court withdrew the reference in the QUIPS Litigation and the case was assigned Civil Action No. 04-1494-JJF in the United States District Court for the District of Delaware. App. 24.

### Appellant's Attempts to Thwart Debtor's Plan of Reorganization

Appellant not only vigorously pursued the QUIPS Litigation seeking to remove valuable estate assets, but as part of its overall scheme to derail the Debtor's confirmation, it relentlessly challenged NorthWestern in every aspect of its reorganization efforts. On May 17, 2004, the Debtor filed its First Amended Disclosure Statement (the **"First Disclosure Statement"**), App. 7, in support of its First Amended Plan of Reorganization (the **"First Amended Plan"**), App. 5. Appellant objected to the Debtor's First Disclosure Statement, App. 3, and confirmation of the First Amended Plan, App. 10, 11. This was Appellant's first public attempt to thwart NorthWestern's reorganization. Wilmington Trust Company (**"Wilmington Trust"**), the indenture trustee for the Subordinated Debt Securities Indenture dated August 1, 1995 (the **"TOPrS Indenture"**) and Harbert Management Corporation (**"Harbert"**), the largest holder of the TOPrS Notes, among others, also objected to the First Amended Plan. App. 8, 9. Pursuant to the First

Amended Plan, the holders of TOPrS Notes and the holders of QUIPS Notes would each have received their Pro Rata share of 2% of New Common stock to be issued to creditors in exchange for their claims if they accepted the First Amended Plan. App. 6, § 4.8(c).

Thereafter, Wilmington Trust and Harbert entered into negotiations with the parties in interest regarding their objections to the First Amended Plan, which culminated in a settlement that included Wilmington Trust's and Harbert's support of the Plan. See App. 16. The settlement was incorporated into the terms of the Plan. Neither Appellant nor Magten participated in these negotiations related to their objections to the First Amended Plan. As a result of Wilmington Trust's and Harbert's efforts, the Plan increased the overall recovery not only to the holders of TOPrS Notes, but also to the holders of QUIPS Notes, by 6 %. Id., § 4.8. Moreover, as noted in the Confirmation Order (as defined below), "but for the settlement being offered, the holders of TOPrS and QUIPS would not be entitled to a distribution because under the express terms of the TOPrS Indenture and the QUIPS Indenture, the TOPrS and QUIPS claims are subordinated to the claims of Class 7," which was a senior class of claims that did not receive full recovery under the negotiated Plan. App. 22, p. 34.[4]

As part of the overall settlement of the objection of Wilmington Trust and Harbert and as consideration for their support of the Plan, NorthWestern agreed to pay $2.25 million in fees to Wilmington Trust, as indenture trustee, and Harbert, which agreement was set forth in Section 5.18 of the Plan. App. 16, § 5.18. For its fees in excess of $2.25 million, the Plan reserved the right for Wilmington Trust to either: (i) seek reimbursement of such

---

[4]    As noted by NorthWestern in its Memorandum of Law in Further Support of Confirmation of the Debtor's Second Amended and Restated Plan of Reorganization under Chapter 11 of the Bankruptcy Code, "Although it is clear that Class 8(a) and Class 8(b) subordinated debtholders have no legal right to receive or retain any property under the Plan, the Plan nevertheless provides value to holders of TOPrS and QUIPS through a heavily negotiated settlement which resulted in a consensual intercreditor sharing agreement whereby the senior unsecured creditors in Class 7 share a portion of the enterprise value of the Reorganized Debtor with junior subordinated unsecured creditors." App. 13, pp. 1-2.

fees and expenses by submitting an application to the Bankruptcy Court pursuant to section 503(b) of the Bankruptcy Code; or (ii) be paid out of the distributions received by Wilmington Trust on behalf of the TOPrS Class 8(a) Claims, giving effect to the charging lien granted under the TOPrS Indenture. Id. In accordance with that provision, Wilmington Trust exercised its Indenture Trustee Charging Lien for its fees in excess of the negotiated amount approved by the Plan. App. 25, p. 3, n.4. As a result, 55,640 shares allocated to holders of Allowed Class 8(a) Claims were issued to the Depository Trust Company for credit to Wilmington Trust. Id. The uncontroverted statement on the record at the May 3, 2005 hearing in this case was that Wilmington Trust "did indeed exercise its charging lien that reduced the distribution to the TOPrS by approximately a million dollars in value." App. 32, Tr. p. 151.

Despite the benefits secured by the negotiations, Appellant continued to challenge the Plan. In fact, although the negotiations resulted in an increased recovery for the TOPrS that was also offered to the holders of QUIPS Notes (provided they accepted Option 1), the fact that the recovery being granted to the QUIPS was essentially a gift from the holders of the senior Class 7 claimants, and the Plan's express provision for the holders of QUIPS Notes to elect an alternative option and choose to continue the QUIPS Litigation, Appellant continued to object to the Plan. Appellant also filed an emergency motion seeking to adjourn the confirmation hearing to review the amendment to the Plan because of the settlement with Wilmington Trust and Harbert, which settlement was offering the QUIPS an increased distribution. App. 12. The Bankruptcy Court was not derailed by Appellant's efforts and denied Appellant's request. App. 25, p. 6; App. 19, Tr. p. 30.

The Bankruptcy Court also overruled Appellant's next attempt to interfere with confirmation -- Appellant's objection to the *Second Amended and Restated Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code for the Plan of Reorganization*

9

*for the Debtor*. App. 15, 17. As the Debtor proceeded to resolicit its improved Plan

providing added value to the TOPrS and QUIPS, Appellant filed both a supplemental

objection to confirmation of the Plan and an objection to the Debtor's motion to enter into

agreements for an exit financing facility, to pay fees and expenses and incur indemnification

obligations in connection with that financing facility (the **"Exit Financing"**). App. 21;

App. 18. Appellant did not urge the QUIPS holders to vote in favor of the Plan. It instead

pressed forward with its and Magten's objections to the Plan at the confirmation hearing.

App. 20. The Bankruptcy Court overruled Appellant's and Magten's objections to the Plan

and objections to the Exit Financing and, after a contested evidentiary hearing, on October

19, 2004, entered an order confirming NorthWestern's Plan (the **"Confirmation Order"**).

App. 22. The effective date under such Plan occurred on November 1, 2004 (the **"Effective**

**Date"**). <u>See</u> App. 25, p. 1. Contrary to Appellant's assertions, it did nothing to make the

terms of the Plan any more favorable.[5]

### Terms of the Plan

Section 4.8 of the Debtor's Plan explains the treatment to be provided under

the Plan to the holders of Unsecured Subordinated Note Claims, including TOPrS Notes in

Class 8(a) and QUIPS Notes in Class 8(b). App. 16, § 4.8. As the Plan provides, each holder

of a Class 8(b) Claim represented by QUIPS Notes who accepted or rejected the Plan could

opt to receive in full satisfaction, settlement, release, extinguishment and discharge of such

Claim either, but not both: (a) a Pro Rata Share of 505,591 shares of New Common Stock

(such 505,591 shares representing 1.4% of the New Common Stock to be issued and

outstanding on the Effective Date prior to any dilution resulting from shares of New

Common Stock issued pursuant to the New Incentive Plan and exercise of the Warrants), plus

---

[5]    In fact, not only did Appellant object to the Plan but it also filed a complaint along with Magten
seeking to revoke the Confirmation Order and for breach of fiduciary duty. <u>See</u> App. 25, p. 13-14; App.
28, p. 5-7; (Adversary Case No. 05-50866).

Warrants exercisable for an additional 2.3% of New Common Stock (**"Option 1"**) or

(b) a Pro Rata Share of recoveries, if any, upon resolution of the QUIPS Litigation (**"Option 2"**). Id. The Plan further provides that the claims of QUIPS holders who elected Option 2 would be treated as Class 9 General Unsecured Claims, subject to the estimation and reserves for Disputed Claims, with the distribution to those who elected Option 2 to be made, if at all, only upon entry of a final order resolving the QUIPS Litigation. Id., § 4.8(b)(ii).

The Plan and Confirmation Order provided for the payment of fees and expenses of Indenture Trustees as follows:

> On the Effective Date, the Reorganized Debtor will pay the Indenture Trustees' Fees and Expenses in full and in Cash, in an amount to be agreed upon among the Debtor and each of the Indenture Trustees. <u>In the event that the parties cannot reach agreement on the amount thereof</u>, any disputed amount shall be determined by the Bankruptcy Court, pursuant to Section 503 of the Bankruptcy Code, and in accordance with the terms of the applicable Indenture.

