# APP. 8

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| | x | |
| In re: | : | Chapter 11 |
| | : | |
| NORTHWESTERN CORPORATION | : | Case Nos. 03-12872 (CGC) |
| | : | |
| | : | **Objections Due: August 2, 2004 at 4:00 p.m.** |
| Debtor. | : | **Briefs in Opposition Due: August 9, 2004.** |
| | : | **Hearing Date: August 25, 2004.** |
| | : | **Re: Docket No. 1295** |
| | x | |

### OBJECTION OF INDENTURE TRUSTEE TO CONFIRMATION OF DEBTOR'S
### FIRST AMENDED PLAN OF REORGANIZATION

Wilmington Trust Company, as indenture trustee (the "Indenture Trustee") under

that certain subordinated debt securities indenture dated as of August 1, 1995 (the "TOPrS

Indenture") for the 7.2% junior subordinated deferrable interest debentures due 12/31/2038, the

8.1% junior subordinated deferrable interest debentures due 1/15/2032, the 8.125% junior

subordinated deferrable interest debentures due 9/30/2025, and the 8.25% junior subordinated

deferrable interest debentures due 12/31/2038 issued by Northwestern Public Service Company,

by and through its undersigned counsel, submits this objection (the "Objection") to confirmation

of the above captioned Debtor's (the "Debtor") First Amended Plan of Reorganization Under

Chapter 11 of the Bankruptcy Code dated as of May 17, 2004 (the "Plan"). In accordance with

the Court's July 13, 2004 scheduling order, the Indenture Trustee will file a brief in opposition to

confirmation on August 9, which will set forth in greater detail the legal and factual bases

supporting this Objection, in the meantime, in support of its Objection, the Indenture Trustee

respectfully states as follows:

## PRELIMINARY STATEMENT

The Debtor has proposed a Plan that provides senior creditors with the great bulk of the reorganized Debtor's common stock. It should come as no surprise that the Plan has garnered the support of senior creditors, because the stock being offered to them is worth much more than the artificially low value ascribed to it, thereby providing them with a huge windfall. At the same time, the Plan shortchanges holders of (allegedly) junior TOPrS, who hold over $321 million in claims against the Debtor but, if they vote "no," will be wiped out under the Plan. Moreover, the benefits that management stands to receive through its participation in the New Incentive Plan give management financial incentives to support a low valuation, thereby raising significant questions as to management's ability to participate neutrally in the valuation process.

At the Confirmation Hearing and in its Brief in Opposition to Confirmation (which will be filed on August 9 in accordance with the scheduling order), the Indenture Trustee will show that the Plan egregiously undervalues the Debtor and, if confirmed, would misappropriate value allocable to junior creditors and pay allegedly senior creditors substantially more than the amount of their claims. As a result, the Plan cannot satisfy the requirement of Bankruptcy Code Section 1129(b) that it be fair and equitable. The Indenture Trustee will further show that the Plan improperly classifies creditors, ignores applicable indenture provisions regarding the seniority of the TOPrS, and fails to take into account the Debtor's egregious PUHCA violations and the effect of such violations on the Debtor's capital structure.

## FACTS

1.      On September 14, 2003 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the Bankruptcy Court for the District of Delaware. The Debtor continues to operate its

- 2 -

business and manage its properties as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

2.    The Debtor estimates that it has approximately $912 million of secured debt (the "Secured Debt"), $898 million of senior unsecured debt (the "Senior Unsecured Debt"), and $46 million of general unsecured debt outstanding.  Of the $898 million of Senior Unsecured Debt, approximately $720 million principal amount is presently subject to an objection of the Indenture Trustee and Harbert (the "PUHCA Claim Objection") for the reasons further set forth in the PUHCA Claim Objection.

3.    The Debtor has approximately $390.6 million in outstanding subordinated unsecured debentures (the "Subordinated Debt"), of which approximately $321 million arises out of certain debentures (the "TOPrS Debentures") issued pursuant to the TOPrS Indenture. Wilmington Trust Company is the Indenture Trustee under the TOPrS Indenture.[1]  The remainder of the Subordinated Debt consists of approximately $69.5 million of 8.45% Junior Subordinated Debentures due 2036 issued pursuant to November 1, 1996 Indenture (the "QUIPs Indenture").

