# APP. 15

Case 1:05-cv-00603-JJF    Document 24-19    Filed 02/02/2007    Page 1 of 9

APP. 15

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: ) <br> ) <br> NORTHWESTERN CORPORATION, ) <br> ) <br>         Debtor. ) <br> ) | Chapter 11 <br> Case No. 03-12872 (CGC) <br> **Objection Due:  August 25, 2004** <br> **Hearing Date:  August 25, 2004** |

**LAW DEBENTURE TRUST COMPANY OF NEW YORK'S OBJECTION TO (A) THE DEBTOR'S SECOND AMENDED AND RESTATED DISCLOSURE STATEMENT AND SUMMARY DISCLOSURE STATEMENT; AND (B) PROPOSED RESOLICITATION <u>PROCEDURES</u>**

Law Debenture Trust Company of New York, as successor Trustee (the "Indenture Trustee") to the Bank of New York, under that certain Indenture (the "QUIPS Indenture") dated as of November 1, 1996, as amended, pursuant to which the Montana Power Company ("Montana Power") issued certain 8.45% Junior Subordinated Debentures (the "Debentures") to Montana Capital I, which, then issued certain 8.45% Cumulative Quarterly Income Preferred Securities, Series A (the "QUIPS"), by and through its undersigned counsel, hereby objects to the Motion of Northwestern Corporation for an Order (A) Approving Debtor's Second Amended and Restated Disclosure Statement and Summary Disclosure Statement; (B) Establishing Procedure for Limited Resolicitation and Tabulation of Votes on Debtor's Second Amended and Restated Plan of Reorganization; (C) Approving the Form and Manner of Notice and (D) Granting Related Relief (the "Solicitation Motion").  In support of its objection, the Indenture Trustee respectfully states as follows:

BOS1411650.1

## BACKGROUND

### The Second Amended Plan and Disclosure Statement

1.  Through the Second Disclosure Statement, the Debtor seeks to solicit votes from creditors in Classes 7, 8 and 9 ratifying material alterations to the treatment of their claims under the First Amended Plan and accepting the Second Amended Plan.

2.  The Second Amended Plan now divides Class 8 – Subordinated Note Claims into two discrete subclasses: (a) Class 8(a) Unsecured Note Claims – Represented by TOPrS Notes; and (b) Class 8(b) Unsecured Subordinated Note Claims – Represented by QUIPS Notes, and, as detailed below, proposed separate treatment of those claims.

### The QUIPS Holders' Adversary Proceeding to Recover the Montana Utility Assets

3.  On April 16, 2004, the Indenture Trustee, along with Magten Asset Management Corporation ("Magten"), a QUIPS holder, commenced an adversary proceeding (the "Adversary Proceeding") against the Debtor seeking to avoid and recover the Montana Utility Assets.[1]  In the Adversary Proceeding, the Indenture Trustee contends, among other things, that the Going Flat Transaction was a fraudulent transaction in which assets worth approximately $1.15 billion were transferred from a solvent obligor, Clark Fork, to the Debtor for effectively no consideration.

4.  On or about May 15, 2004, the Debtor filed a motion to dismiss the Indenture Trustee's complaint to recover the Montana Utility Assets. In its motion, the Debtor argued that Indenture Trustee lacked standing to bring the fraudulent conveyances claims because it was no longer a creditor of Clark Fork.  Specifically, the Debtor argued pursuant to

---

[1] Capitalized words not otherwise defined herein have the meanings ascribed to them in the Indenture Trustee's Memorandum of Law in support of its Objection to Confirmation of the Debtor's First Amended Plan of Reorganization.

§1101 of the QUIPS Indenture that the Debtor was substituted for and succeeded to Clark Fork's obligations under the QUIPS Indenture and that pursuant to §1102 of the Indenture Clark Fork was expressly relieved of all obligations and covenants under the QUIPS Indenture.

5. On Friday, August 20, 2004, this Court entered a decision on the Debtor's motion to dismiss (the "Fraudulent Transfer Decision"). In the Fraudulent Transfer Decision, this Court found that the Indenture Trustee's contention that the purported release of Clark Fork under §1102 of the QUIPS Indenture was obtained by fraud "may have legs" and if the Indenture Trustee can prove that such a release was obtained by fraud, the release would be ineffective and the Indenture Trustee would be able to prosecute its fraudulent transfer claim against the Debtor.

