# APP. 19

1

2                   UNITED STATES BANKRUPTCY COURT
                          DISTRICT OF DELAWARE
3

4      IN RE:                        .        Chapter   11
                                     .
5      Northwestern Corporation,     .
                                     .
6                                    .
               Debtor.               .        Bankruptcy #03-12872 (CGC)
7      . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

8                              Wilmington, DE
                               August 20, 2004
9                                2:30 p.m.

10                    TRANSCRIPT OF EMERGENCY MOTION
                BEFORE THE HONORABLE CHARLES G. CASE, II
11                   UNITED STATES BANKRUPTCY JUDGE

12
       APPEARANCES:
13
       For The Debtor:               William E. Chipman, Jr., Esq.
14                                    Greenberg, Traurig, LLP
                                      The Brandywine Bldg.
15                                    1000 West St.-Ste. 1540
                                      Wilmington, DE 19801
16
                                      Adam Cole, Esq.
17                                    Greenberg, Traurig, LLP
                                      The Brandywine Bldg.
18                                    1000 West St.-Ste. 1540
                                      Wilmington, DE 19801
19
                                      Jesse Austin, Esq.
20                                    Paul Hastings Janofsky
                                      & Walker, LLP
21                                    600 Peachtree St.-24th Fl.
                                      Atlanta, GA   30308
22
                                      Karol Denniston, Esq.
23                                    Paul Hastings Janofsky
                                      & Walker, LLP
24                                    600 Peachtree St.-24th Fl.
                                      Atlanta, GA   30308
25

```
1                             Donna L. Harris, Esq.
                              Cross & Simon, LLC
2                             913 North Market St.-Ste. 1001
                              Wilmington, DE 19801
3
    For The Official Creditor's:  Eric Sutty, Esq.
4   Committee                     The Bayard Firm
                                  222 Delaware Ave.-Ste. 900
5                                 Wilmington, DE 19899

6                             Alan W. Kornberg, Esq.
                              Paul Weiss Rifkind Wharton
7                             & Garrison, LLP
                              1285 Avenue of the Americas
8                             New York, NY 10019

9                             Mikhail Ratner, Esq.
                              Paul Weiss Rifkind Wharton
10                            & Garrison, LLP
                              1285 Avenue of the Americas
11                            New York, NY 10019

12  For Harbert Management:   James Donnell, Esq.
                              Andrews Kurth, LLP
13                            Ste. 200
                              600 Travis
14                            Houston, TX   77002

15                            Jennifer M. Gore, Esq.
                              Andrews Kurth, LLP
16                            Ste. 200
                              600 Travis
17                            Houston, TX   77002

18  For Touch America Creditors:  Athanasios E. Agelakopoulos, Esq.
    Committee                     Young Conaway Stargatt
19                                & Taylor, LLP
                                  1000 West Street-17th Fl.
20                                Wilmington, DE 19899

21  For Magten Asset Management:  William J. Burnett, Esq.
                                  Blank Rome, LLP
22                                Chase Manhattan Centre
                                  1201 Market Street-Ste. 800
23                                Wilmington, DE 19801

24

25
```

3

```
 1                                Gary Kaplan, Esq.
                                  Fried Frank Harris Shriver
 2                                & Jacobson, LLP
                                  One New York Plaza
 3                                New York, NY 10004

 4                                Bonnie Steingart, Esq.
                                  Fried Frank Harris Shriver
 5                                & Jacobson, LLP
                                  One New York Plaza
 6                                New York, NY 10004

 7                                William Burnett, Esq.
                                  Fried Frank Harris Shriver
 8                                & Jacobson, LLP
                                  One New York Plaza
 9                                New York, NY 10004

10                                Meagan E. Costello, Esq.
                                  Fried Frank Harris Shriver
11                                & Jacobson, LLP
                                  One New York Plaza
12                                New York, NY 10004

13   For MBIA Insurance Corp.:    George South, Esq.
                                  King & Spalding, LLP
14                                1185 Ave. of the Americas
                                  New York, NY 10036
15
                                  Stefanie Burbrower, Esq.
16                                King & Spalding, LLP
                                  1185 Ave. of the Americas
17                                New York, NY 10036

18   For the State of Montana:    Francis Monaco, Esq.
                                  Monzack & Monaco, PA
19                                400 Commerce Center
                                  12th & Orange Sts.
20                                Wilmington, DE 19899

21   For Montana Public Service:  Al Brogan, Esq.
     Commission                   State of Montana
22   (Via telephone)              Public Service Commission
                                  1701 Prospect Ave.
23                                Helena, MT  59620

24

25
```

4

| | | |
|---|---|---|
| 1 | | Richard W. Riley, Esq.<br>Duane Morris, LLP |
| 2 | | 1100 N. Market Street-Ste. 1200<br>Wilmington, DE 19801 |
| 3 | | |
| | For Richard Hylland: | John D. Demmy, Esq. |
| 4 | | Stevens & Lee, PC<br>300 Delaware Ave.-Ste. 800 |
| 5 | | Wilmington, DE 19801 |
| 6 | For RCG Carpathia Master<br>Fund | Eric Haber, Esq.<br>Kronish Lieb Weiner |
| 7 | | & Hellman, LLP<br>1114 Avenue of the Americas |
| 8 | | New York, NY 10036 |
| 9 | For Credit Suisse First<br>Boston | Jason C. DiBattista, Esq.<br>Morrison & Foerster, LLP |
| 10 | | 1290 Ave. of the Americas<br>New York, NY 10104 |
| 11 | | |
| 12 | | Kevin Gross, Esq.<br>Rosenthal Monhait Gross |
| 13 | | & Goddess, PA<br>Ste. 1401 |
| 14 | | 919 Market Street<br>Wilmington, DE 19899 |
| 15 | For HSBC as Indentured<br>Trustee | Tina N. Moss, Esq.<br>Pryor Cashman Sherman |
| 16 | | & Flynn, LLP<br>410 Park Ave. |
| 17 | | New York, NY 10022 |
| 18 | For Wilmington Trust Co: | Philip Bentley, Esq. |
| 19 | | Kramer Levin Naftalis<br>& Frankel, LLP |
| 20 | | 919 Third Ave.<br>New York, NY 10022 |
| 21 | For Law Debenture Trust<br>Company of New York | John V. Snellings, Esq. |
| 22 | | Nixon Peabody, LLP<br>100 Summer Street |
| 23 | | Boston, MA 02110 |
| 24 | | Francis C. Morrissey, Esq.<br>Nixon Peabody, LLP |
| 25 | | 100 Summer Street<br>Boston, MA 02110 |

