# APP. 23

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------------- x
|  |  :  |  |
| In re: | : | Chapter 11 |
|  | : |  |
| NORTHWESTERN CORPORATION, | : |  |
|  | : | Case No. 03-12872 (CGC) |
| Debtor. | : |  |
|  | : |  |
|  | : |  |
---------------------------------------------------------------------- x

**REQUEST OF LAW DEBENTURE TRUST COMPANY OF NEW YORK FOR PAYMENT OF FEES AND REIMBURSEMENT OF EXPENSES PURSUANT TO THE DEBTOR'S PLAN OF <u>REORGANIZATION AND APPLICABLE TRUST INDENTURE</u>**

| | |
|---|---|
| **Name of Applicants:** | Law Debenture Trust Company of New York, Nixon Peabody LLP and Smith Katzenstein & Furlow, LLP |
| **Period for which compensation is sought:** | September 23, 2003 through November 1, 2004 |
| **Amount of compensation requested:** | $958,075.87[1] |
| *Nixon Peabody LLP* | $820,463.50 |
| *Law Debenture Trust Company of New York* | $129,564.87 |
| *Smith Katzenstein & Furlow, LLP* | $8,047.50 |
| **Amount of expense reimbursement requested:** | $21,994.49 |
| **Annual Administration Fee:** | $45,000.00 |

---

[1] The Law Debenture Parties hereby expressly reserve the right to seek payment of any and all fees and expenses incurred in preparation of this Request for Payment, including without limitation, those fees and expenses associated with drafting the Request, responding to any objections thereto and attending any hearings with respect to the Request.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------------- x
                                                    :
In re:                                              :  Chapter 11
                                                    :
NORTHWESTERN CORPORATION,                           :
                                                    :  Case No. 03-12872 (CGC)
                           Debtor.                  :
                                                    :
                                                    :
---------------------------------------------------------------------- x

**REQUEST OF LAW DEBENTURE TRUST COMPANY OF NEW
YORK FOR PAYMENT OF FEES AND REIMBURSEMENT OF
EXPENSES PURSUANT TO THE DEBTOR'S PLAN OF
<u>REORGANIZATION AND APPLICABLE TRUST INDENTURE</u>**

Law Debenture Trust Company of New York in its capacities as (a) successor indenture trustee to The Bank of New York as indenture trustee under a certain Indenture dated as of November 1, 1996, as amended (the "Indenture"), (b) successor property trustee (the "Property Trustee") to The Bank of New York as property trustee under a certain Amended and Restated Trust Agreement dated as of November 1, 1996, as amended; and (c) successor guarantee trustee (the "Guarantee Trustee") to The Bank of New York as guarantee trustee under a certain Guarantee Agreement, dated as of November 1, 1996, by and through its undersigned counsel, hereby makes this request (the "Request") for payment of fees and reimbursement of expenses incurred by the Indenture Trustee, its lead counsel, Nixon Peabody LLP ("Nixon Peabody"), and its local counsel, Smith Katzenstein & Furlow LLP ("Smith Katzenstein") (Law Debenture Trust Company of New York in such capacities being collectively referred to herein as the "Indenture Trustee" or "Law Debenture" and the Indenture Trustee, Nixon Peabody and Smith Katzenstein being collectively referred to as the "Indenture Trustee Parties") for services provided and expenses incurred in connection with the above-referenced Case. Payment by the Debtor of the

Indenture Trustee Parties' fees and expenses are expressly authorized by the terms of (i) the Debtor's Second Amended and Restated Plan of Reorganization (the "Plan") and (ii) the Indenture.

## BACKGROUND

**The Indenture**

Law Debenture is, among other things, serving as successor Indenture Trustee to The Bank of New York as indenture trustee under the Indenture pursuant to which the Montana Power Company ("Montana Power") issued certain 8.45% Junior Subordinated Debentures (the "Debentures") to Montana Power Capital I, which, then issued certain 8.45% Cumulative Quarterly Income Preferred Securities, Series A (the "QUIPS").