App. 16, § 5.18; App. 22, ¶ 16 (emphasis added).[6]

The Plain language of the Plan clearly contemplates and provides for the possibility that the Debtor and Appellant may not agree on fees and expenses. Section 5.18 of the Plan also expressly reserves the rights of Indenture Trustees to exercise their charging liens:

> If the fees and expenses of the respective Indenture Trustees are not reimbursed in full by the Debtor, then any deficiency may be paid out of the distributions received by the respective

---

[6]    The applicable QUIPS Indenture, at Section 907, provides for NorthWestern to:

> except as otherwise expressly provided herein, reimburse the Trustee upon its request for all reasonable expenses, disbursements and advances reasonably incurred or made by the Trustee in accordance with any provision of this Indenture (including reasonable compensation and the expenses and disbursements of its agents and counsel), except to the extent that any such expense, disbursement or advance may be attributable to the Trustee's negligence, willful misconduct or bad faith...

App. 16.

Indenture Trustee on behalf of their respective class claimants.

App. 16, § 5.18.  None of these Plan provisions are ambiguous.

### Appellant's Requests for Fees and Expenses

On November 1, 2004, the Appellant provided NorthWestern with copies of the invoices for which it sought reimbursement.[7]  App. 26, ex. B.  On or about November 9, 2004, NorthWestern responded to the Appellant's request for reimbursement of fees and expenses (the **"November 9 Letter"**).  App. 26, ex. B.  In the November 9 Letter, NorthWestern advised Appellant that NorthWestern disputed the fees and expenses requested.  Moreover in the November 9 Letter, NorthWestern indicated that Appellant "did not make a 'substantial contribution' in NorthWestern's Chapter 11 case such that any fees and expenses incurred by or on behalf of Law Debenture should be allowed pursuant to Section 503 of the Bankruptcy Code." Id., ex. B.

In response to the November 9 Letter, on November 10, 2004, Appellant informed NorthWestern that it was exercising its Indenture Trustee Charging Lien and demanded that the full amount of all distributions to Class 8(b) holders be put immediately in the name of Appellant in order to effectuate the exercise of such charging lien.[8] Id., ex. A.

In a letter dated November 15, 2004, NorthWestern reiterated that "the activities of Law Debenture did not add to or benefit the bankruptcy estate." Id., ex. C.

---

[7]    As noted on the record at the May 3, 2005 hearing in this case, Appellant had also filed an unsecured proof of claim in this case for Appellant's fees and expenses.  See App. 32, Tr. p. 161; Ex. 83.  The Plan classified general unsecured claims in Class 9 and established a Class 9 Disputed Claims Reserve. App. 16, §§ 4.9, 7.5.

[8]    In connection with Distribution to holders of Allowed Class 8(b) Claims under Section 4.8(b) of the Plan, on or about December 23, 2004, mindful of its obligations to deliver shares of Common Stock and Warrants to holders of Class 8(b) claims who elected, or were deemed to have elected, Option 1 under Section 4.8(b) of the Plan and Appellant's exercise of its Indenture Trustee Charging Lien, NorthWestern authorized its transfer agent, LaSalle Bank National Association, to transfer (i) physical stock certificates issued in the name of "Law Debenture Trust Company of New York" for 136,965 shares of Common Stock and (ii) physical warrant certificates in the name of "Law Debenture Trust Company of New York" for 254,241 Warrants to purchase shares of Common Stock, pursuant to the Indenture Trustee Charging Lien under Section 5.18 of the Debtor's Plan. See App. 25, p.5.

Appellant responded in a letter dated November 23, 2004. Id., ex. D. As in its previous correspondence, Appellant failed to provide any additional information regarding its fees and expenses, in particular, whether its actions substantially contributed to the Debtor's case, nor did Appellant contest the applicability of section 503 of the Bankruptcy Code.

On or about December 1, 2004, the Appellant filed its *Request for Payment of Fees and Reimbursement of Expenses Pursuant to the Debtor's Plan of Reorganization and Applicable Trust Indenture* (the **"Fee Application"**). App. 23. In the Fee Application, Appellant sought reimbursement of $1,025,070.36 in fees and expenses which it alleged to have incurred in the Debtor's case. Id. The Fee Application included $828,511.00 for professional fees, $129,564.87 for "extraordinary fees" of officers of Law Debenture, $21,994.49 for expenses and $45,000 for an annual administration fee. Id. Appellant separated the professional services included in its Fee Application into the following categories: (a) communications with QUIPS holders and general trust indenture administration; (b) participation on the Committee; (c) review and analysis of general bankruptcy matters; (d) preparation of proofs of claim; (e) bankruptcy litigation; and (f) plan and disclosure statement matters, although the Fee Application did not provide an analysis of which time entries corresponded to each category. Id.

In letters dated November 30 and December 21, 2004 (the **"November 30 Letter"** and the **"December 21 Letter,"** respectively), NorthWestern confirmed that it intended to comply with the terms of the Plan and pay reasonable and necessary legal fees and expenses of Appellant pursuant to section 503 of the Bankruptcy Code and in accordance with the terms of the QUIPS Indenture. App. 26, exs. E & F. In both the November 30 Letter and the December 21 Letter, NorthWestern requested a detailed analysis of the services provided in each of the categories provided by Appellant, including breakouts of the detailed time descriptions by category and professional service provider. Id. Specifically,

13

the Debtor, in its November 30 Letter, requested additional information segregating Appellant's fees and expenses. Id., ex. E. The Debtor requested that "all fees and expenses related to the QUIPS Litigation be segregated from fees and expensed reasonably and necessarily incurred in this case by Law Debenture in the ordinary course." Id. In its December 21 Letter, the Debtor reiterated its request for this additional information. Id., ex. F. The Debtor noted while Appellant provided the summary categories as described it its Fee Application, such Fee Application "failed to provide any detailed analysis and/or back-up related to the purpose of the actual services delivered." Id. In its December 21 Letter, the Debtor indicated that "[u]pon receipt of the specific detailed information…the Debtor timely will conduct a reasonableness review of such fees and expenses." Id. As stated in its letters, without additional information, the Debtor was unable to determine whether Appellant's analysis and segregation of is fees and expenses was reasonable. Both the November 30 Letter and the December 21 Letter made clear NorthWestern's position that it did not and would not "agree to pay the fees and expenses incurred by Law Debenture in connection with the QUIPS Litigation and related contested bankruptcy motion practice and litigation."

Appellant responded to the December 21 Letter on December 30, 2004 by providing certain additional information requested by NorthWestern, namely an Excel spreadsheet breaking down each professional's time entry into one of six categories. App. 31, ex. 1 (Affidavit of Francis Morrissey, Ex. C). This reorganization of the information in the Fee Application still did not provide NorthWestern with all of the detailed analysis, back-up and segregation that it requested in its November 30 and December 21 Letters. The break down again failed to discern specific fees and expenses related to acts which Appellant alleged provided an actual benefit to the Debtor from fees and expenses which would have been incurred by Appellant under any circumstances and also from fees

14

and expenses related to the QUIPS Litigation and related contested bankruptcy motion practice and litigation. App. 32, p. 153-54.

On or about January 3, 2005, NorthWestern filed its *Objection to the Request of Law Debenture Trust Company of New York for Payment of Fees and Reimbursement of Expenses pursuant to the Debtor's Plan of Reorganization and Applicable Trust Indenture* (the **"Fee Application Objection"**). App. 25.

On or about January 14, 2005, the Appellant filed its Administrative Expense Claim[9] requesting payment for the same fees and expenses in the same categories that were included in the Fee Application. App. 27.

On April 7, 2005, NorthWestern filed its *Objection to the Request for Payment of Administrative Expenses Pursuant to 11 U.S.C. Section 503 by Law Debenture Trust Company of New York as Successor Trustee for the 8.45% Cumulative Quarterly Income Preferred Securities Series A* (the **"Administrative Expense Claim Objection"**). App. 28, 29. Upon review of the fees and expenses submitted by Appellant, NorthWestern agreed that the fees and expenses related to the annual administration fees ($45,000) and participation in the Creditors Committee and related matters ($67,088.66) were reasonable. However, NorthWestern continued to object to the remaining $912,981.76 in fees and expenses requested by Appellant, particularly the amount that was incurred after the QUIPS Litigation was commenced in May, 2004.[10]

---

[9]    Because the Administrative Expense Claim incorporated the Fee Application, the Fee Order disposed of both the Fee Application and the Administrative Expense Claim. In its Administrative Expense Claim, the Appellant stated "[h]aving previously filed the Request for Payment [or Fee Application, as defined herein]..., it is not clear that the Trustee is required to file this Administrative Claim [or Administrative Expense Claim, as defined herein] in response to the Order [(A) Fixing Administrative Bar Date for Filing Proofs of Claim Against the Debtor, and (B) Approving Notice and Procedures Related Thereto]. However, in an abundance of caution, the Trustee is doing so because it believes that all of the fees and expenses that it has incurred in connection with this Chapter 11 case are administrative expenses..." See App. 28, p. 2, n.1.