4.    On July 16, 2004, the Debtor filed its Emergency Motion Pursuant to Sections 105(a) and 363 of the Bankruptcy Code Authorizing Debtor to Implement New Incentive Plan (the "Incentive Plan Motion").  Pursuant to the Incentive Plan Motion, the Debtor seeks Court authority to implement a plan (the "New Incentive Plan") that, among other things, provides senior management and certain key employees with up to 285,300 shares of common

---

1    The Debtor issued the TOPrS Debentures to wholly-owned, special purpose business trusts (the "TOPrS Trusts").  The TOPrS Trusts held the TOPrS Debentures and issued preferred securities to investors (the "TOPrS Trust Preferred Securities"), using the interest payments received from the TOPrS Debentures to make quarterly distributions on the TOPrS Trust Preferred Securities.  The Debtor guaranteed payments of the dividends on the TOPrS Trust Preferred Securities to the extent the Debtor made the required interest payments on the TOPrS Debentures.

stock as incentive bonuses upon emergence from Chapter 11, and up to an additional 109,317 shares per year for the next three years. See Incentive Plan Motion at ¶ 12. Based upon the Debtor's estimated reorganized stock value of $20 per share, the stock to be issued under the New Incentive Plan to management and key employees is worth approximately $7.89 million.

5.      Through its counsel, the Indenture Trustee has retained Goldin Associates LLC ("Goldin"), a well-respected and eminently qualified financial advisory firm, as its financial advisor, and Bob Anderson, a former chairman of the Montana Public Service Commission and former president of the National Association of Regulatory Utility Commissioners, as its Montana regulatory expert. As will be explained in further detail in our brief in opposition to confirmation and then demonstrated at the Confirmation Hearing, Goldin has concluded that the Debtor's value, and consequently the value of the reorganized Debtor's stock, is substantially greater than that ascribed to it by the Debtor.

## OBJECTION

6.      Section 1129(a)(1) of the Bankruptcy Code provides that the court shall confirm a plan of reorganization only if the proposed plan complies with the applicable provisions of the Bankruptcy Code. Here, (i) the Plan is not "fair and equitable" to the holders of the TOPrS, as required by Bankruptcy Code Section 1129(b)(1) and as defined in Bankruptcy Code Section 1129(b)(2); (ii) the Plan unfairly discriminates against the TOPrS, in violation of Section 1129(b)(1) of the Bankruptcy Code; and (iii) the Plan improperly classifies the TOPrS with claims that are substantially different to the TOPrS, in violation of Bankruptcy Code Section 1122(a). Accordingly, confirmation should be denied.

- 4 -

**A.**  **The Plan is Not Fair and Equitable Because it Pays Senior Debt Value in Excess of the Amount of Their Claims to the Detriment of Junior Creditors.**

7.  A plan can be confirmed over the rejection of an impaired class only if the plan is "fair and equitable." <u>See</u> 11 U.S.C. Sections 1129(b)(a) and (2). To be fair and equitable, a plan must meet the Bankruptcy Code's absolute priority rule -- it cannot provide junior classes with a recovery unless senior dissenting classes are paid in full. Moreover, it is well settled that "a corollary of the absolute priority rule is that a senior class cannot receive more than full compensation for its claims." <u>In re Exide Technologies, et al.</u>, 303 B.R. 48, 61 (Bankr. D. Del. 2003) (citations omitted).

8.  Based upon reports prepared by and through its professionals and through testimony and other evidence to be offered at the Confirmation Hearing, the Indenture Trustee will show that the Plan is predicated on a very substantial undervaluation of the Debtor, and that the Debtor's distributable value is well in excess of that needed to pay the Secured Debt and the Senior Unsecured Debt in full. Confirmation should be denied because value properly allocable to holders of Subordinated Debt is being misappropriated to the holders of Senior Unsecured Debt, who are receiving value well in excess of 100% of their claims.