**OBJECTION**

A. **The Second Disclosure Statement does not accurately characterize the status of the Adversary Proceeding or provide holders of Class 8(b) claims with sufficient information to meaningfully assess the value of their fraudulent transfer claims against this estate.**

6. At a minimum, the Second Disclosure Statement must set forth sufficient information for creditors to determine whether or not the treatment of their claims set forth in the Second Amended Plan is fair. See, e.g. Protective Comm. for Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-25 (1968) (in evaluating a proposed settlement the Court must consider all "factors relevant to a full and fair assessment of the wisdom of the proposed compromise.")

7. In a nutshell, through the Second Disclosure Statement, the Debtor requires that the QUIPS holders give up their fraudulent transfer and other claims against this estate in exchange for the distributions to Class 8(b) contemplated by the Second Amended Plan. Yet, the Second Disclosure Statement does not adequately describe to the holders of Class 8(b)

the causes of action the Indenture Trustee has asserted on their behalf or the benefits that would flow to the class from a successful prosecution of those claims.  Nor does it inform the holders of Class 8(b) claims that the Debtor's motion to dismiss was denied and that in the wake of this Court's Fraudulent Transfer Decision, the QUIPS holders can pursue fraudulent transfer claims against this estate to the extent that "they can prove under applicable law that the Section 1102 release was obtained through actual fraud or as part of a fraudulent scheme."  See Fraudulent Transfer Decision at 11.  In fact, the Second Disclosure Statement is devoid of any discussion of or reference to the Fraudulent Transfer Decision.  This omission renders the Second Disclosure Statement misleading and deprives the QUIPS holders of any meaningful opportunity to weigh the treatment being offered to them in the Second Amended Plan.  At minimum, each of the creditors in Class 8(b) should receive a copy of the Fraudulent Transfer Decision.

      **B.**      **The Second Disclosure Statement lacks any discussion whatsoever of the legitimate business reasons for bifurcating Class 8.**

      8.      As a result of its settlement with Wilmington Trust Company, as indenture trustee for the TOPrS Indenture and Harbert Management Corporation, the Debtor has sufficient votes to have Class 8 accept the First Amended Plan, as modified by the settlement.  Yet in the Second Amended Plan, the Debtor elected to bifurcate Class 8 into two subclasses and condition any distribution under the Plan to holders of Class 8(b) claims on that subclass voting to accept the Plan.

      9.      The Debtor has filed three prior versions of its plan and each version classified the holders of the QUIPS and the holders of the TOPrS together in the same class.  Now, on the eve of a confirmation hearing, the Debtor, in its fourth version of the Plan, has separately classified the holders of the TOPrS and the QUIPS, while stating on the record that the treatment of the classes was the same.  It appears that the Debtor's justification for this

4

eleventh hour attempt to alter the classification scheme may be to gerrymander the vote and compel Magten and the holders of the QUIPS to accept the Plan or forgo any distribution. See Boston Post Rd. Ltd. P'ship v. Fed. Deposit Ins. Corp. (In re Boston Post Road Ltd.), 21 F.3d 477, 483 (2d Cir. 1994) (the proponent of a plan may separately classify substantially similar claims provided there is a legitimate business reason for the separate classification other than to manipulate the vote).

10.     Furthermore, contrary to the Debtor's repeated representations, the treatment of the classes is not the same. QUIPS claims are clearly receiving inferior treatment relative to Class 8(a). Specifically:

- Harbert and Wilmington are receiving an additional sum of $2.25 million to cover their fees and expenses. Similar treatment is not being afforded to the Indenture Trustee and Magten.

- Allowed Class 8(a) claims are liquidated in the Second Amended Plan. In contrast, the Debtor reserves for itself and any other interested party the right to object to the claims of QUIP holders.

- Class 8(a) is not saddled with the "death trap" imposed on Class 8(b)[2].

11.     In sum, the Debtor should be required to identify with particularity the business and legal reasons for its election to bifurcate the class and to condition distribution to Class 8(b) on that subclass voting to accepting the Second Amended Plan. In addition, the Debtor should be required to explain the reasons for the disparate treatment of Classes 8(a) and 8(b) and how that disparate treatment is consistent with § 1123 of the Bankruptcy Code.