5

| | | |
|---|---|---|
| 1 | For Acting U.S. Trustee: (Roberta A. DeAngelis) | Joseph J. McMahon, Jr., Esq. U.S. Trustee's Office |
| 2 | | 844 King Street-Ste. 2313 Lock Box 35 |
| 3 | | Wilmington, DE 19801 |
| 4 | Audio Operator: | Stacy Pavese |
| 5 | Transcribing Firm: | Writer's Cramp, Inc. |
| 6 | | 6 Norton Rd. Monmouth Jct., NJ 08852 732-329-0191 |

7

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

6

1      (Proceedings in progress)

2      (Attorneys telephonically connected)

3          THE CLERK:  -- 03-12872, <u>Northwestern Corportion</u>.

4          THE COURT:  Good afternoon, I have an appearance list.

5   Are we ready to proceed?

6          MR. SNELLINGS:  Your Honor, John Snellings of Nixon

7   Peabody for Law Debenture Trust Company of New York.  We are

8   the moving party on our Motion to Adjourn the confirmation

9   hearing scheduled for next week the 25th.

10         THE COURT:  All right.  Go ahead, you may proceed.

11         MR. SNELLINGS:  All right.  I want to thank you for

12  taking the time to hear our Motion.  We greatly appreciate it,

13  and I appreciate the fact that we have so many counsel on the

14  line in this, well, late afternoon on Eastern Standard Time.

15  When we gathered last week to hear our report from the Debtor

16  regarding the status of confirmation, it was disclosed that the

17  Debtor in the Toppers, if you recall, the Toppers and my client

18  the Quips, are two issuances that are in Class 8.  But we heard

19  from the status report that the Debtor in the Toppers had

20  reached a settlement with regard to the objections to

21  confirmation that the Toppers and their representatives had.

22  The plan needed to be modified because Class 8 distribution was

23  going to increase from 2% of the common stock to 8% with a

24  possible additional 13% through the issuance of warrants.  The

25  terms of the warrants were not disclosed at that time last week

1    but nor were they finalized.  Given the impact of this

2    modification and the fact that it had a impact on Class 7 and

3    Class 9, it was also disclosed that there'd have to be a

4    resolicitation before this plan could go, this second amended

5    plan could go to confirmation; however, it was disclosed that

6    this would be a perfunctory resolicitation because Harbert, the

7    largest holder of the Toppers would change their vote and

8    accept the plan, thus, Class 8, the only dissenting class after

9    the voting of the initial plan, would now accept the plan both

10   in number and amount.  The Toppers make up approximately 82% of

11   Class 8, while the Quips represent about 18% of that class.  It

12   was also finally disclosed that this new Plan Disclosure

13   Statement in a motion to set up procedures for the

14   resolicitation and any other related documents, would be filed

15   some time on Tuesday, August 17th.  On this -- it goes without

16   saying that this new Class 8 treatment was a positive

17   development, moving from 8 -- 2% to 8% plus the warrants.

18   There is also, of course, open issues about the new treatment

19   that we, as representative of the Quips, had that needed to be

20   nailed down and fully appreciated before we could decide how we

21   might advise our clients to deal with this amendment.  For

22   example, the strike price of the warrants had not been

23   determined.  The term of the warrants.  Would they be

24   transferable?  Would they survive a sale of the company post-

25   confirmation?  Fairly clear from news reports that there's a

8

1    lot of interest in this company and so that's a real
2    possibility. So while this was a positive development in this
3    case, we also knew that there're a number of issues that still
4    needed to be addressed. Also, it -- this -- these amendments
5    aren't going to address the Trustee's primary concerns that
6    were detailed in our objection to confirmation that we had
7    filed earlier in the week. The fact that this amendment -- the
8    plan still had no provisions in which it dealt with the
9    adversary proceeding that Law Debenture and Magten has
10   presently in place against the Debtor with regard to the
11   fraudulent conveyance of the Montana Utility assets. There is
12   also issues that remain to the extent of whether the plan, in
13   any way, modified our property rights in the Montana Utility
14   assets. The classification with the Toppers, given our unique
15   interest in the fraudulent conveyance claim, as well as other
16   claims with regard to the plan such as the releases of third
17   parties, the director and officers treatment. So those issues
18   still remain; however, we did see it as a positive step and we
19   awaited for the amended plan. On August 16th, we had a
20   discussion with Debtor's counsel regarding the proposed new
21   treatment to get some more information so we could better
22   advise our client and have a better appreciation of the second
23   amended plan. During that conversation it was disclosed, for
24   the first time, that there were several twists in the
25   amendments that had not been disclosed during the Friday status