**The Trust Indenture Act of 1939**

Under Section 315(c) of the Trust Indenture Act of 1939, as amended (the "TIA"), if an event of default has occurred and is continuing under the applicable indenture, the indenture trustee must:

> exercise… such of the rights and powers vested in it by such indenture, and to use the same degree of care and skill in their exercise, as a prudent man would exercise or use under the circumstances in the conduct of his own affairs.

15 U.S.C. § 77oooo(c) (2004). Under Section 801 of the Indenture, the commencement of this Case constitutes an event of default. Sections 803 and 901 of the Indenture further describes the rights and duties of the indenture trustee thereunder by, *inter alia*, reference to these provisions of the TIA.

Pursuant to these provisions, the indenture trustee serves in a fiduciary capacity and is under a duty to look out for the interests of debenture holders in the reorganization and to guard

3

the value of the assets underlying those interests.  In re New York, New Haven & Hartford R. Co., 421 F. Supp. 249, 257-58 (D. Conn. 1976), *aff'd*, 567 F.2d 166 (2d Cir. 1977), *cert. denied sub nom.*; Zeldes v. Manufacturers Hanover Trust Co., 434 U.S. 833, 54 L. Ed. 2d 94, 98 S.Ct. 120 (1977).  The indenture trustee must also keep informed of the reorganization proceedings and participate therein, and offer suggestions and otherwise intervene where necessary to perform its functions.  Id.  These services generally aid the administration of the estate and the reorganization of the debtor.  Id.

In the present matter, the Indenture Trustee was, and is, acting pursuant to the mandate of the TIA and the Indenture to fulfill its fiduciary duties to the QUIPS holders in the Debtor's bankruptcy case.  Law Debenture holds none of the QUIPS for its own account.

## BASIS FOR RELIEF REQUESTED

**The Plan Expressly Provides for Payment of the Indenture Trustee Parties Fees and Expenses**

The express language of the Plan provides for payment of the fees and reimbursement of the expenses sought by this Request.  As part of the consideration being furnished to holders of Class 5, Class 7 and Class 8 Claims under the Second Amended Plan, the Plan provides for the payment of their indenture trustees' reasonable compensation, fees, costs, expenses and indemnity claims (including, without limitation, reasonable legal fees, costs and expenses) incurred in this case whether prior to or after the Petition Date.  Specifically, § 5.18 of the Plan provides that:  "On the Effective Date, Reorganized Debtor will pay the Indenture Trustees' Fees and Expense in full and in Cash, in an amount to be agreed upon among the Debtor and each of the Indenture Trustees."  See, Plan, §§ 5.18, 1.101.  The Plan further provides that "[i]f the fees and expenses of an Indenture Trustee are not reimbursed in full by the Debtor," then "any

deficiency" may be paid out of the distributions received by the respective Indenture Trustee on behalf of their respective cast of claimants.  Id.

Additionally, as security for the performance of the obligation of the Debtor to pay reasonable compensation and expenses of the Indenture Trustee (including reasonable compensation and expenses of its counsel), Section 907 of the Indenture provides that the Indenture Trustee has a lien prior to the holders of the QUIPS upon all property and funds held or collected by the Indenture Trustee (hereinafter referred to as the "Indenture Trustee Charging Lien").

Section 5.18 of the Second Amended Plan expressly acknowledges the existence of the indenture trustee charging liens of the indenture trustees (including Law Debenture's Indenture Trustee Charging Lien) and provides that:

> [t]o the extent that any Indenture Trustees' Fees and Expenses are not paid by the Reorganized Debtor (whether as a result of disagreement between the Indenture Trustee and the Reorganized Debtor, and/or following determination by the Bankruptcy Court) the Indenture Trustee Charging Lien of such Indenture Trustee shall not be impaired.

Therefore, the express terms of the Plan require that the Debtor pay the Law Debenture Parties' fees and expenses requested herein.

## SUMMARY OF FEES AND EXPENSES

**Summary of Services**

During the period from September 23, 2003 through November 1, 2004 (the "Request Period"), the Indenture Trustee Parties performed a variety of services in connection with the Debtor's bankruptcy case and enforcement of rights and claims under the Indenture.