[10]    As noted on the record at the May 3, 2005 hearing in this case:

On April 25, 2005, approximately a week prior to the May 3, 2005 hearing on Appellant's fee requests (the **"Fee Hearing"**), Appellant filed its motion for leave to file a reply to NorthWestern's Administrative Expense Claim Objection, which attached a copy of its reply (the **"Reply"**). App. 30. The request to file the Reply was granted. For the first time in the Reply, Appellant raised various legal and factual arguments that are being argued in this Appeal, including judicial estoppel, breach of the implied covenant of good faith and fair dealing, arguments of Appellant's supposed substantial contribution, and the argument that other indenture trustees were paid their fees so Appellant should be paid too. App. 31. NorthWestern did not have an opportunity to respond to these various arguments in writing prior to the Fee Hearing, but the Bankruptcy Court (per Peterson, J.) considered these arguments during the Fee Hearing. See App. 32.

As was argued by NorthWestern at the Fee Hearing, this is not a question of whether Appellant's fees and expenses will be paid – rather, it is a question of whether the Debtor must pay Appellant's fees and expenses, most of which were incurred in conducting aggressive and detrimental litigation against the Debtor for a limited group of claimants, out of cash, or whether Appellant should recover its fees and expenses either as a Class 9 unsecured claim out of the Class 9 Disputed Claims Reserve upon the conclusion of the

---

[T]here certainly should be no consideration whatsoever for fees and expenses incurred by Law Debenture after May 14th because clearly that's a defining moment when Law Debenture was removed from the Committee as a result of the fact it actually joined in filing the adversary case to remove assets from the debtor's estate which would have been to the detriment of all the debtor's creditors. So whatever work was incurred after May 14th clearly doesn't fall into a situation where this debtor would have even thought to have paid in cash but one where Law Debenture can ask this Court in good conscience to pay in cash. If you then look at this fee statement up to that point, that otherwise reduces that million one down to about $400,000 . . . .

App. 32, p. 152-53.

16

QUIPS Litigation or pursuant to its right to exercise a charging lien under the QUIPS Indenture, which right was preserved under the express provisions of the Plan. See App. 32.

### The Decision of the Bankruptcy Court

On May 3, 2005, Judge Peterson of the Bankruptcy Court held a hearing to consider the fees and expenses requested by Appellant.[11]  Appellant had a full and fair opportunity to show whether its fees and expenses were reasonable and whether Appellant substantially contributed to the bankruptcy case and benefited the Debtor's estate. Id.  The Debtor, with the support of the Plan Committee, argued that Appellant's fees and expenses were not reasonable and that Appellant had not shown it had provided a benefit to the estate. Id.

After reviewing the pleadings and hearing the arguments of the parties, supported by the facts of this case, in its order dated July 5, 2005, the Bankruptcy Court held that Appellant did not make a substantial contribution to this bankruptcy case, other than its participation on the Committee and annual administration fee. App. 33.  The Court based its decision on Section 5.18 of the Plan, application of the statutory standard of section 503(b)(3) of the Bankruptcy Code, and case law guidance set forth in Lebron.  In its Fee Order, the Bankruptcy Court stated that instead of making a substantial contribution to the case,

---

[11]    The Appellant attempts to discount Judge Peterson's knowledge of the background of this case when it states in its Opening Brief that "[t]he Court should be aware that Judge Peterson was not the presiding judge during the majority of the Chapter 11 proceeding, but only took over the case post-confirmation." Appellant Br. 25, n.8. On the contrary, Judge Peterson was assigned to this Chapter 11 proceeding on October 28, 2004 and presided over the case until March 16, 2006. See Bankr. Docket Nos. 2286, 3462. During that time Judge Peterson considered pleadings and heard argument related to the *Objection of Law Debenture Trust Company of New York, as Indenture Trustee, to the Claim of HSBC Bank USA, as Indenture Trustee,* as well as presided over two adversary proceedings related to the Appellant and Magten:  Adversary Case No. 04-53324 (complaint to avoid the transfer of assets of Clark Fork and Blackfoot LLC to NorthWestern Corporation filed by Magten and Appellant) and Adversary Case No. 05-50866 (complaint to revoke Confirmation Order and for breach of fiduciary duty filed by Magten and Appellant).  At the time of the entry of the Fee Order, Judge Peterson had been presiding over this case for nine (9) months.  Furthermore, both Appellant and NorthWestern provided extensive background information in the pleadings filed related to this matter.  For example, NorthWestern provided a detailed list of the pleadings filed by Appellant during the course of the Debtor's bankruptcy proceeding and the outcome of such actions.  See App. 25, p. 13-14; App. 28, p. 5-7.  Judge Peterson was therefore quite well versed in the background of this chapter 11 proceeding by the time he decided the Fee Order.

> Law Debenture's activities <u>have instead disrupted and
> prevented NOR's successful reorganization; [t]his disruption
> includes the recent filing of an adversary complaint seeking to
> revoke the Confirmation Order</u> pursuant to section 1144 of the
> Bankruptcy Code and Federal Rule of Bankruptcy Procedure
> 7001(5) for breach of fiduciary duty [Adv. Pro. No. 05-
> 50866]; Law Debenture has also undertaken numerous other
> actions contrary to successful reorganization, including
> <u>another adversary complaint against NOR seeking to remove
> the Montana Power Company's assets for the estate</u> (filed
> while Law Debenture was a member of the Committee),
> <u>objection to the disclosure statement and objections to
> confirmation;</u> Law Debenture's active participation in this
> bankruptcy case may explain its enormous fee request; [t]he
> high fees do not, however, prove any substantial contributions
> to NOR's reorganization (which is still pending due to the
> recently filed adversary complaint).

App. 33 (emphasis added).  The Bankruptcy Court ultimately sustained NorthWestern's

Administrative Expense Claim Objection and granted in part and denied in part the

Appellant's Administrative Expense Claim.  Specifically, the Bankruptcy Court granted

Appellant an administrative expense claim of $112,088.66,[12] representing $67,088.66 for fees

incurred while participating on the Committee and $45,000 for the annual administration

fees.  <u>Id.</u>

On July 14, 2005, the Appellant filed its *Notice of Appeal* to this Court of the

Fee Order.  [Bankr. D.I. No. 3186].  A review of the record clearly demonstrates that the

Bankruptcy Court correctly ruled on the Fee Application and the Administrative Expense

Claim and its Fee Order should be affirmed.

---

[12]     NorthWestern has paid the Appellant for the $112,088.66 owed pursuant to the Fee Order.

# VI.
# ARGUMENT

**A.    The Bankruptcy Court's Findings In The Fee Order
That Appellant Did Not Substantially Contribute
To The Debtor's Case Should Be Affirmed.**

The Bankruptcy Court's determination that Appellant did not substantially

contribute to the Debtor's case should be affirmed.  In light of the facts presented to the

Bankruptcy Court and the evidence in this case, there has been and can be no showing that

would provide this Court with a definite and firm conviction that the Bankruptcy Court made

a mistake in entering the Fee Order, which is the standard Appellant is required to meet in

order to show that the Bankruptcy Court committed clear error in its entry of the Fee Order.

See Lebron, 27 F.3d at 946; In re Allegheny Intern., Inc., 954 F.2d at 173.[13]  Rather,

Appellant simply was unable to demonstrate to the Bankruptcy Court that it provided a

substantial contribution to the Debtor's estate under section 503(b)(3)(D) of the Bankruptcy

Code, as applied pursuant to the Plan.  Appellant attempts on appeal, using the same facts

and same arguments presented to the lower court, to demonstrate what it was unable to

demonstrate to the Bankruptcy Court – that its efforts substantially contributed to the

Debtor's estate.  As the Bankruptcy Court correctly noted in the Fee Order, Appellant's

activities in this case served the exact opposite purpose - to disrupt and to prevent

NorthWestern's successful reorganization. See App. 33, p. 2.