**B.**  **The Plan Violates Sections 1129(b)(1) and 1129(b)(2) of the Bankruptcy Code By Proposing to Pay all Senior Unsecured Debt in Full, Even Though That Debt is Voidable, or at Best Pari Passu With the Subordinated Debt, as a Result of the Debtor's PUHCA Violations.**

9.  The Plan proposes to make substantial distributions to holders of the Senior Debt, even though approximately <u>$720 million</u> of this debt is voidable or, at best, <u>pari passu</u> with the Subordinated Debt as a result of the Debtor's PUHCA violations, as more fully set forth in the PUHCA Claim Objection. The proposed payments are fatal to confirmation.

- 5 -

10.    If the $720 million of the Senior Unsecured Debt is voided under PUHCA or is stripped of its senior status, the Plan is violative of the Bankruptcy Code's fair and equitable requirement to the extent it seeks to pay such debt ahead of the Subordinated Debt. See 11 U.S.C. Sections 1129(b)(1) and (b)(2). Moreover, if the Senior Unsecured Debt is stripped of its senior status as a result of the Debtor's PUHCA violations, paying such debt ahead of the TOPrS impermissibly discriminates against Class 8 TOPrS claims in violation of Section 1129(b)(1). See In re Lernout & Hauspie Speech Prods., N.V., 301 B.R. 651 (Bankr. D. Del. 2003) (noting courts have recognized rebuttable presumption that plan is unfairly discriminatory where there (i) is a dissenting class; (ii) another class of same priority; and (iii) a difference in the plan's treatment of the two classes that results in materially lower percentage recovery for the dissenting class).

**C.    The Plan Improperly Classifies the QUIPs and the TOPrS in the Same Class in Violation of Sections 510(a) and 1123(a)(1) of the Bankruptcy Code.**

11.    Section 1123(a)(1) of the Bankruptcy Code requires that, with the exception of certain priority claims, a plan classify all claims and all interests and that such classification comply with Section 1122 of the Bankruptcy Code. Section 1122(a) of the Bankruptcy Code permits a plan proponent to place a claim in a given class "only if such claim or interest is substantially similar to the other claims or interests of such class." 11 U.S.C. Section 1122(a). The "statute explicitly forbids a plan from placing dissimilar claims in the same class." In re Jersey City Med. Ctr., 817 F.2d 1055, 1060 (3d Cir. 1987).

12.    The Plan here treats the QUIPs and the TOPrS as pari passu in the same class (Class 8). However, as will be shown at the confirmation hearing and in the Indenture Trustee's brief in support of its objection to confirmation, indebtedness issued pursuant to the

- 6 -

QUIPs Indenture is <u>expressly</u> <u>subordinate</u> to that issued under the TOPrS Indenture. Accordingly, not only does the proposed treatment of the TOPrS violate Bankruptcy Code Section 510(a) (which provides that a subordination agreement is enforceable in a bankruptcy case to the same extent enforceable under applicable nonbankruptcy law), but the Plan's classification scheme improperly classifies senior and junior classes in the same class and is facially unconfirmable. <u>In re ZRM-Oklahoma P'ship</u>, 156 B.R. 67, 70 (Bankr. W.D. Okla. 1993) ("The language of this section is clear. It prohibits single classification of dissimilar claims").

## CONCLUSION

13.    WHEREFORE the Indenture Trustee requests that the Court enter an order denying confirmation of the Plan and granting such other relief as is just and proper.

Dated: Wilmington, Delaware
           August 2, 2004

                                        RICHARDS, LAYTON & FINGER, PA


                                        By:  Stephen E. Hermann (DE 691)
                                             Kimberly D. Newmarch (DE 4340)
                                             One Rodney Square
                                             PO Box 551
                                             Wilmington, Delaware  19899
                                             (302) 651-7700

                                                          -and-

                                             KRAMER LEVIN NAFTALIS & FRANKEL LLP
                                             Thomas Moers Mayer
                                             Philip Bentley
                                             Matthew J. Williams
                                             919 Third Avenue
                                             New York, New York  10022
                                             (212) 715-9100
                                             Attorneys for Wilmington Trust Company as
                                             Indenture Trustee