---

[2] The Indenture Trustee has also identified a variance in the Second Disclosure Statement concerning the pro rata distributions of common stock and warrants to Classes 8(a) and 8(b) will be receiving under the Second Amended Plan. The Debtor has advised the Indenture Trustee that this variance is a scriveners error and has undertaken to correct it. The Indenture Trustee raises this issue here as a protective matter only and reserves all of its rights in connection with this issue.

BOS1411650.1

      **C.**      **The Second Amended Disclosure Statement is devoid of any discussion of the fundamental choice QUIPS holders must make under the Second Amended Plan.**

      12.      The summary that the Debtor proposes to use to solicit votes for the Second Amended Plan does not adequately highlight the essential bargain the Debtor is trying to strike – that in exchange for the distributions to be made to Class 8(b) under the Second Amended Plan, the QUIPS holders surrender all claims and causes of action against the Debtor related to the QUIPs, "<u>including</u>, but not limited to, <u>fraudulent transfer claims against the Debtor, shall be automatically cancelled, annulled and extinguished</u>." (emphasis supplied). If the Second Amended Plan was specifically structured in order to dispose of the Adversary Proceeding, that information is material to the QUIPS holders decision whether to release their fraudulent transfer claims by voting to accept the Plan. Finally, the Debtor should be required to explain why its proposal to satisfy the claims of the QUIPS holders by providing them with consideration allegedly equivalent to that being furnished to Class 8(a) is proper where the QUIPS holders are required under the Plan to surrender their unique claims to recover the Montana Utility Assets.

      **D.**      **The Second Disclosure Statement lacks any analysis of the impact of any judgment the Indenture Trustee may obtain in the Adversary Proceeding on the feasibility of the Second Amended Plan.**

      13.      The Disclosure Statement should also analyze the impact on the distributions contemplated under the Second Amended Plan of any judgment the Indenture Trustee may obtain in the Adversary Proceeding. That analysis should contain, among other things, a discussion of how (a) the reorganized Debtor would satisfy that judgment, including but not limited, whether or not the Montana Utility Assets would have to be disgorged and (b) the effect of making a post-confirmation payment to the QUIPS holders in excess of $69.5 million

on the reorganized Debtor's post-confirmation cash flows and the value of the New Common Stock to be issued under the Plan.

### OBJECTION TO THE SOLICITATION
### PROCEDURES REQUESTED BY THE DEBTOR

14. Indenture Trustee objects to the Debtors proposal that only a summary of the Amended Disclosure Statement be distributed to Class 7, 8 and 9. Given the significant modifications to the Plan, the Indenture Trustee suggests that a red-lined version of the Amended Disclosure be circulated.

15. Furthermore, the Indenture Trustee objects to the abbreviated solicitation period. There may be significant logistical difficulties in getting the solicitation package into the hands of the individual QUIPS holders so that they have sufficient time to consider the Second Disclosure Statement and timely vote on the Plan. In light of the death trap provisions applicable to Class 8(b) the failure of that class to timely return ballots may mean that the class forfeits any distributions under the Plan. The Indenture Trustee requests, accordingly, that the Debtor certify to the Court and parties in interest when ballots received by Creditor in Classes 7, 8 and 9.

### RESERVATION OF RIGHTS

16. In accordance with the Court's order on August 20, 2004, the Indenture Trustee reserves all of its rights to object to confirmation of the Second Amendment Plan.

**CONCLUSION**

17.  For all of the foregoing reasons, the Indenture Trustee respectfully requests that its Objection to the Second Disclosure Statement be sustained and that the Second Amended Disclosure Statement not be approved, or in the alternative, approved only if modified to address the specific objections raised by the Indenture Trustee in the matter set forth herein.

August 25, 2004                              SMITH, KATZENSTEIN & FURLOW, LLP


/s/ Kathleen M. Miller
Kathleen M. Miller (DE No. 2898)
800 Delaware Avenue, 7th Floor
P.O. Box 410
Wilmington, DE 19899
Telephone:   (302) 652-8400
Facsimile:    (302) 652-8405

- and –

NIXON PEABODY LLP
John V. Snellings (BBO No. 548791)
Francis C. Morrissey  (BBO No. 567589)
Lee Harrington (BBO No. 548791)
100 Summer Street
Boston, MA 02110
Telephone:   (617) 345-1201
Facsimile:    (866) 947-1732

Counsel for Law Debenture Trust Company of New York

8