9

1  conference.  Essentially, those were three-fold:  (1) that
2  Class 8 was now going to be split into Class 8(a) and that
3  included the Toppers and Class 8(b) which included the Quips.
4  Within Class B, while they were still sharing in this 8% of the
5  new stock and also 13% of additional warrants, that with regard
6  to Class B there would be remaining the death trap provision,
7  meaning that if the holders of the Quips in Class B did not
8  vote to support the plan, they would receive nothing under the
9  plan.  Furthermore, a positive vote of -- for the plan, was a
10  waiver or dismissal of the adversary proceeding on the
11  fraudulent conveyance.  These changes, while not disclosed in -
12  - on the Friday status conference, are significant changes.  If
13  -- and we are -- had a grave concern that we had -- needed an
14  opportunity to start to address those and in a meaningful
15  fashion.  And while the Debtor, as stated in a revised
16  Disclosure Statement, that the separation of the two groups
17  into subclasses A and B was in response to our objection to
18  confirmation that we shouldn't be classified with the Toppers
19  as well as that the death trap provision is an incentive for us
20  to vote for the plan.  To the contrary we can -- they can only
21  be described as punitive with respect to our bringing of the
22  adversary proceeding and unnecessary, especially since with the
23  change of the Harbert vote, they had sufficient votes, both in
24  number and amount, to carry Class 8.  Having not received the
25  amendment or any of its related documents on Tuesday or

1   Wednesday, with confirmation hearing looming on August 25th, we

2   felt compelled to file this Motion for Adjournment. It is not

3   our intent to derail the confirmation process, but it is our

4   hope that with your intervention, that we will have a fair

5   opportunity to have a meaningful participation in this process.

6   We need time to analyze and appreciate this new treatment. The

7   appropriateness of the subclass structure, the appropriateness

8   of the death trap provision, we need to test the value of the

9   warrants. This will need some time to research and draft and

10  file a new objection to confirmation. None of those processes

11  are now indicated in any of the motions that have been filed by

12  the Debtor, and we believe for this to be a fair and

13  appropriate confirmation process, that we should be afforded

14  the appropriate time to be able to do that. We might also need

15  to take discovery of the Debtor with regard to these changes.

16  And we should be able to do this in a meaningful fashion and

17  not under the unnecessary pressure of being in the midst of a

18  confirmation hearing. The agenda that is circulated now for

19  the 25th states that as item number two, the confirmation of

20  the first amended plan, is going forward on the 25th. Item

21  number, I think, six is a Motion For Approval of the Disclosure

22  Statement for the second amended plan. It seems ridiculous to

23  move forward with a plan that they have recognized needs a

24  resolicitation of at least three different classes, when that

25  solicitation will not even have started prior to the

1  commencement of the confirmation hearing.  It breaks it up, it

2  makes it piecemeal and will only lead to confusion.  And the

3  Debtor concedes that they cannot get everything done on the

4  25th so it begs the question, "Why even start?"  Let's do this

5  in the fashion that is outlined in the Code as the process for

6  confirmation and -- in which the Disclosure Statement is

7  vetted, people have the -- an opportunity to object to

8  confirmation, the votes are solicited and gathered and then

9  confirmation begins.  We are putting the proverbial horse

10  before the cart.  And, like I said, we are not making this

11  Motion to derail this process.  We know that this is a case

12  that is moving toward confirmation.  You know, the train has

13  left the station with regard to that.  We just don't want to

14  make sure that we're tied to the tracks without an opportunity

15  to be a meaningful participant in this process, and, therefore,

16  we ask that the August 25th hearing be adjourned and scheduled

17  later in September and that we schedule a time period for us to

18  do the work necessary to analyze this very significantly

19  amended second plan.

20         THE COURT:  Well, before I hear from the Debtor or the

21  other parties, counsel, what is your -- what would your

22  proposed amount of delay be?

23         MR. SNELLINGS:  Your Honor, I think that with regard

24  to filing objections to disclosures -- filing objections to

25  confirmation, I think we need a couple weeks to -- before we

12

1  can finalize an objection to this plan as it now stands.  I

2  mean, I think that we could be ready to go toward confirmation

3  by the end of September.

4  THE COURT:  Well, a couple of weeks could be sooner

5  than that.  I mean, today's the 20th or 21st, 20th, and a

6  couple of weeks would be the 9th, I believe.  No, it would be

7  the 2nd from now.  I mean, for example, well, a -- the question

8  is whether or not you want a couple of weeks from the existing

9  date of the 25th or you need a couple of weeks from now in

10  order to get ready for a hearing later on in September.

11  MR. SNELLINGS:  Your Honor, I got about four inches of

12  documents here with regard to the Disclosure Statement and the

13  amended plan.  Right now, the Disclosure Statement in which, I

14  believe, the Court has to move on to find its adequacy.  I

15  think we'll have an opportunity, first, to address any issues

16  we have with the Disclosure Statement.  That's right now set up

17  for the 25th.  And so I think, first, we have to get that out

18  of the way, and then I would suggest that we have after that,

19  while the solicitation process is going on, we have three weeks

20  to draft a new objection to confirmation.

21  THE COURT:  All right.  Who wants to respond on behalf

22  of the Debtor first?

23  MR. AUSTIN:  Jesse Austin will respond on behalf of

24  the Debtor, Your Honor.

25  MR. KAPLAN:  Your Honor, since Magten filed a joinder

13

1   may we be heard before the Debtor --

2       THE COURT:  I'm sorry.  I can't hear.

3       MR. KAPLAN:  Your Honor, since Magten filed a joinder,

4   could we be heard before the Debtor responds?