1.     A summary statement containing the names, billing rates, the total number of hours spent, and the total fees for each Nixon Peabody attorney or paraprofessional who

provided services in this matter is attached as Exhibit A-1.  The fees requested by Nixon Peabody total $820,463.50.

2. A summary statement containing the names, billing rates, the total number of hours spent, and the total fees for each Smith Katzenstein attorney or paraprofessional who provided services in this matter is attached as Exhibit A-2.  The fees requested by Smith Katzenstein total $8,047.50.

3. A summary statement containing the names, billing rates, the total number of hours spent, and the total fees for each Law Debenture officer who provided services in this matter is attached as Exhibit A-3.  The fees requested by Law Debenture (other than the Annual Administrative Fees) total $129,564.87.

4. The work summarized here was performed in such a manner as to eliminate duplication of services and to keep the administrative expenses chargeable to the Debtor's estate to a minimum.  All efforts have been made, within the context of maintaining continuity in the handling of the case, to have tasks performed by the person with the lowest billing rate that is competent to perform the task.

5. Itemized time records, in chronological order, of each specific service for which compensation is sought is attached hereto as Exhibit B.  These itemized records are compiled from each of the Indenture Trustee Parties time sheets and accurately set forth the services performed by the Indenture Trustee Parties during the Request Period and identify the dates upon which such services were rendered, describe the service for which the compensation is sought, and set forth the time expended on such services in tenth of an hour increments.  The computer printouts are a compilation of the contemporaneous entries made on daily time sheets by the individuals working for the Indenture Trustee Parties in this case.

**Disbursements**

6. The Indenture Trustee Parties have requested reimbursement of $21,994.49 for actual and necessary expenses incurred during the Request Period.

7. A summary of expenses incurred by Nixon Peabody for which reimbursement is sought is attached hereto as <u>Exhibit C-1</u>. Nixon Peabody incurred expenses totaling $ 15,709.52.

8. A summary of expenses incurred by Smith Katzenstein for which reimbursement is sought is attached hereto as <u>Exhibit C-2</u>. Smith Katzenstein incurred expenses during the Request Period totaling $ 4,200.98.

9. A summary of expenses incurred by Law Debenture for which reimbursement is sought is attached hereto as <u>Exhibit C-3</u>. Law Debenture incurred expenses during the Request Period totaling $ 2,083.99.

**Annual Administration Fee**

10. In addition to the fees earned and disbursements incurred by the Indenture Trustee Parties in this case, the Indenture Trustee accrued an Annual Administration Fee due under the Indenture comprised of (i) Indenture Trustee Fee of $15,000.00, (ii) the Property Trustee Fee of $15,000.00, and (iii) the Guarantee Trustee Fee of $15,000.00. The Annual Administration Fee accrues for the period from December 2003 through December 2004 for appointments as successor trustees in the above-referenced capacities.

**Compensation Requested**

11. During the Request Period, the Indenture Trustee Parties, their attorneys and paralegals expended a total of 2,298.00 hours in this matter for total requested compensation of $958,075.87. The compensation sought by the Indenture Trustee Parties reflects an average hourly rate of approximately $417.00.

**Summary of Services**

12.  The following is a summary of services provided by Nixon Peabody during the Request Period according to the general categories of tasks performed in the case:

| Category | Description | Hours | Fees |
|---|---|---|---|
| A | Communication with QUIPs Holders and General Trust Indenture Administration | 150.10 | 65,326.50 |
| B | Participation on Creditors Committee and Related Matters | 173.70 | 67,088.60 |
| C | Review and Analysis of General Bankruptcy Matters | 155.30 | 88,735.00 |
| D | Preparation of Proofs of Claim | 71.40 | 32,113.50 |
| E | Bankruptcy Litigation | 262.6 | 114,511.00 |
| F | Plan and Disclosure Statements Matters | 1058.3 | 452,688.90 |
| TOTAL | | 1,871.4 | $820,463.50 |

13.  In addition to the Nixon Peabody fees above, and as set forth more fully below and in the attached <u>Exhibit B</u>, Smith Katzenstein and Law Debenture provided services in connection with administration of the Indenture and in asserting and preserving rights and claims under the Indenture in the bankruptcy case. Smith Katzenstein billed a total of 28.2 hours during the Request Period and accrued fees of $8,047.50. Law Debenture billed a total of 398.40 hours during the Request Period and accrued fees of $129,564.81.