The Bankruptcy Court properly invoked the substantial contribution standard

with respect to Appellant's Fee Application and Administrative Expense Claim.  In

connection with the payment of Appellant's fees and expenses as an administrative priority,

---

[13]    Although the standard of review for a determination of substantial contribution pursuant to section
503(b)(3) of the Bankruptcy Code is clear error, the standard of review for a decision to allow attorneys
fees under section 503(b)(4) of the Bankruptcy Code to the attorneys for an indenture trustee who meets the
standards of section 503(b)(3) is abuse of discretion.  See, e.g., In re Celotex Corp., 227 F.3d at 1338;
Pierson & Gaylen, 785 F.2d at 1252; Zeisler & Zeisler, 210 B.R. at 23.

the plain and unambiguous language of Section 5.18 of the Debtor's Plan provides that if the Debtor and Appellant cannot reach agreement on the amount of the fees and expenses, any disputed amount shall be determined by the Bankruptcy Court, pursuant to section 503 of the Bankruptcy Code, and in accordance with the terms of the Indenture.  App. 16, § 5.18. Under section 503(b)(3)(D) of the Bankruptcy Code, an administrative expense claim may be allowed for "the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by -- (D) ... an indenture trustee..., in making a substantial contribution in a case under chapter 9 or 11 of this title."  11 U.S.C. § 503(b)(3)(D).  In addition, section 503(b)(5) of the Bankruptcy Code provides that an indenture trustee may be entitled to allowance of an administrative expense for reasonable compensation for services rendered by the indenture trustee in making a substantial contribution to a case under chapter 9 or chapter 11.  11 U.S.C. § 503(b)(5).  Moreover, an administrative expense priority for professional services of an attorney for an indenture trustee under section 503(b)(4) is only available to an indenture trustee whose own expenses are allowable under section 503(b)(3).[14]  Where that indenture trustee fails to demonstrate that its actions substantially contributed to the debtor's case under section 503(b)(3), the indenture trustee is not entitled to compensation for the services provided by its professionals under section 503(b)(4).  See 11 U.S.C. § 503(b)(4).[15]

 Pursuant to Section 5.18 of the Debtor's Plan, NorthWestern is authorized to pay Appellant's reasonable fees and expenses in full and in cash; however, Section 5.18 does

---

[14] See S. LAWRENCE P. KING, COLLIER ON BANKRUPTCY, ¶ 503.11[2] (15th ed. rev. 2006) ("[a]n entity cannot seek reimbursement of professional fees under section 503(b)(4) unless it has previously qualified or concurrently qualifies for reimbursement of expenses under section 503(b)(3)").

[15] Section 503(b)(4) of the Bankruptcy Code provides for reasonable compensation for professional services of an attorney or accountant of an entity whose expense is allowable under section 503(b)(3), based on time, the nature, the extent, and the value of such services, and the cost of comparable service other than in a case under this title, and reimbursement for actual necessary expenses incurred by such attorney or accountant. 11 U.S.C. § 503(b)(4).

not mandate that NorthWestern pay fees and expenses that it disputes. Rather, Section 5.18

sets forth a mechanism and standard for Bankruptcy Court review of any indenture trustee

fees and expenses that the Debtor disputes. In that instance, Section 5.18 of the Plan

provides that the Bankruptcy Court should apply section 503 of the Bankruptcy Code, and

necessarily the "substantial contribution" standard contained therein, as well as the terms of

the applicable indenture, in conducting its review of any such disputed indenture trustee fees

or expenses.

Section 503(b), applied in this case pursuant to Section 5.18 of the Debtor's

Plan, requires an indenture trustee seeking an administrative priority to demonstrate that the

entity has made a "substantial contribution" in the case. See Lebron, 27 F.3d at 937; In re

Buckhead Am. Corp., 161 B.R. 11 (Bankr. D. Del. 1993). The "substantial contribution" test

is very difficult to meet. See Lebron, 27 F.3d at 944. The Third Circuit held that before an

applicant may be reimbursed or compensated under section 503 of the Bankruptcy Code, the

applicant - e.g. the Appellant - must demonstrate that "the efforts of the applicant resulted in

an actual demonstrable benefit to the debtor's estate and the creditors." Lebron, 27 F.3d at

944 (citing In re Lister, 846 F.2d 55, 57 (10th Cir. 1988)). See also In re The Columbia Gas

System, 224 B.R. 540 (Bankr. D. Del. 1998 ); In re Granite Partners, L.P., 213 B.R. 440

(Bankr. S.D.N.Y. 1997). The Third Circuit went on to state that "[s]ervices which

substantially contribute to a case are those which foster and enhance . . . the progress of

reorganization." Lebron, 27 F.3d at 944 (citation omitted). The Appellant's activities for

which it seeks reimbursement neither fostered nor enhanced the Debtor's reorganization

progress.

The Lebron Court concluded that activities which primarily further the

interests of the applicant are not reimbursable:

21

> [T]he purpose of Section 503(b)(d)(D) is to encourage activities that will benefit the estate as a whole, and in line with the twin objectives of § 503(b)(3)(D), "substantial contribution" should be applied in a manner that excludes reimbursement in connection with activities of creditors and other interested parties which are designed primarily to serve their own interests and which, accordingly, would have been undertaken absent an expectation of reimbursement from the estate.

Id. As the Lebron Court further stated:

> A creditor should be presumed to be acting in his or her own interest unless the court is able to find that his or her actions were designed to benefit others who would foreseeably be interested in the estate. In the absence of such a finding, there can be no award of expenses even though there may have been an incidental benefit to the chapter 11 estate.

Id.[16] The Bankruptcy Court properly determined that the Appellant did not satisfy this standard.

Appellant's Fee Application and Administrative Expense Claim failed entirely to describe any contribution, let alone a substantial one, it has made to the Debtor's case. Its Reply, which made an attempt to show some incidental benefits to the estate, wholly ignored the fact that Appellant's activities in this case were detrimental to the Debtor and other creditors of the Debtor's estate, were intended to harass the Debtor in furtherance of Appellant's litigation to remove a substantial portion of the Debtor's assets from the bankruptcy estate, and were apparently controlled by a disgruntled QUIPS holder, Magten, for the sole purpose of disrupting and preventing NorthWestern's successful reorganization. Not only did Appellant's activities in this case not benefit the estate, but Appellant's actions

---

[16]    See also In re Worldwide Direct, Inc., 334 B.R. 112, 122 (Bankr. D. Del. 2005) (citing In re Buckhead Am. Corp., 161 B.R. 11, 15 (Bankr. D. Del. 1993) (citation omitted)) (applying factors to determine whether applicant has met its burden to prove it made a substantial contribution under section 503 of Bankruptcy Code: "1) whether the services were rendered solely to benefit the client or to benefit all parties in the case; 2) whether the services provided direct, significant and demonstrable benefit to the estate; and, 3) whether the services were duplicative of services rendered by attorneys for the committee, the committees themselves, or the debtor and its attorneys").

and the fees and expenses incurred by the Debtor's estate as a direct result of those negative

actions increased the Debtor's reorganization costs by millions of dollars.

Based on the facts contained in the record, the Bankruptcy Court made

specific findings in this case that Appellant "did not make a substantial contribution to [the

Debtor's] bankruptcy case, other than its participation on the Creditors' Committee and

annual administration fee." App. 33, p. 2. The Bankruptcy Court stated:

> The Court notes that <u>Law Debenture's activities have instead
> disrupted and prevented NOR's successful reorganization;</u>
> This disruption includes the <u>recent filing of an adversary
> complaint seeking to revoke the Confirmation Order</u> pursuant
> to section 1144 of the Bankruptcy Code and Federal Rule of
> Bankruptcy Procedure 7001(5) for breach of fiduciary duty
> [Adv. Pro. No. 05-50866]; Law Debenture has also
> undertaken <u>numerous other actions contrary to successful
> reorganization, including another adversary complaint against
> NOR seeking to remove the Montana Power Company's
> assets from the estate</u> (filed while Law Debenture was a
> member of the Committee), <u>objections to the disclosure
> statement and objections to confirmation;</u> Law Debenture's
> active participation in this bankruptcy case may explain its
> enormous fee request; The high fees do not, however, prove
> any substantial contribution to NOR's reorganization (which
> is still pending due to the recently filed adversary complaint)
> ...

App. 33, p. 2-3 (emphasis added).   The Bankruptcy Court determined that Appellant failed

to overcome the presumption set forth in <u>Lebron</u> that its acts benefited more that just the

QUIPS holders.  A review of Appellant's pleadings and the facts as evidenced by the record

in this case make it clear that Appellant acted almost exclusively to protect the interests of the

QUIPS holders, especially Magten, its largest holder, and not the other constituencies of

NorthWestern's estate.[17]  For instance, Appellant,

---

[17]      At the May 3, 2005 Hearing, the Committee supported the Debtor's objection stating "[t]he
language of the plan in 5.18 is very clear, and that to the extent there's a dispute between an indenture
trustee and the [D]ebtor that the mechanism provided is that they file an application in front of the Court
subject to 503(b), and in looking at their application, it just doesn't seem to satisfy that standard which is a
pretty stringent standard." App. 32, Tr. pp. 155-56.