5       THE COURT:  All right.  Just make sure you identify

6   yourself for the record.

7       MR. KAPLAN:  Sure, Your Honor.  It's Gary Kaplan from

8   Fried Frank.  Your Honor, first just to address the timing

9   issue, as I understand the Debtor's papers, they are seeking to

10  continue the confirmation hearing late in September.  They are

11  picking a date around September 23rd.  So what the Debtor was

12  proposing, as I understand it, is to begin the hearing on

13  August 25th and then to have nearly a month adjournment while

14  the solicitation goes on and then to finish the hearing.  So

15  when Mr. Snellings asked for a few weeks to respond and then to

16  have a hearing, I think the timing that he is proposing is

17  consistent with what the Debtors are doing other than the fact

18  that, for some reason, they want to start on the 25th.  And,

19  Your Honor, the Debtor is seeking relief that's not only

20  unorthodoxed, but there really is no basis in the Code or the

21  rules and it provides no benefits to the estate.  I've been

22  struggling, along with some others, trying to understand what

23  benefit there is starting the hearing, then having the

24  solicitation and then coming back to the Court nearly a month

25  later and asking the Court to then rule on it.  There have been

14

1   absolutely no facts set forth that would justify such a

2   departure from the process that's outlined in the Bankruptcy

3   Code in the Bankruptcy Rules.  In every case you could always

4   say, once we're already having a Disclosure Statement hearing,

5   well, let's start the confirmation hearing today, let's provide

6   evidence and, you know what, then we'll solicit, then we'll all

7   come back in a month and if everything's resolved, we'll go

8   forward.  If not, we'll finish our hearing then.  As the

9   Debtors acknowledge in their own papers and their Memo of Law,

10  they acknowledge that to the extent that Class -- that both

11  Classes 8(a) and 8(b) ultimately accept the plan, the Debtors

12  will, and I'm quoting from them, "minimize the expense of a

13  contested and possibly protracted confirmation process."

14  Because they concede both classes' acceptance will minimize

15  cost and expense to all parties and minimize the amount of

16  judicial involvement, why begin now before we even know whether

17  or not those classes will accept or not?  It doesn't make any

18  sense.

19        THE COURT:  Is the idea now, if I understand, that the

20  Class A and Class B -- excuse me -- Class 8(a) and Class 8(b),

21  8(a) being the Toppers and 8(b) being the Quips, that those

22  will be solicited separately and then counted separately for

23  purposes of acceptance?

24        MR. AUSTIN:  Yes.  Your Honor, it's Jesse Austin on

25  behalf of the Debtor.  That is correct.  There are two separate

15

1  classes at this point.

2       THE COURT:  Okay.

3       MR. AUSTIN:  And I'll address that in a minute.

4       MR. KAPLAN:  And, Your Honor, as Mr. Snellings said,

5  the holders of the Quips need time to understand whether or not

6  to pursue an objection.  Right now we're being told, "You have

7  three days.  Make up your mind."  So, therefore, with

8  insufficient information in order to preserve our rights, it,

9  in essence, forces us to object and then to have a lengthy and

10  protracted confirmation.  Who knows what's going to happen over

11  the next month?  If you had looked a month ago, you would have

12  assumed that Harbert was going to be a very difficult part of

13  confirmation and that we were going to have to be dealing with

14  a long hearing just on Harbert's issues.  Well, when the Debtor

15  started talking to Harbert, they were able to resolve those

16  issues and those issues went away.  What the Debtors are

17  seeking now is to avoid any discussions with any party, to

18  start a confirmation hearing without giving any party the

19  opportunity to fully analyze the plan to determine what they

20  want to do.  And what they're essentially doing, Your Honor, is

21  trying to ambush the holders of the Quips, separately classify

22  them at the last minute and force this plan down their throat.

23       THE COURT:  So just again so I understand, because I'm

24  not sure I had a full understanding of this based upon the

25  conversations of the other day.  The changes in the treatment

16

1    with regard to Class 8, including Class 8(a) and Class 8(b),

2    the increase of the equity portion and the warrants are going

3    to be available both to 8(a) and 8(b) on a pro rata basis?

4             MR. SNELLINGS:  That is correct, Your Honor.

5             THE COURT:  So that the economic benefit of sweetening

6    the pot flows to both Quips and Toppers?

7             MR. SNELLINGS:  That is correct, Your Honor.

8             THE COURT:  And so the issue now is in this other

9    treatment with regard to the Quips that counsel is -- well, I'm

10   not saying that they've accepted the fact that it's now at a

11   level that satisfies the Quips, I'm not suggesting that.  But,

12   at least, there is not a discrimination issue as far as the two

13   of them are concerned.

14            MR. AUSTIN:  Well, Your Honor, that may or may not be

15   true because --

16            THE COURT:  Well, I mean as far --

17            MR. AUSTIN:  -- they have, they're -- the

18   classification is somewhat different and they do have some

19   portions of the treatment are different.

20            THE COURT:  I understand that but I'm just -- purely

21   on the economic issue of their entitlement to the gross amount

22   of equity plus warrants that are being allocated to the

23   subordinated debt.  That's being shared on a pro rata basis.