14.  The following is a brief narrative description of the services performed by the Indenture Trustee Parties during the Request Period.

8

**A.     Communication with QUIPS Holders and General Trust Indenture Administration**

15.    During the Request Period, as described more fully in the time details attached hereto as part of <u>Exhibit B</u>, the Indenture Trustee Parties working on this matter undertook those tasks necessary to administer, preserve and enforce the rights under the Indenture. The Indenture Trustee Parties' attorneys conferred with the QUIPS holders, the Debtor and other parties in interest in the context of fulfilling duties under the Indenture in the bankruptcy case. Generally such duties include telephone calls and correspondence with the QUIPS holders (including formal notices given QUIPS holders under the Indenture), the Debtor, counsel to the Official Committee of Unsecured Creditors (the "Creditors Committee"), the United States Trustee, other parties in interest and the Court.  Initially, Nixon Peabody represented The Bank of New York, as indenture trustee under the Indenture, in connection with its participation on the Creditors Committee, monitoring of the case and communications with the QUIPS holders. Nixon Peabody then assisted Bank of New York and Law Debenture in obtaining the necessary approvals from the Debtor and the QUIPS holders to effectuate the successorship of Law Debenture to the Bank of New York in the roles of Indenture Trustee, Guarantee Trustee (both effective as of December 17, 2003), and Property Trustee (effective as of July 19, 2004). Such successorship is evidenced by the tripartite agreements executed among the Bank of New York, Law Debenture and the Debtor.

**B.     Participation on Creditors Committee and Related Matters**

16.    During the Request Period, as described more fully in the time details attached hereto as part of <u>Exhibit B</u>, the Indenture Trustee Parties working on this matter undertook those tasks necessary to serve the Indenture Trustee during its tenure as a member of the Creditors

Committee. As indicated above, Nixon Peabody also represented the Bank of New York in connection with its participation on the Creditors Committee until it successored the indenture trustee role on December 17, 2003.[2] Work with respect to the Creditors Committee included review, analysis, and response to all relevant matters discussed by the Committee and to materials presented by the Committee's professionals. Such efforts included attendance at Committee meetings and conference calls and review and consideration of legal memos and financial data provided by the Committee's professionals.

**C.     Review and Analysis of General Bankruptcy Matters**

17.     During the Request Period, as described more fully in the time details attached hereto as part of Exhibit B, the Indenture Trustee Parties working on this matter undertook those tasks necessary to review and analyze pleadings and other matters related to the Debtor's bankruptcy case and related proceedings including analysis of pleadings filed by other interested parties in the case. Because many of the parties in interest in this case had claims against the Debtor similar to or arising out of the same facts as those of the Indenture Trustee on behalf of the QUIPS holders, close monitoring of the case by the Indenture Trustee Parties was imperative. Such claims included, without limitation, those of the following parties:

- Atlantic Richfield Company with respect to its claims regarding the Going Flat Transaction and environmental liability in connection with the Milltown Dam;

- The McGreevey Class Action Claimants with respect to their claims regarding the Going Flat Transaction;

- Comanche Park with respect to its claims regarding the Going Flat Transaction; and

---

[2] Upon information and belief, the fees and expenses of Bank of New York and Bryon Cave LLP (its counsel as indenture trustee for purposes other than those fulfilled by Nixon Peabody and Smith Katzenstein) have been paid in full by the Debtor on the Effective Date. Such fees and expenses totaled $54,307.48.

- Wilmington Trust Company, as Indenture Trustee for the TOPrS holders, with respect to its claims, objections to claims, and objections to the plan and disclosure statement surrounding issues relating to the Debtor's artificially low valuation of the Reorganized Debtor and on account of the Debtor's alleged violation of PUHCA.