- Initiated an adversary proceeding against the Debtor which seeks to remove the Montana operations assets from the Debtor's estate to the harm of all the Debtor's other creditors. App. 2;

- Objected to the Debtor's Motion to Approve Disclosure Statement for the First Amended Plan. App. 3;

- Objected to confirmation of the First Amended Plan. App. 10;

- Filed an Emergency Motion to Adjourn Confirmation Hearing. App. 12;

- Objected to (A) Debtor's Second Amended and Restated Disclosure Statement and Summary Disclosure Statement; and (B) Proposed Resolicitation Procedures. App. 15;

- Objected to the Debtor's Motion for an Order Authorizing it to Enter Agreements for Exit Financing Facility and to Pay Fees and Expenses and Incur Indemnification Obligations in Connection Therewith Pursuant to Sections 105(a), 107(b) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9018. App. 9;

- Filed a Supplemental Objection to Confirmation of Debtor's Second Amended and Related Plan of Reorganization Under Chapter 11 of the Bankruptcy Code. App. 21;

- Objected to the Claim of HSBC Bank as Indenture Trustee. App. 34; and

- After entry of the Confirmation Order, filed a Complaint to revoke the Confirmation Order.[18]

In its Opening Brief, Appellant interprets the Bankruptcy Court's Fee Order to rest on the premise that because Appellant took positions during the case adverse to the Debtor, Appellant did not make a substantial contribution. Therefore, Appellant argues that reaching an agreement with the Debtor should not be a prerequisite for measuring the substantial contribution of an indenture trustee. Appellant. Br., 22-23. Appellant did not merely take positions adverse to the Debtor during the case, but by its litigation tactics in the QUIPS Litigation and its corresponding objections to every facet of the Debtor's

---

[18]    See Adversary Proceeding No. 05-50866 seeking to revoke the Confirmation Order and for breach of fiduciary duty filed by Magten and Appellant. See App. 25, p. 13-14; App. 28, p. 5-7.

reorganization process – to the disclosure statement, the First Amended Plan, the revised

disclosure statement and resolicitation procedures, the final version of the Plan, and the exit

financing necessary to fund the Plan -- its actions disrupted the case and negatively affected

the Debtor's efforts to reorganize, all to the detriment of creditors other than the QUIPS

holders. Appellant's constant barrage of objections and motions seeking to delay or upset

confirmation of the Debtor's Plan did not provide an actual and demonstrable benefit to the

Debtor's estate or its creditors. See, e.g., In re PWS Holding Corp., Case No. 98-212, 2002

WL 32332066 (Bankr. D. Del. Jan. 30, 2002) (Order) (holding that movant failed to

demonstrate that its objections to debtor's disclosure statement and plan of reorganization

resulted in any actual and demonstrable benefit to estate and its creditors. In fact, each of its

objections and motions were overruled or denied, and the prosecution of these various

objections and motions, to which the Debtor and other parties-in-interest were forced to

respond, substantially increased the costs to the Debtor's estate. Moreover, Appellant's

obstructionist activities continued post-confirmation with the filing of a complaint seeking to

revoke the Confirmation Order. See App. 25, p. 13-14; App. 28, p. 5-7.

Appellant attempts to argue that its objections to the various versions of the

Plan somehow made the Plan better and therefore provided a substantial contribution are

preposterous. This is a skewed view of "contribution." All along the path toward

confirmation of the Debtor's Plan, Appellant's "contributions" could only be characterized as

a constant deluge of roadblocks. Appellant never engaged in negotiations to result in a

consensual plan. On the contrary, the Plan was confirmed, over the continued objection of

Appellant, through the efforts of the settlement reached with Wilmington Trust on behalf of

the TOPrS and through no efforts of Appellant. Despite the fact that a by-product of

Wilmington Trust's negotiations for the TOPrS was to increase the distribution under the

Plan to the QUIPS holders, and despite the fact that the QUIPS holders were given the

alternative option under the Plan to continue to pursue the QUIPS Litigation, Appellant continued to object to the Plan. The Bankruptcy Court overruled Appellant's objection and confirmed the Plan. Even after entry of the Confirmation Order, Appellant continued to hinder the Debtor's estate by filing an adversary complaint seeking to revoke the Confirmation Order. None of Appellant's confirmation related objections, motions or adversary litigation provided, in any way, a benefit to any creditors of the Debtor's estate other than the self-interested QUIPS holders. See, e.g., In re PWS, Case No. 98-212, 2002 WL 32332066 (dismissing movant's arguments that it provided an actual and demonstrable benefit to the estate in filing its objections to debtor's disclosure statement and plan, even where it argued it provided benefit by attempting to correct legally flawed process and provide value in proposing alternative courses of action).

Furthermore, while they were members of the Committee, Appellant and Magten initiated the QUIPS Litigation, which litigation sought to remove assets from the estate for the sole benefit of the holders of the QUIPS Notes, to the detriment of the Debtor's other creditors. As a result, Appellant was removed from the Committee. Appellant certainly did not and could not demonstrate that its services provided a substantial contribution to the Debtor's estate any time after Appellant was removed from the Committee, effective on May 6, 2004, because it joined in bringing the QUIPS Litigation against the Debtor's estate and thereafter engaged with Magten in scorched earth litigation to thwart NorthWestern's reorganization efforts.

Although Appellant may have cited to case law indicating that parties to litigation are not always required to prevail in the litigation in order to show they have made a substantial contribution, the cases cited found a benefit to a debtor's reorganization in instances where the existence of the litigation, quality of representation or strength and merit of the party's case "greatly adds to and benefits the reorganization of a Chapter 11 debtor

26

regardless of the litigation's ultimate outcome." Appellant Br., pp. 32-33, n.12 (citing In re Revere Cooper and Brass Inc., 60 B.R. 892, 897 (Bankr. S.D.N.Y. 1986); In the Matter of Baldwin-United Corp., 79 B.R. 321 (Bankr. S.D. Ohio 1987)). Such is not the case here, where the QUIPS Litigation brought by Appellant against the Debtor seeks to remove significant assets from the estate to the detriment of all creditors other than the QUIPS holders. There can be no showing that such litigation "greatly adds to and benefits" the Debtor's reorganization. On the contrary, commencement and prosecution of the QUIPS Litigation, along with the constant objection practice related to confirmation, served only to retard and interrupt the progress of all parties toward reorganization. See In re Consol. Banc Shares, 785 F.2d at 1253 ("Further, services which substantially contribute to a case are those which foster and enhance, rather than retard or interrupt the progress or reorganization." (citations omitted)); In re Columbia Gas Sys., Inc., 224 B.R. at 554 (citing In re Consol. Banc Shares, 785 F.2d at 1253) ("The court is hard-pressed to understand how initiating and continuing this lawsuit should be viewed as promoting CG's reorganization, rather than interrupting its progress.").

　　　　Appellant also argues that "[i]t has no economic stake in the QUIPS. Rather, [it] was acting solely as a fiduciary for the holders of the QUIPS and its actions provided a benefit received by the estate." Appellant Br. 23. Courts have held that properly acting as a fiduciary is not necessarily the same as making a substantial contribution. See Manufacturers Hanover Trust Co. v. Bartsch (In re Flight Transp. Corp. Sec. Litig.), 874 F.2d at 576. See also, COLLIER ON BANKRUPTCY, ¶503.12[4] (15th ed. rev. 2006) (The fiduciary duty owed by the indenture trustee is owed to the beneficiaries of the trust, not to the bankruptcy estate. Protecting the interest of the trust beneficiaries may or may not be beneficial to the estate.). Pursuant to the terms of the Indenture, Appellant owes a fiduciary duty to the QUIPS, not to NorthWestern, its estate or its creditors. It does not automatically follow that just because the

27

Appellant performed services in accordance with its indenture responsibilities for the benefit of the QUIPS, that those services were beneficial or substantially contributed to NorthWestern's estate.[19]

The Bankruptcy Court appreciated that the customary contributions of an indenture trustee do not automatically equal substantial contribution and that incidental benefits are not necessarily actual and demonstrable benefits. To that end, Appellant's reliance on the Bankruptcy Court's decision in In re Essential Therapeutics, Inc.[20] for the proposition that had it not been for Appellant as indenture trustee, the Debtor and Committee would have required to communicate directly with the QUIPS holders, which constitutes a benefit to the estate, is misplaced. See Appellant Br. p. 27, n.10. Unlike Appellant's status as a indenture trustee, the preferred stockholder in Essential Therapeutics was not contractually bound and had no fiduciary obligation to its beneficiaries. Appellant in this case is bound by the Indenture and its fiduciary duty to protect the interests of the QUIPS. Therefore, it stands to reason that Appellant in this case was required to take certain actions and perform certain duties to fulfill contractual and fiduciary obligations; unlike the preferred stockholder in Essential Therapeutics. The actions Appellant contends that it took that benefited the Debtor's estate, including "filing a Proof of Claim on behalf of the QUIPS," "serving as a vehicle by which QUIPS holders could be informed about the progress of the

---

[19]     Appellant attempts to argue that somehow the Debtor has admitted that Appellant provided an actual demonstrable benefit to the estate by the language in the Confirmation Order stating that the QUIPS Indenture and all other agreements that govern the rights of holders of the QUIPS "shall continue in effect solely for the purposes of allowing the Indenture Trustee, agent or servicer thereunder to make the distributions to be made on account of such Claims under the Plan, as provided in the Plan, and allowing such Indenture Trustee, agent or servicer to enforce its Indenture Trustee Charging Lien, as more particularly described in Section 5.18 of the Plan." App. 17, pp. 67-68. Appellant's reasoning is flawed. The language in the Confirmation Order does nothing more than extend Appellant's contractual fiduciary duties under the Indenture into the post-confirmation period to effectuate distributions to the QUIPS holders and also confirms Appellant's right to exercise its charging lien for its post-confirmation services in making distributions under the Plan. It does not logically follow that the post-confirmation performance of a contractual duty could be construed as an actual demonstrable benefit to the Debtor's estate for the pre-confirmation period at issue in this appeal.