24            MR. AUSTIN:  That's correct, Your Honor.

25            THE COURT:  Okay.  Mr. Austin, go ahead.

1          MR. AUSTIN:   Well, I -- Debtor obviously opposes any
2   request for a continuance.   The treatment as the Court itself
3   has just honed in on, is identical, and all we're doing is
4   effectively improving, not reducing, but improving the recovery
5   to the Quips as well as with the Toppers on a pro rata basis as
6   the Court noted.   The procedures which we are proposing to
7   follow are, indeed, what's outlined in the Code and that we are
8   simply presenting a modification that enhances the treatment of
9   subordinated Creditors which heretofore have already rejected
10  the plan.   We have to, by law, resolicit at least to the Class
11  8 -- excuse me, the Class 7 because that's where the Sedina
12  Creditors gave up their recovery for purposes of helping to get
13  the plan confirmed, if you will, on a consensual basis.   The
14  death trap of which Mr. Snelling refers to and complains, was
15  in the prior plan which the Quips understood and rejected when
16  they voted as a Class 8 Creditor to reject the plan.   With
17  respect to the fact that we have subclassified, if you will,
18  the Toppers and the Quips, that is, indeed, what Wilmington
19  Trust and Magten asked for in their objections previously
20  filed.   They said that they should not be separate -- they said
21  they should effectively be separately classified.   So we gave
22  them what they asked for.   And with respect to the issue
23  relative to the adversary case, all the Debtor is doing there
24  is confirming the Debtor's position that they only get one
25  recovery and they take it under the Quips.   We believe there's

18

1   no basis whatsoever, Your Honor, for delaying this confirmation

2   hearing.

3           THE COURT:  Well, except --

4           MR. AUSTIN:  I would ask, excuse --

5           THE COURT:  -- except --

6           MR. AUSTIN:  -- me, Your Honor.

7           THE COURT:  -- except that -- except -- well, I mean,

8   the problem is, Mr. Austin, is that under no set of

9   circumstances are we going to be at a position on August 25th

10  to confirm the plan because the Second Amended Disclosure

11  Statement, which is the basis of the resolicitation, will not

12  have been approved under the best-case scenario until then.

13          MR. AUSTIN:  That is correct, Your Honor.  But the --

14  the law -- excuse me, the objections which they have raised are

15  not unique and they're not going to be any different

16  effectively from -- with the modification but with respect to

17  the Disclosure Statement, what we have done there with the

18  summary is simply described that we improve in the

19  distributions to the class of Creditors who are now trying to

20  oppose us from moving and get them actually that increased

21  distribution.

22          THE COURT:  Although what they're saying, Mr. Austin,

23  well, at least what I hear them saying, is, "We don't know yet

24  whether we're going to oppose this plan with this new

25  distribution because we have not fully analyzed all of the

1    bells and whistles and the numbers and so on to decide whether

2    or not, as opposed to fighting, this is something we want to

3    do." That's --

4    MR. AUSTIN: We understand that, Your Honor, but at

5    the end of the day, we will still have a fight whatever day it

6    is, whether it's with the Quips or not because we do have

7    equity holders who are raising the question of valuation. We

8    have to go through that battle under any circumstances and the

9    evidence which we really intend to present and would like to

10   present on the 25th goes effectively to the valuation questions

11   and the ability to meet the other 1129(a) test that are more

12   factual in nature. I would note that at least at this point,

13   the Quips have not raised any question about the valuation, the

14   overall valuation, of the Debtor under any circumstances. If

15   you look at the list of witnesses, they have not filed any list

16   of witnesses relative to experts on valuation and that does not

17   appear to be their issue. So the issues which we would propose

18   to present the evidence on next Wednesday which we, contrary to

19   what may have been said here today, we certainly anticipate

20   that all the fact-based evidence that is necessary for

21   confirmation of this plan, we can present next Wednesday such

22   that the only thing the Court would then have to evaluate

23   thereafter, is the question of the certification of the vote.

24   And that simply is a mechanical process we, unfortunately, have

25   to go through under the current circumstances because we have

20

1   votes -- distributions that came out of the Class 7 and that,

2   you know, if we could, indeed, say that the change of votes by

3   the holders of the Class 7 would stand, which we certainly

4   believe they will, then we believe we're ultimately going to

5   have acceptance of both -- of Class 7, Class 8(a) and Class 9

6   all -- Class 7 and 9 have already accepted the plan, and as a

7   matter of law, unless they change their vote affirmatively,

8   their prior votes of yes continue and count for a yes vote for

9   the amended plan whatever else happens.

10          THE COURT:  But --

11          MR. AUSTIN:  The -- we think --

12          THE COURT:  -- but part of the --

13          MR. AUSTIN:  -- that procedurally, we are in good

14  stead and certainly request the Court to allow us to move

15  forward next week.

16          THE COURT:  Well, part of the fact evidence that you

17  would have to present, though, in a contested confirmation,

18  would be the fact evidence supporting the cram down of 8(b) if

19  they, in fact, reject the plan.

20          MR. AUSTIN:  I couldn't hear you exactly, Your Honor.

21          THE COURT:  Well, isn't that right?  I -- well, what I

22  said was, you said all the fact-based -- with -- I mean, you

23  know, for example 1129(a) stuff, I understand what you're

24  saying there.  The valuation issue to flesh out the issue

25  between the equity and the Debtor, I understand that.

21

1      MR. AUSTIN:  But --

2      THE COURT:  But if you have a -- if you end up with --

3  the other fact-based evidence you're going to have to have is

4  whatever's necessary to support the cram down, the 1129B

5  treatment of 8(b) or maybe, you know, I guess --

6      MR. AUSTIN:  Yeah, but our perspective, Your Honor,

7  the issue -- the evidence we're going to present on that

8  point's not going to be any different from the evidence we're

9  going to present relative to the valuation that we have to

10  address with the equity holders so that the Court can proceed

11  on that front and if down the road Class 8(b) actually accepts

12  then it's a nonissue.  You don't have to address it under any -

13  - in any event.  But we certainly would ask this Court to deny

14  the Motion for a continuance to allow us to proceed, and we

15  have our witnesses ready and we certainly are prepared to move

16  forward.  A delay certainly does, indeed, cost the Debtor money

17  because we are, hopefully, staying on track to possibly get out

18  by end of September, certainly early October and then, you

19  know, if we can, as the Court may have noticed on the docket

20  today, we filed -- I believe it was today, it may have been

21  yesterday, we have filed a Motion to approve incurring certain

22  fees and expenses in connection with exit financing which if we

23  can -- if and when we can complete that exit and engage in or

24  enter into that new financing, the Debtor's estimation is it

25  that it was going to reduce our interest carry by somewhere

1  around 200, 300 basis points on a significant amount of debt.