The Indenture Trustee Parties also prepared and filed various pleadings during the Request Period. Such efforts, assistance, cooperation, and participation was intended to facilitate efficient preservation and administration of the rights and claims under the Indenture in the context of the Debtor's reorganization efforts.

**D.    Preparation of Proofs of Claim**

18.    During the Request Period, as described more fully in the time details attached hereto as part of <u>Exhibit B</u>, the Indenture Trustee Parties working on this matter undertook those tasks necessary to prepare and assert the Indenture Trustee's claims in this case.

**E.    Bankruptcy Litigation**

19.    During the Request Period, as described more fully in the time details attached hereto as part of <u>Exhibit B</u>, the Indenture Trustee Parties working on this matter undertook those task necessary to commence and prosecute the Adversary Proceeding against the Debtor in connection with the so-called Going Flat Transaction.

20.    On April 16, 2004, the Indenture Trustee, along with Magten Asset Management Corporation ("Magten"), a QUIPS holder, commenced an adversary proceeding (the "Adversary Proceeding") against the Debtor seeking to avoid and recover the Montana Utility Assets. In the Adversary Proceeding, the Indenture Trustee contends, among other things, that the Going Flat Transaction was a fraudulent transaction in which assets worth approximately $1.15 billion were transferred from a solvent obligor, Clark Fork, to the Debtor for effectively no consideration.

21. On or about May 15, 2004, the Debtor filed a motion to dismiss the Indenture Trustee's complaint to recover the Montana Utility Assets. In its motion, the Debtor argued that the Indenture Trustee lacked standing to bring the fraudulent conveyances claims because it was no longer a creditor of Clark Fork. Specifically, the Debtor argued pursuant to §1101 of the QUIPS Indenture that the Debtor was substituted for and succeeded to Clark Fork's obligations under the QUIPS Indenture and that, pursuant to §1102 of the Indenture, Clark Fork was expressly relieved of all obligations and covenants under the QUIPS Indenture.

22. On August 20, 2004, this Court entered a decision on the Debtor's motion to dismiss (the "Fraudulent Transfer Decision"). In the Fraudulent Transfer Decision, this Court found that the Indenture Trustee's contention that the purported release of Clark Fork under §1102 of the QUIPS Indenture was obtained by fraud "may have legs" and if the Indenture Trustee can prove that such a release was obtained by fraud the release would be ineffective and the Indenture Trustee would be able to prosecute its fraudulent transfer claim against the Debtor.

23. Magten's counsel has, during the course of the case, taken the lead in prosecuting the Adversary Proceeding. The Indenture Trustee's role has been that of ensuring that all QUIPS holders are represented in the proceeding and that their interests are protected.

24. As contemplated by the Second Amended Plan, the Adversary Proceeding is still pending.

**F.  Plan and Disclosure Statement Matters**

25. On May 17, 2004, the Debtor filed its First Amended Disclosure Statement in connection with its First Amended Plan of Reorganization. The First Amended Plan classified the claims arising from the QUIPS Indenture in Class 8 along with the claims arising with the TOPrS Indenture. The First Amended Plan proposed to satisfy the claims in Class 8 with a pro

rata distribution of just 2% of the New Common Stock in the Reorganized Debtor. All such distributions to holders of Class 8 claims, however, were subject to the First Amended Plan's so-called "death trap" provisions. Specifically, all distributions to Class 8 Claims holders were conditioned on the class voting to accept the First Amended Plan. Notwithstanding those "death trap" provisions, Class 8 voted not to accept the First Amended Plan.