[20]     In re Essential Therapeutics, Inc., 308 B.R. 170 (Bankr. D. Del. 2004).

reorganization effort and could gather information as to how the holders of QUIPS felt about various aspects of that effort" and "continuing to administer the QUIPS Indenture" are all acts that the Appellant performed as a result of its fiduciary obligations under the Indenture and directly for the benefit of the QUIPS. Appellant Br. 24. Appellant was contractually bound to fulfill these duties – they were not something it "volunteered" to do. Appellant failed to establish that performance of these duties, which it was required to perform as part of a contractual and fiduciary duty to QUIPS holders, provided an actual demonstrable benefit to the estate or entitled it to an administrative priority expense claim to be paid in cash by the Debtor, as opposed to either entitling it to a Class 9 Unsecured Claim or the right to exercise its Indenture Trustee Charging Lien. Appellant's actions - although substantial[21] - in no way contributed to the Debtor's reorganization. Therefore, the Fee Order should be affirmed.

**B.**       **The Bankruptcy Court's Fee Order Should Be Affirmed Because Appellant Fails To Meet Its Burden To Demonstrate That The Bankruptcy Court Abused Its Discretion In Not Applying Appellant's Judicial Estoppel Argument.**

Appellant's argument concerning the application of the doctrine of judicial estoppel should be dismissed by this Court as the doctrine is simply inapplicable. Appellant attempts to relieve itself of its burden of showing a substantial contribution by arguing that the Debtor is somehow judicially estopped from claiming that the payment of Appellant's fees was not consideration provided to the QUIPS holders under the Plan or that those fees are subject to section 503's substantial contribution standard. Both in its reply and its argument, Appellant presented its judicial estoppel argument to the Bankruptcy Court. The Bankruptcy Court, based on the facts in the record, decided not to apply the doctrine of

---

[21]       As the Bankruptcy Court noted in the Fee Order, "Law Debenture's active participation in this bankruptcy case may explain its enormous fee request; The high fees do not, however, prove any substantial contribution to NOR's reorganization . . ."

judicial estoppel. Appellant has failed to meet its burden on appeal to demonstrate that the Bankruptcy Court abused its discretion in considering, but finding inapplicable the Appellant's judicial estoppel argument.

The decision to invoke the doctrine of judicial estoppel is reviewed under an "abuse of discretion" standard. McNemar, 91 F.3d at 613. Appellant has failed to show that the Fee Order was founded on an error of law or a misapplication of law to the facts, which is the standard Appellant is required to meet to show an abuse of discretion. See Montrose, 243 F.3d at 780 (citing In re O'Brien, 188 F.3d at 122). Judicial estoppel is an equitable doctrine, which vests considerable discretion in the court. McNemar, 91 F.3d at 617. Proper exercise of that discretion requires the court to focus attentively on the particularly distinctive features of the case before the court, since "each case must be decided upon its own particular facts and circumstances." Id. (citing Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 360 (3d Cir. 1996)).

The Third Circuit applies a three prong test to determine whether judicial estoppel should apply: (1) whether the party took irreconcilably inconsistent positions; (2) whether the inconsistencies arose as the result of bad faith[22] and (3) whether a lesser sanction would adequately remedy the damage done. See Montrose, 243 F.3d at 779. The Appellant has failed to establish that any of the elements required for judicial estoppel apply in this case. The doctrine of "[Judicial estoppel] is intended to protect the judicial system, rather than the litigants..." In re Coastal Plains, Inc., 179 F.3d 197, 205 (5th Cir. 1999) (citing Matter of Cassidy, 892 F.2d 637, 641 (7th Cir. 1990)). Judicial estoppel prevents a

---

[22]     "A finding of bad faith 'must be based on more than' the existence of an inconsistency." Montrose, 243 F.3d at 781. A litigant has not acted in bad faith unless he behaved in a manner that is somehow culpable and where the inconsistent position was used as a means of obtaining an unfair advantage in an action before the court. Id. The Third Circuit in Cleveland v. Policy Mgmt. Sys. Corp., held that "it does not constitute bad faith to assert contrary positions in different proceedings when the initial claim was never accepted or adopted by a court." Montrose, 243 F.3d at 781-82 (applying Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795 (1999)).

party from assuming a contrary legal position in a subsequent legal proceeding. See New Hampshire v. Maine, 532 U.S. 742, 749 (2001). Judicial estoppel is not intended to eliminate all inconsistencies, but is instead *only intended to prevent litigants from playing fast and loose with the courts.* See In re Chambers Dev. Co., Inc., 148 F.3d 214, 229 (3d Cir. 1998) (emphasis added). The doctrine does not apply where an inconsistent position is asserted in good faith or through inadvertence. Id. Judicial estoppel is an "extraordinary remedy to be invoked when a party's inconsistent behavior will otherwise result in a miscarriage of justice." Ryan Operations G.P., 81 F.3d at 365 (quoting Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 424 (3d Cir. 1988) (Stapleton, J., dissenting)). See also Klein v. Stahl GMBH & Co., 185 F.3d 98, 108 (3d Cir. 1999) (citing Republic of Philippines v. Westinghouse Elec. Corp., 43 F.3d 65, 73 (3d Cir. 1994)) (court should not employ judicial estoppel unless it is "tailored to address the harm identified" and no lesser sanction would adequately remedy damage done by litigant's misconduct); In re EXDS, Inc., 316 B.R. 817, 825 (Bankr. D. Del. 2004) ("Judicial estoppel is not a sword to be wielded by adversaries unless such tactics are necessary to secure substantial equity."). The record is devoid of support for the application of the doctrine of judicial estoppel.

The Plan language, read as a whole, shows that NorthWestern was merely exercising its rights thereunder, and not making inconsistent statements. It is hardly an affront to the integrity of the judicial process for NorthWestern to assert its legal right to review the fees and expenses of Appellant. The Plan and the Confirmation Order extend NorthWestern the opportunity for court review of indenture trustee fees where the parties cannot agree. Neither the Plan nor the Confirmation Order place any limits on this opportunity. The plain and unambiguous language of Section 5.18 of the Debtor's Plan provides that if the Debtor and Appellant cannot reach agreement on the amount of the fees and expenses, any disputed amount shall be determined by the Bankruptcy Court, pursuant to

31

section 503 of the Bankruptcy Code, and the applicable Indenture. App. 16, § 5.18.

Section 5.18 also expressly reserves the right of Appellant to exercise its charging lien if its

fees and expenses are not reimbursed in full by the Debtor and specifically provides that "any

deficiency may be paid out of the distributions received by the respective Indenture Trustee

on behalf of their respective class claimants." Id. Rather than making a full disclosure of the

applicable terms of the Plan, Appellant in its Opening Brief, picks and chooses certain

phrases from the Plan out of context in a misguided effort to argue that the Plan requires

payment of its fees in full. Appellant Br., p. 19. Appellant of course neglects to mention

Section 5.18 of the Plan and the opportunity it provides for the Debtor to disagree to

Appellant's fees and to turn to the Bankruptcy Court to decide. In light of the specific

language of Section 5.18, it is simply wrong to suggest that NorthWestern's exercise of its

legal right under the Plan to dispute Appellant's fees and expenses mandates the application

of the doctrine of judicial estoppel.[23]

Furthermore, contrary to Appellant's allegations, NorthWestern's treatment

of Class 8(a) (TOPrS holders) and Class 8(b) (QUIPS holders) is wholly consistent with its

representations to the Bankruptcy Court and the relevant provisions of the Plan, and therefore

Appellant cannot meet the first prong of the three factor test for judicial estoppel.