2  THE COURT:  Well, what about the issue of -- you've

3  also filed a Motion -- you filed a complaint against Magten.

4  MR. AUSTIN:  Yes.

5  THE COURT:  You've also filed a Motion to allow their

6  -- to estimate their claim.

7  MR. AUSTIN:  Right.

8  THE COURT:  Are you intending to do anything in

9  connection with any of that at the October -- at the August

10  25th hearing?

11  MR. AUSTIN:  No, Your Honor.  We don't -- we didn't --

12  not have to have that issue addressed at the confirmation

13  hearing.

14  THE COURT:  Well, is there a way to deal with both of

15  these positions?

16  MR. AUSTIN:  Well, we could certainly think there is,

17  Your Honor, because the fact that if we went forward and

18  presented our evidence in the process to the extent that the --

19  excuse me, Law Debenture and Magten still had legal basis by

20  which they had to -- wanted to oppose the confirmation, they

21  could -- you could set a date by which they could file their

22  briefs and post-confirmation briefs in that regard.

23  THE COURT:  Well --

24  MR. AUSTIN:  And that gives them the opportunity to

25  address, ultimately, the legal issues --

1          THE COURT:  Well what I --

2          MR. AUSTIN:  -- relative to this amended plan.

3          THE COURT:  Well, I guess what I'm thinking about is

4   what about the 1129(a) issues plus the valuation issues with

5   the equity?  What if that's what, as you suggested, that's what

6   it is you're going to address at the October -- excuse me, the

7   August 25th hearing?

8          MR. AUSTIN:  Right.  And we could address that here,

9   Your Honor, frankly, we could do that valuation question and

10  1129(a) points and if, at the end of the day, there are

11  evidentiary points which Magten and Law Debenture think are

12  important and feel serious about, you could reserve on those

13  issues and reschedule the hearing or continue the hearing as

14  we've asked in defense of bringing those points up when we get

15  to the point of the -- recertifying the vote.

16         THE COURT:  Well, that's -- I guess that's what I was

17  suggesting.

18         MR. AUSTIN:  Yeah, and that's --

19         THE COURT:  I --

20         MR. AUSTIN:  -- we'd be fine with that concept, too.

21         THE COURT:  I understand that you have time, you have

22  witnesses ready, you want to go forward with the hearing, you

23  need to make a record, you want to address, particularly, the

24  questions with regard to the equity, that's important evidence.

25  I need to hear that and so on.

1    MR. AUSTIN:  And we have no problem if, from that

2 standpoint, you'd want to reserve on those Magten Law Debenture

3 issues and we'd come back at the date that you would set to

4 recertify the vote.

5    MS. STEINGART:  All right.  Speaking --

6    ?:  Your Honor, this is --

7    MS. STEINGART:  Your Honor, it's Bonnie Steingart.  If

8 I might just --

9    MR. AUSTIN:  Your Honor, I think Mr. Kaplan's already

10 spoken for Magten.  I don't think it's appropriate --

11    THE COURT:  Right.

12    MR. AUSTIN:  -- to have two lawyers --

13    THE COURT:  Well --

14    MR. AUSTIN:  -- speak for one person at this --

15    THE COURT:  Hold on.

16    MR AUSTIN:  -- one entity.

17    MR. KORNBERG:  Your Honor, it's Alan Kornberg for the

18 Committee and I would like to be heard in support of the

19 Debtor's position.  If I might, Your Honor.

20    THE COURT:  All right.  Go ahead, Mr. Kornberg.

21    MR. KORNBERG:  Your Honor, we do think it's important

22 to go forward next week.  The experts that the principle of our

23 testimony that you're going to get in this case relates to the

24 valuation issue.  In that regard, there're experts on all sides

25 that have filed their report, completed discovery and the like,

1  and there is really absolutely no reason why that testimony

2  should not go forward next week.  The treatment of the equity,

3  which is the party that has objected to the valuation

4  testimony, has not changed under the amended plan.  The amended

5  plan still provides that the equity insurance receive nothing.

6  Those issues are fixed in all respects and, I think, it would

7  enormously inconvenience a lot of people who planned around the

8  August 25th date.  And I think it -- there is no unfairness in

9  going forward on those issues.