26.     During the Request Period, as described more fully in the time details attached hereto as part of Exhibit B, Law Debenture filed necessary pleadings to ensure the treatment of the QUIPS claims under the First Amended Plan and subsequent versions of the Plan was consistent with the terms of the QUIPS Indenture and complied with applicable bankruptcy and non-bankruptcy law. Among other things, Law Debenture, along with Wilmington Trust Company, the indenture trustee under the TOPrS Indenture, objected to the First Amended Plan's death trap provisions. In addition, Law Debenture joined Wilmington's objection to the First Amended Plan on the grounds that the Plan improperly recognized and proposed to pay debt that was issued in violation of the Public Utility Holding Company Act of 1935. Similarly, Law Debenture also joined Wilmington's objection to the First Amended Plan on absolute priority grounds. Specifically, Law Debenture, like Wilmington, asserted that the Debtor had understated the value of the New Common Stock to be issued on the Effective Date and, accordingly, creditors in other classes were receiving more than full satisfaction of their claims.

27.     Ultimately, Wilmington reached a settlement with the Debtor concerning the treatment of TOPrS claims. That settlement was memorialized in the Second Amended Plan. Because the Second Amended Plan separately classified QUIPS claims, but still contained substantially the same defects in the QUIPS holders' treatment as the First Amended Plan, Law Debenture interposed objections to the Second Amended Plan on the grounds, in part, that the

13

Second Amended Plan violated the fair and equitable provisions of Section 1129 of the Bankruptcy Code.

**Summary of Disbursements**

28.     During the Request Period, the Indenture Trustee Parties incurred expenses totaling $21,994.49. A summary of the expenses incurred for which reimbursement is herein sought is attached as Exhibits C 1-3. Reimbursement for expenses and all other disbursements in this case is sought in accordance with the Plan, the Indenture and applicable Bankruptcy and Local Rules.

**Annual Administration Fee**

29.     In addition to the fees earned and disbursements incurred by the Indenture Trustee Parties in this case, the Indenture Trustee accrued an Annual Administration Fee due under the Indenture comprised of (i) Indenture Trustee Fee of $15,000.00, (ii) the Property Trustee Fee of $15,000.00, and (iii) the Guarantee Trustee Fee of $15,000.00. The Annual Administration Fee accrues for the period from December 2003 through December 2004 for appointments as successor trustees in the above-referenced capacities.

**SUMMARY**

The Indenture Trustee Parties submit that the compensation for the services rendered and reimbursement of expenses incurred in this matter are reasonable based on (i) the time and labor required, (ii) the complexity of the legal questions presented, (iii) the skill required to perform the legal services, (iv) the customary compensation in this District, (v) the experience and ability of the attorneys providing services and (vi) the results achieved. The Indenture Trustee Parties carefully staffed this case in order to assure the most efficient and cost effective provision of services to the Debtor and its estate.

**WHEREFORE**, the Indenture Trustee Parties respectfully request that the Debtor:

(i) Compensate to the Indenture Trustee Parties in the amount of $958,075.87 on account of professional services rendered during the Request Period;

(ii) Pay the Indenture Trustee Parties the amount of $21,994.49 as reimbursement for expenses incurred during the Request Period; and

(iii) Pay the Indenture Trustee Parties the amount of $45,000.00 for the Annual Administration Fees incurred under the Indenture during the Request Period.

Dated: Wilmington Delaware
　　　　December 1, 2004

　　　　　　　　　　　　　　　　　　　　　　　SMITH KATZENSTEIN & FURLOW LLP


　　　　　　　　　　　　　　　　　　　　　　　 /s/ Kathleen. M. Miller
　　　　　　　　　　　　　　　　　　　　　　　Kathleen M. Miller (DE No. 2898)
　　　　　　　　　　　　　　　　　　　　　　　800 Delaware Avenue, 7th Floor
　　　　　　　　　　　　　　　　　　　　　　　P.O. Box 410
　　　　　　　　　　　　　　　　　　　　　　　Wilmington, DE 19899
　　　　　　　　　　　　　　　　　　　　　　　Telephone: (302) 652-8400
　　　　　　　　　　　　　　　　　　　　　　　Facsimile: (302) 652-8405