NorthWestern's treatment of the TOPrS holders and the QUIPS holders has been consistent

with what was provided in the Plan and there has not been disparate treatment between

holders of TOPrS and holders of QUIPS. The language of Section 5.18 of the Debtor's Plan,

as confirmed by the Bankruptcy Court, sets forth the clear alternative that the Debtor could

disagree with payment of the fees of Appellant and require Appellant to prove to the Court

---

[23]    "A careful distinction must be drawn between enforcing a document which is contractually binding between two parties and applying the preclusive effect of judicial estoppel to a litigant's action *vis-à-vis* the court." See, e.g., In re Trans World Airlines, Inc., 261 B.R. 103, 113 (Bankr. D. Del. 2001).

that it was entitled to such fees. Both holders of TOPrS and holders of QUIPS were aware of this in voting in favor of the Plan and the Court was aware of this when confirming the Plan.

The Bankruptcy Court during confirmation specifically recognized that not all of Wilmington Trust's fees and expenses were being paid as part of the settlement reached with Wilmington Trust and Harbert in the Confirmation Order, and therefore Wilmington Trust may have to invoke its charging lien, thus reducing the distribution to TOPrS holders in Class 8(a). In light of these facts, the Bankruptcy Court still found that "[b]oth Class 8(a) and Class 8(b) will receive the same distribution if each respective class accepts the Plan; accordingly, the Court finds that the Plan does not provide for disparate treatment of Class 8(a) and Class 8(b)." See App. 17, p. 33. In fact, both Wilmington Trust, the indenture trustee of the TOPrS, and Appellant, the indenture trustee for the QUIPS, have invoked their charging liens against the distributions to TOPrS holders and QUIPS holders, respectively. See App. 25, p. 3, n.4; App. 26, ex. A. As a result of the settlement with Wilmington Trust and Harbert contained in the Plan, the Debtor paid only $2.25 million of Wilmington Trust's requested fees and expenses.[24] App. 16, § 5.18. As contemplated in Section 5.18 of the Plan, Wilmington Trust exercised its charging lien for its remaining unpaid fees and expenses, totaling approximately $1 million, thus reducing the distribution to the TOPrS holders by approximately $1 million in value. App. 32, Tr. p. 151. The Appellant's exercise of its right to invoke its charging lien does not change the treatment of the QUIPS holders as compared

---

[24]    Appellant argues that it should be paid because the fees and expenses of Wilmington Trust were paid. First, only a portion of the fees and expenses of Wilmington Trust and Harbert were paid. Second, those fees and expenses were negotiated as part of the overall settlement entered into with these parties in connection with the resolutions included in the Plan - a settlement Wilmington Trust actively participated in bringing to realization. Appellant also makes much of the fact that it was unfair for their fees and expenses not to have been paid when other indenture trustees in this case, including HSBC and Bank of America, were paid their fees and expenses. NorthWestern and its counsel reviewed the invoices submitted by each of the other indenture trustees in this case to determine if they were reasonable. NorthWestern did not dispute any of the fees or expenses of any of these other indenture trustees. In addition, each of the other indenture trustees in the case provided benefits to the case and, unlike Appellant, were not pursuing litigation against the Debtor or making every attempt to thwart the reorganization efforts of the Debtor. See App. 32, p. 148-52; App. 31.

33

to the TOPrS holders, or make the Debtor's assertions that the QUIPS holders and TOPrS holders would receive the same distribution in any way inconsistent.

In its failed attempt to meet the second prong of the test for judicial estoppel, Appellant alleges that NorthWestern has consistently changed its positions before the Bankruptcy Court in bad faith and that in doing so it is seeking to punish Appellant. See Appellant Br. p. 19-22. This is simply not true. Because of the settlement that Wilmington Trust and Harbert entered into for the TOPrS holders, the holders of TOPrS and QUIPS went from receiving their Pro Rata share of 2% of the New Common Stock provided for in the First Amended Plan to receiving their Pro Rata share of (a) 8% of the New Common Stock issued and outstanding on the Effective Date plus (b) Warrants exercisable for an additional 13% of the New Common Stock in the Plan (or QUIPS holders alternatively retained the right to pursue their QUIPS Litigation as a Class 9 claim holder). The holders of the QUIPS increased their recovery under the Plan through no efforts on their part, or the part of Appellant, and they are receiving what the Plan promised -- the same as the holders of the TOPrS. Moreover, the QUIPS holders received this treatment under the Plan despite the fact that claimants in Class 7, a more senior class, were not paid in full for their claims. But for the settlement that Wilmington Trust and Harbert reached with Class 7, there would not even have been sufficient value for either the TOPrS (Class 8(a)) or the QUIPS (Class 8(b)) to receive any distribution in accordance with the strict absolute priority rule. App. 17, p. 35-36.

The holders of the QUIPS were not unfairly treated before implementation of the Plan and they are not being unfairly treated now.[25] NorthWestern has simply invoked its

---

[25]    Appellant attempts to argue it is being unfairly treated because the Debtor paid the fees and expenses of its predecessor indenture trustee for the QUIPS Indenture, The Bank of New York, and argues that "[t]here is simply no credible reason why Law Debenture should be treated any differently than The Bank of New York relative to this or any other aspect of its services." Appellant Br. p. 25. However,

legal right under the Plan to have the Bankruptcy Court review the fees and expenses of

Appellant. There is nothing inconsistent or in bad faith about the request. It is a simple

dispute about the issue of paying Appellant's requested fees and expenses in cash. Judicial

estoppel does not apply. Under these circumstances, this Court should affirm the Fee Order.

App. 32, pp. 151-52.

**C.     The Bankruptcy Court's Fee Order Should Be Affirmed
Because The Implied Covenant Of Good Faith And
Fair Dealing Does Not Apply.**

Appellant's argument that the Debtor breached the implied covenant of good

faith and fair dealing relating to the Plan when it objected to Appellant's fees and expenses is

entirely without merit and borders on the frivolous. Contrary to Appellant's assertions, it is

not axiomatic that simply because contract construction principles are used to interpret plans

of reorganization, that the implied covenant of good faith and fair dealing attaches to every

plan. First, all of the cases cited by the Appellant relate solely to construction rules to be

applied to a bankruptcy plan. See Texas Gen. Petroleum Corp. v. Leyh, 52 F.3d 1330 (5th

Cir. 1995); Salmon v. Laser Plot, Inc., 189 B.R. 559 (D. Mass. 1995); In re UNR Indus., 173

B.R. 149 (N.D. Ill. 1994). Not one of the cases applies other contract theories, such as

damage theories for breach, to the terms of a plan. Indeed, Appellant does not cite to a single

case wherein any court applies the covenant of good faith and fair dealing to a plan of

reorganization and NorthWestern's counsel was unable to find any such case either. It makes

no sense that a party's remedy where a debtor fails to honor terms of a plan would be a

breach of contract claim. Rather, as this Court is well aware, an aggrieved party would seek

---

Appellant was not treated different from The Bank of New York. The Bank of New York, it its capacity as
the indenture trustee for the QUIPS, was paid by the Debtor for its services on the Committee, just as the
Fee Order approved the payment of Appellant's services on the Committee. As was argued by
NorthWestern on this point at the Hearing to consider Appellant's fee requests, the additional payments
made by the Debtor to The Bank of New York were for trustee fees for its services as indenture trustee on
one of the issues of the senior secured bonds. App. 32, pp. 151-52.

a remedy from the Bankruptcy Court seeking to enforce the terms of the Plan. It is difficult to fathom circumstances under which a court would entertain a claim for fraud in the inducement and void a plan as the remedy. The plan confirmation processes set forth in the Bankruptcy Code, rather, provide protection and remedies for parties involved in the bankruptcy process. Indeed, another Federal Court has held that in a Chapter 13 case, no implied covenant for good faith and fair dealing attaches to a plan as the Bankruptcy Code provides a mechanism for relief for breach of the plan. In re Nosek, Case No. 06-40170, 2006 WL 3262629, at * 6-7 (D. Mass. Nov. 13, 2006). Accordingly, simply because the Plan is to be construed based on contract interpretation principles, it is not the case that the covenant of good faith and fair dealing attached to the Plan. Accordingly, the Debtor's actions in objecting to Appellant's Administrative Expense Claim cannot be in violation thereof.