10        THE COURT:  Well, that --

11        MR. KORNBERG:  With respect to the changes that have

12  been made, I do think that Magten and Law Debenture raised a

13  point that has some force, which is that to the extent that

14  they have objections based on the amended plan, they certainly

15  should be given an opportunity to raise those objections.  But,

16  Your Honor, I would respond as follows.  We have increased

17  treatment of the subordinated debtholders by giving them four

18  times the amount of equity originally promised under the plan

19  and, in addition, warrants for a significant portion of the

20  reorganized company.  It doesn't take weeks to analyze those

21  changes.  It takes hours or, perhaps, days.  Though certainly

22  due process requires that they have an opportunity to address

23  those changes and file whatever supplemental objections they

24  may have, but I don't think it would take three weeks to do

25  that.  Also, Your Honor, there is no bankruptcy rule that says

1   that the confirmation hearing has to be conducted in

2   consecutive days.  There is no reason why we couldn't start on

3   the 25th and then -- and dispense with the valuation testimony

4   and come back at a later date when we have the results of the

5   resolicitation and also address whatever supplemental

6   objections might have been raised by Magten and Law Debenture

7   at that time.  So we think that the schedule can begin on the

8   25th and it can accommodate everybody's competing needs which

9   are the desire of the company and the Creditors' Committee to

10  keep this on track  the greatest extent possible but also to

11  afford any fair opportunity for any additional objections to be

12  heard.  As for the separate classification between 8(a) and

13  8(b), I would echo what Mr. Austin said.  If Your Honor looked

14  at the Magten objection, almost half of it is devoted to a

15  description of why Magten has different legal rights and

16  interests from the Toppers and, quite frankly, the genesis of

17  that separate subclassification was really to dispense or to

18  meet and satisfy the objection raised by Magten.  But as Your

19  Honor pointed out, the enhanced treatment is available to all

20  subordinated Creditors whether they're Toppers or Quips.  So,

21  again, we would urge the Court to go forward on the 25th.  We

22  all recognize we have to come back at a later day, we're all

23  prepared to do that and to dispense our supplemental objections

24  based on the planned amendment.  There will be a full and fair

25  opportunity for those objections to be heard.

27

1          THE COURT:  All right.  So Mr. Snellings?  Are you

2    there?  Mr. Snellings?

3          MR. SNELLINGS:  Yes, Your Honor.

4          THE COURT:  What about that?  It seems to me that a

5    reasonable way to deal with this is to deal with the evidence

6    that needs to be addressed in any event and to give you an

7    opportunity to review and file supplemental objections.  I'm

8    not sure you need as much time as you say.  But to give you

9    that opportunity and then, in affect, to reserve those

10   objections to the time of what everybody agrees will have to be

11   a continued hearing.  What's the matter with that?

12         MR. SNELLINGS:  It's hard to speculate as to what

13   evidence is going to come in on the 25th and whether or not I

14   need to respond on the 25th to those issues or that everything

15   is reserved to some later date and, you know, there's a certain

16   importance of the continuity of examination and cross-

17   examination that I feel that there's a -- my Creditors are --

18   position and our presentation if we're sort of doing this in a

19   disjointed fashion.

20         THE COURT:  Well, I must tell you, I can't guarantee

21   you you're not going to do it in a disjointed fashion, anyway.

22         MR. SNELLINGS:  No, I understand that.  I understand

23   the confirmation hearing can be put off, you know, from one day

24   to another and sometimes, you know, weeks intervene.  What I'm

25   concerned about is the fact that we're going to start down this

1  road on confirmation prior to, you know, the final

2  solicitation, and I just do not think that that's an

3  appropriate way to conclude this case.

4         MR. AUSTIN:  Your Honor, Debtor certainly will

5  volunteer and agree to bring back any witnesses that it

6  presents which any of the parties would ask us to bring back at

7  a subsequent hearing.

8         MR. KAPLAN:  Your Honor, Gary Kaplan again.  What the

9  Debtors are really asking for is have a confirmation hearing

10 before disclosure statement is approved and before vote is

11 taken.  And I understand the convenience of the parties but

12 there is absolutely no basis to have it in that fashion and to

13 start taking evidence, and I understand that while people have

14 been preparing but, you know what, Your Honor?  This was all in

15 the Debtor's control.  They had this in their control.  They

16 determined this was the way they wanted to go.  They wanted to

17 fight and then at the end to deal with one party, maybe one day

18 they'll deal with other parties who have (indiscern.)  But the

19 point is, having a procedure that's backwards and starting

20 confirmation before even a disclosure statement is approved,

21 (indiscern.) convenience.

22        MR. AUSTIN:  Your Honor, with all due respect, the

23 disclosure statement has been approved.  We are just --

24        THE COURT:  Right.

25        MR. AUSTIN:  -- supplementing it.

1        MR. KAPLAN:  And, Your Honor --

2        THE COURT:  Right, I understand.

3        MR. KAPLAN:  -- if I --

4        THE COURT:  Let's not argue here.  Here's what I'm

5   going to do.

6        MR. KAPLAN:  Your Honor, if I could just finish.  Is

7   that, you know, clearly we shouldn't have to object by

8   Wednesday, the same time it's objected at disclosure and

9   certainly we shouldn't have to cross-examine any witnesses and

10  we should have the right to -- that the Debtors could recall

11  all their witnesses to the extent necessary later in September,

12  which leads back to the point of how is this convenient for

13  people that have to sit through two hearings?

14       THE COURT:  Well, you're going to have to sit through

15  two hearings anyway is the facts of the matter.

16       MR. KAPLAN:  Yeah, but one could be a, perhaps, an

17  uncontested hearing where it's simply --

18       THE COURT:  Well --

19       MR. KAPLAN:  -- a matter of --

20       THE COURT:  -- and one may be an uncontested hearing.

21       MR. AUSTIN:  That's right, Your Honor.

22       THE COURT:  One may end up --

23       MR. AUSTIN:  Because if they vote --

24       THE COURT:  -- being an uncontested --

25       MR. AUSTIN:  -- ultimately, if they vote Class 8(b)

1    votes for it, there's nothing that Mr. Kaplan needs to have us

2    bring any witnesses back for.