　　　　　　　　　　　　　　　　　　　　　　　-and-

　　　　　　　　　　　　　　　　　　　　　　　NIXON PEABODY LLP
　　　　　　　　　　　　　　　　　　　　　　　John V. Snellings (BBO No. 548791)
　　　　　　　　　　　　　　　　　　　　　　　Francis C. Morrissey (BBO No. 567589)
　　　　　　　　　　　　　　　　　　　　　　　Lee Harrington (DE No. 4046)
　　　　　　　　　　　　　　　　　　　　　　　100 Summer Street
　　　　　　　　　　　　　　　　　　　　　　　Boston, MA 02110
　　　　　　　　　　　　　　　　　　　　　　　Telephone: (617) 345-1201
　　　　　　　　　　　　　　　　　　　　　　　Facsimile: (617) 866) 947-1732

　　　　　　　　　　　　　　　　　　　　　　　Counsel for Law Debenture Trust Company
　　　　　　　　　　　　　　　　　　　　　　　of New York

## EXHIBIT A-1
## Summary of Nixon Peabody Fees by Professional

| Attorney/Professional | Hours | Fees | Rate |
|---|---|---|---|
| **Partners** | | | |
| A. Darwin | 658.60 | $296,948.50 | $420/455[1] |
| F. Hamblet | 295.00 | $127,775.00 | $370/440 |
| J. Snellings | 353.00 | $175,378.50 | $495 |
| M. Berman | .50 | $ 252.50 | $505 |
| R. Dewees | 153.00 | $ 71,910.00 | $470 |
| R. Coughlin | .40 | $ 198.00 | $495 |
| J. Monroe | 6.10 | $ 3,172.00 | $520 |
| E. Whittle | 20.40 | $ 8,262.00 | $405 |
| | | | |
| **Associates** | | | |
| F. Morrissey | 246.60 | $ 94,941.00 | $385 |
| M. Boyle | 20.40 | $ 3,960.00 | $220 |
| D. Haueisen | 9.40 | $ 2,679.00 | $285 |
| L. Harrington | 27.50 | $ 8,662.50 | $315 |
| | | | |
| **Counsel** | | | |
| F. Lee | 4.00 | $ 2,060.00 | $515 |
| V. Simpson | 43.60 | $ 19,620.00 | $450 |
| | | | |
| **Of Counsel** | | | |
| M. O'Mara | 1.70 | $ 875.50 | $515 |
| | | | |
| **Legal Assistants** | | | |
| C. Ciafone | 2.30 | $ 221.50 | $ 95/105 |
| M. Swiatocha | 14.70 | $ 1,617.00 | $110 |
| C. Moore | .70 | $ 115.50 | $165 |
| S. Smith | 11.70 | $ 1,521.00 | $130 |
| M. Upton | 1.10 | $ 154.00 | $140 |
| A. Bruce | .30 | $ 49.50 | $165 |
| L. Spath | .40 | $ 90.00 | $225 |
| | | | |
| **TOTAL** | **1,871.40** | **$820,463.50** | |

---

[1] The firm increased its rates, as is its custom, effective January 1, 2004.

BOS1439214.1

EXHIBIT A-2
Summary of Smith Katzenstein Fees by Professional

| Attorney/Professional | Hours | Fees | Rate |
|---|---|---|---|
| K. Miller[1] | 23.70 | $7,110.00 | $300 |
| D. Jenkins | 1.30 | $ 487.50 | $375 |
| R. Katzenstein | .20 | $ 75.00 | $375 |
| Y. Soysal | 3.00 | $ 375.00 | $125 |
| TOTAL | 28.20 | $8,047.50 | |

---

[1] Kathleen Miller, Esquire, David Jenkins, Esquire and Robert. Katzenstein, Esquire served as local, Delaware counsel to Law Debenture in this matter.

BOS1439515.1

EXHIBIT A-3
Summary of Law Debenture Fees by Professional

| Attorney/Professional | Hours | Fees | Rate |
|---|---|---|---|
| D. Fisher[1] | 218.20 | $70,931.25 | $325 |
| P. Healey | 180.20 | $56,633.56 | $325 |
| TOTAL | 398.40 | $127,564.81 | |

---

[1] D. Fisher and P. Healey are officers of Law Debenture.

BOS1439517.1