Moreover, because the Plan language is clear and unambiguous and clearly contemplates the Debtor's ability to object to Appellant's fees, the implied covenant of good faith and fair dealing is not invoked. It is well settled that courts cannot use the covenant of good faith and fair dealing in derogation of express unambiguous terms of a contract. See In re IT Group, Inc., 448 F.3d 661, 671 (3d Cir. 2006) ("The implied duty of good faith is merely an interpretive tool to determine the parties' justifiable expectations; it may not be used to add new terms to an agreement, or to override express contractual terms." (citations omitted)); Aspen Advisors LLC v. United Artists Theatre Co., 843 A.2d 697, 707 (Del. Ch. 2004); Kelly v. McKesson HBOC, Inc., Case No. 99c-09-265 (WCC), 2002 WL 88939, at *10 (Del. Super. Ct. Jan. 17, 2002) ("But the Court will not readily imply a contractual obligation where the contract expressly addresses the subject of the alleged wrong, yet does not provide for the obligation that is claimed to arise by implication. The implied covenant cannot contravene the parties' express agreement and cannot be used to forge a new

36

agreement beyond the scope of the written contract."); Moore Bus. Forms, Inc. v. Cordant

Holdings Corp., Case No. 13911, 1995 WL 662685 (Del. Ch. Nov. 2, 1995) ("[C]ourts will

not readily imply a contractual obligation where the contract expressly addresses the subject

of the alleged wrong, yet does not provide for the obligation that is claimed to arise by

implication." (internal quotations omitted)); Dave Greytak Enters., Inc. v. Mazda Motors of

Am., Inc., 622 A.2d 14, 23 (Del. Ch. 1992) ("[W]here the subject at issue is expressly

covered by the contract ... the implied duty to perform in good faith does not come into

play."), aff'd, 609 A.2d 668 (Del. 1992) (ORDER); Shenandoah Life Ins. Co. v. Valero

Energy Corp., Case No. 9032, 1988 WL 63491, at *8 (Del. Ch. June 21, 1988)("Where ... a

specific, negotiated provision directly treats the subject of the alleged wrong and has been

found to have not been violated, it is quite unlikely that a court will find by implication a

contractual obligation of a different kind that has been breached.").  Because the Plan is clear

in its terms with respect to the procedure for payment of Indenture Trustees' fees and

expenses and the process to be followed in the case of a dispute, the implied covenant of

good faith and fair dealing does not even apply to the circumstances of this case.

Essentially what Appellant argues is that the covenant of good faith and fair

dealing precludes the Debtor from objecting to Appellant's Administrative Expense Claim.

This argument is contrary to the terms of the Plan and the law, and makes no sense in its

practical application and therefore should be dismissed.  The Plan and Confirmation Order

provided for the payment of fees and expenses of Indenture Trustees as follows:

> On the Effective Date, the Reorganized Debtor will pay the
> Indenture Trustees' Fees and Expenses in full and in Cash, in
> an amount to be agreed upon among the Debtor and each of
> the Indenture Trustees.  In the event that the parties cannot
> reach agreement on the amount thereof, any disputed amount
> shall be determined by the Bankruptcy Court, pursuant to
> Section 503 of the Bankruptcy Code, and in accordance with
> the terms of the applicable Indenture.

App. 16, § 5.18 (emphasis added). There is nothing ambiguous about these terms. They

clearly provide for a specific procedure to be followed in the event that the Debtor and an

Indenture Trustee do not agree on fees and expenses. Specifically, the procedures set forth

pursuant to section 503 of the Bankruptcy Code are to be followed and the Bankruptcy Court

is to render the final decision. That is exactly what happened in this case. Appellant filed

both a Fee Application and Administrative Expense Claim, the Debtor objected to each,

Appellant filed a reply to Debtor's objections, the Court heard oral argument and then

rendered its decision. Every term of the Plan with respect to Indenture Trustee fee

applications was followed. In these circumstances where the Plan speaks to the subject and

clearly provides for circumstances where there may be a dispute as to fees and expenses, the

implied covenant cannot be used to impose an obligation that the Debtor was somehow

precluded from objecting to the Appellant's fees and expenses. In re IT Group, 448 F.3d at

671; Aspen Advisors, 843 A.2d at 707; Kelly, 2002 WL 88939, at *10; Moore Bus. Forms,

1995 WL 662685, at *8; Dave Greytak, 622 A.2d at 23; Shenandoah Life, 1988 WL 63491,

at *8. It is of no moment how any other fee application of any other Indenture Trustee was

handled and treated in the Bankruptcy Court, as the Debtor followed the procedure set forth

in the Plan to the letter and therefore cannot be found in violation thereof. Furthermore,

extrapolating Appellant's interpretation that the implied covenant of good faith and fair

dealing precluded the Debtor from objecting to its Fee Application and Administrative

Expense Claim[26] would mean that the Debtor is precluded from objecting to any creditor's

---

[26]    Appellant also argues that the implied covenant of good faith prevents the Debtor from exercising its discretion to object to its Administrative Expense Claim and, accordingly, the Bankruptcy Court's Administrative Expense Claim Order should be vacated. However, the law is that a party may exercise discretion under a contract and within the bounds of the implied covenant of good faith as long as its exercise of discretion "was within the reasonable contemplation of the parties at the time of formation--to capture opportunities that were preserved upon entering the contract" Carma Developers (California), Inc. v. Marathon Dev. California, 826 P.2d 710, 727 (Cal. 1992). See also Okmyansky v. Herbalife Int'l of America, Inc., 415 F.3d 154 (1st Cir. 2005). Here, the Plan clearly provides a mechanism to deal with a dispute as to fees between the Debtor and Appellant, and therefore, it was within the parties' contemplation

claim in the case. This simply is not the law. Here the Bankruptcy Court accurately

followed the law and properly dismissed Appellant's argument concerning the implied

covenant of good faith and fair dealing. The Bankruptcy Court's Fee Order should therefore

be affirmed.

## VII.
## CONCLUSION

As Appellant has in no way met its burden in advancing its arguments for

reversal, the Bankruptcy Court's Fee Order should be affirmed. Appellant has failed to

demonstrate that the Bankruptcy Court abused its discretion or erroneously applied the law in

entering the Fee Order. Moreover, the factual determinations of the Bankruptcy Court are

well supported by the record and are entitled to deference and should not be reversed.

Accordingly, NorthWestern respectfully requests that this Court uphold the Bankruptcy

Court's Fee Order.

Dated: February 2, 2007

GREENBERG TRAURIG, LLP

Victoria W. Counihan (No. 3488)
Sandra G. M. Selzer (No. 4283)
The Nemours Building
1007 North Orange Street
Suite 1200
Wilmington, DE 19801
(302) 661-7000

Attorneys for Appellee, NorthWestern
Corporation

---

at the time the Plan was approved that the Debtor could assert such an objection. The exercise of such
discretion to object to Appellant's Fee Application and Administrative Expense Claim was not in violation
of the implied covenant of good faith and fair dealing. Moreover, it was not Debtor's exercise of discretion
to file such an objection to Appellant's Fee Application and Administrative Expense Claim which was the
proximate or actual cause of it being denied in part and allowed in part. Rather it was the Bankruptcy
Court's decision to do that. The implied covenant of good faith and fair dealing purportedly attaching to a
plan cannot be read to divest a Bankruptcy Court's authority to consider and evaluate fee applications and
require it to always overrule any objection thereto.

## CERTIFICATE OF SERVICE

This is to certify that on this 2nd day of February, 2007, I caused to be served copies of the foregoing NORTHWESTERN CORPORATION'S RESPONSE TO APPELLANTS' OPENING BRIEF (INCLUDING COMPENDIUM AND APPENDIX) upon the following parties in the manner indicated:

VIA FEDERAL EXPRESS:

Alan W. Kornberg
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019-6064

VIA HAND DELIVERY:

Kathleen M. Miller
Smith, Katzenstein & Furlow LLP
800 Delaware Avenue
Wilmington, DE 19801

Mark Kenney
Office of the United States Trustee
844 King Street, Suite 2313
Wilmington, DE 19801

I also hereby certify that I caused to be served the foregoing NORTHWESTERN CORPORATION'S RESPONSE TO APPELLANTS' OPENING BRIEF upon the following parties via U.S. Mail:

Steven J. Reisman
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, NY 10178

John V. Snellings
Nixon Peabody LLP
100 Summer Street
Boston, MA 02110

Dale R. Dube
Blank Rome LLP
1201 Market Street, Suite 800
Wilmington, DE 19801

Neil B. Glassman
The Bayard Firm
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19899

Phillip Bentley
Kramer Levin Naftalis & Frankel
1177 Avenue of the Americas
New York, NY 10036

Bonnie Steingart
Fried, Frank, Harris, Shriver & Jacobson, LLP
One New York Plaza
New York, NY 10004

Adam G. Landis
Landis Rath & Cobb, LLP
919 Market Street, Suite 600
P.O. Box 2087
Wilmington, Delaware 19899

Sandra G. M. Selzer (No. 4283