3           THE COURT:  Right.  Here's what I'm going to do.  I

4    don't want -- we don't need to talk about this anymore.  I'm

5    not going to vacate the hearing next week.  I am going to

6    direct that the Debtor direct its evidence towards the 1129(a)

7    issues and towards the valuation issue.  I'm going to allow a

8    cross-examination by all parties.  I'm going to require the

9    Debtor to recall witnesses if requested by any of the objecting

10   parties or if we don't have enough time to finish, and I'm

11   going to give the parties in 8(b) whose treatment is being

12   changed, additional -- and who have not already consented to

13   the treatment, additional time to object.  That additional time

14   to object will be, it seems to me, two weeks from today is

15   plenty.  And then, we'll have that hearing, we'll -- it will

16   perhaps help shake out whether some of these issues -- I don't

17   think it is totally uncalled for or totally contrary to the

18   Code.  We do have an approved disclosure statement.  It is not

19   changing as regards to parties such as equity who have objected

20   and who will continue to object.  And that's -- it's obvious

21   that the evaluation evidence also may have impact upon -- from

22   a cram down basis -- upon a dissenting junior class of

23   creditors, although there is nobody junior to them who's

24   receiving anything under the plan.  So that may be a fight

25   without really a basis in law.  So it seems to me it makes

31

1  sense to deal with both of these concerns.  I am sensitive to

2  the fact that we've set aside this time, parties have geared up

3  to do it.  I'm also sensitive to the fact that certainly the

4  holders of the 8(b) claim should have a reasonable opportunity

5  to analyze and consider and that those issues are the ones that

6  can really be taken up along with the results of the

7  resolicitation at the later hearing.  Now shall we set a later

8  hearing now or shall we wait until August and see how far we

9  get?

10         MR. AUSTIN:  Your Honor, I think the Debtor would

11  request that we set that hearing next week so we see if there's

12  any discussions that may be had, I guess, between now and then.

13         THE COURT:  So is that clear enough to everybody?  In

14  other words, you do get to reserve -- the Movants here today

15  can have their issues reserved.  They can cross-examine, but

16  they won't be limited by the cross-examination.  The Debtor

17  will be obligated to bring back the witnesses before the cross-

18  examination.  That may create some litigation advantage to the

19  Objectors but the Debtor would rather do it that way than have

20  the matter be put off and I think that's a reasonable judgment.

21  So I would rather, frankly, get the matter under way with

22  regard to what's going to be necessary evidence in any event

23  while, at the same time, considering the objections of the

24  holders of the Quips.

25         MR. SNELLINGS:  (inaudible)

32

1      THE COURT:  I'm sorry?

2      MR. SNELLINGS:  Your Honor, John Snellings.  Just one

3  point of clarification.  If we determine the need for some

4  discovery during that period, I would assume that that would be

5  permitted?

6      THE COURT:  Well, we have a contested confirmation

7  hearing which is a contested matter to which the Discovery

8  Rules apply.  So that's another reason, I think, it makes sense

9  to take up at the time of the hearing next week, when and where

10  we're going to set any continued hearing.  We'll see, for

11  example, if there's issues with regard to the amended

12  disclosure statement that can't be resolved at that point.

13  That could have an impact upon what the resolicitation is.  I'm

14  not anticipating that will happen, but it seems to me at the

15  end of that hearing, we'll have a much better idea how much

16  time, what kind of discovery is required, what the timing is

17  and so on.  But I think you need to -- I'll set now a two-week

18  time period from now for the filing of any additional

19  objections.  If you need to have that extended for any reason,

20  you can file a separate motion.  Is that clear enough?

21      MR. SNELLINGS:  Yes, Your Honor.

22      THE COURT:  All right.  I have entered today an Order

23  concerning the Motion to Dismiss with regard to the Magten

24  matter so that should be available on the ECF docket in

25  Delaware.  Anything else?  I have not yet entered the Order on

33

1   the MOU.  This week has turned out to be quite a bit more

2   difficult than I anticipated last week.

3           MR. AUSTIN:  Your Honor, in respect to the MOU, since

4   we do have a confirmed deal with Harbert and Wilmington Trust

5   and we signed a term sheet to that affect yesterday, I can

6   advise the Court that in accordance with the terms of that term

7   sheet, Harbert and Wilmington trust will be withdrawing their

8   objections to that MOU.  Probably they have -- I think they

9   have to file that withdrawal of their objections on Monday.

10          THE COURT:  Right.  I have reviewed the docket today

11  to see if, in fact, that withdrawal had been filed and I did

12  not see anything yet.

13          MR. AUSTIN:  And we have a four -- we had a two-day --

14  two business days' requirement, and we didn't get the term

15  sheet executed fully until, probably, this morning, so -- but

16  they will be doing that in accordance with that term sheet.

17          MS. GORE:  Your Honor, this is Jennifer Gore on behalf

18  of Harbert.  That is correct.  Wilmington Trust actually did

19  not file an objection so it is only Harbert and we have the two

20  business days.

21          MS. STEINGART:  Right, but Magten still has an

22  objection to the MOU.

23          THE COURT:  I understand.

24          MR. AUSTIN:  That's correct.

25          THE COURT:  I'm familiar with the Magten objection.  I

34

```
 1   was reviewing it today.

 2           MR. AUSTIN:  Oh, okay.  Thank you, Your Honor.

 3           THE COURT:  Okay?  All right, thank you.

 4           ALL:  Thank you.

 5           THE COURT:  We're adjourned.  We'll see you next week.

 6       (Court adjourned)

 7

 8                       CERTIFICATION
     I certify that the foregoing is a correct transcript from the
 9   electronic sound recording of the proceedings in the above-
     entitled matter.

10

11   _____            9-9-04
     Signature of Transcriber             Date

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```