# APP. 25

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| NORTHWESTERN CORPORATION, | : Case No. 03-12872 (JLP) |
| | : |
| Debtor. | : |
| | : Related to Docket No. 2427 |

## OBJECTION OF THE DEBTOR TO THE REQUEST OF LAW DEBENTURE TRUST COMPANY OF NEW YORK FOR PAYMENT OF FEES AND REIMBURSEMENT OF EXPENSES PURSUANT TO THE DEBTOR'S PLAN OF REORGANIZATION AND <u>APPLICABLE TRUST INDENTURE</u>

NorthWestern Corporation (the "<u>Debtor</u>" or "<u>NOR</u>"), by and through its undersigned

counsel, hereby files its Objection to the Request of Law Debenture Trust Company of New

York for Payment of Fees and Reimbursement of Expenses Pursuant to the Debtor's Plan of

Reorganization and Applicable Trust Indenture (the "<u>Objection</u>"). On or about December 1,

2004, after extensive informal requests to the Debtor, Law Debenture Trust Company of New

York ("<u>Law Debenture</u>") filed its Request for Payment of Fees and Reimbursement of Expenses

Pursuant to the Debtor's Plan of Reorganization and Applicable Trust Indenture (the "<u>Fee and</u>

<u>Expense Request</u>" or "<u>Request</u>"). The Debtor files the Objection to Law Debenture's Fee and

Expense Request and in support thereof, the Debtor respectfully represents as follows:

### BACKGROUND

1.      On September 14, 2003 (the "<u>Petition Date</u>"), the Debtor filed a voluntary petition

for relief under chapter 11 of the Bankruptcy Code. On October 19, 2004, an order confirming

the Debtor's Second Amended and Restated Plan of Reorganization (the "<u>Plan</u>")[1] was entered

(the "<u>Confirmation Order</u>"). The effective date under such Plan occurred on November 1, 2004.

---

[1] Any capitalized terms not defined herein shall have the meaning ascribed to such term in the Plan.

2.    No request has been made for the appointment of a trustee or examiner in this case. An Official Committee of Unsecured Creditors was appointed by the Office of United States Trustee on September 30, 2003 (the "Committee"). On or about February 20, 2004, Law Debenture was appointed as a member of the Committee, as successor to Bank of New York; however, by notice dated May 6, 2004, the United States Trustee removed Law Debenture from the Committee.

3.    The Debtor is a publicly traded Delaware corporation which was incorporated in 1923. The Debtor and its direct and indirect non-debtor energy subsidiaries comprise one of the largest providers of electricity and natural gas in the upper Midwest and Northwest regions of the United States, serving approximately 608,000 customers throughout Montana, South Dakota and Nebraska.[2]

**QUIPS Indenture**

4.    Law Debenture is serving as successor Indenture Trustee to The Bank of New York as indenture trustee under the Indenture pursuant to which the Montana Power Company ("Montana Power") issued certain 8.45% Junior Subordinated Debentures to Montana Power Capital I, which, then issued certain 8.45% Cumulative Quarterly Income Preferred Securities, Series A (the "QUIPS").

**Plan of Reorganization**

5.    The Court entered the Confirmation Order on or about October 19, 2004. The Debtor's Plan became effective on November 1, 2004.[3] The Debtor has made Distributions

---

[2] A more detailed overview is set forth in the Affidavit of William M. Austin in Support of First Day Motions filed with the Court on the Petition Date (Docket Entry No. 2).
[3] See Notice of (A) Entry of Order Confirming the Debtor's Second Amended and Restated Plan of Reorganization Under Chapter 11 of the Bankruptcy Code and (B) the Occurrence of the Effective Date.

under the Plan to holders of Allowed Class 7, Class 8(a), Class 8(b) and Class 9 Claims.[4] In addition, the Debtor has completed Distributions to holders of undisputed Allowed Class 10 Convenience Class Claims and cure payments in connection with assumed contracts.

6.      Under Section 4.8(b) of the Debtor's Plan, each holder of a Class 8(b), Unsecured Subordinated Note Claim represented by QUIPS Notes and related Claims and Causes of Action, who accept or reject the Plan could opt to receive in full satisfaction, settlement, release, extinguishment and discharge of such Claim either, but not both: (a) a Pro Rata Share of 505,591 shares of New Common Stock (such 505,591 shares representing 1.4% of the New Common Stock to be issued and outstanding on the Effective Date prior to any dilution resulting from shares of New Common Stock issued pursuant to the New Incentive Plan and exercise of the Warrants), plus Warrants exercisable for an additional 2.3% of New Common Stock ("Option 1") or (b) a Pro Rata Share of recoveries, if any, upon resolution of the QUIPS Litigation ("Option 2").

7.      In connection with fees and expenses of Indenture Trustees the Debtor's Plan provides the following:

> the Reorganized Debtor is hereby authorized to pay the Indenture Trustees' Fees and Expenses in full and in Cash, in an amount to be agreed upon among the Debtor and each of the Indenture Trustees. **In the event that the parties cannot reach agreement on the amount thereof, any disputed amount shall be determined by the Court, pursuant to Section 503 of the Bankruptcy Code, and in accordance with the terms of the applicable Indenture.** Plan, §5.18 and Confirmation Order, ¶ 16 (emphasis added).

---

[4] On the Effective Date, Wilmington Trust Company exercised its Indenture Trustee Charging Lien. As a result, 55,640 shares allocated to holders of Allowed Class 8(a) Claims were issued to the Depository Trust Company for credit to Wilmington Trust Company. On or about November 10, 2004, Law Debenture exercised its Indenture Trustee Charging Lien. A copy of the November 10, 2004 letter (the "November 10 Letter") which provided notice of Law Debenture's exercise of its Indenture Trustee Charging Lien is attached as Exhibit A to the Affidavit of Karol K. Denniston in connection with NorthWestern Corporation's Objection to the Request of Law Debenture Trust Company of New York for Payment of Fees and Reimbursement of Expenses Pursuant to the Debtor's Plan of Reorganization and Applicable Trust Indenture (the "Denniston Affidavit").

8.    On November 1, 2004, Law Debenture provided the Debtor with copies of its invoices for which it seeks reimbursement.  On or about November 9, 2004, the Debtor responded to Law Debenture's request for reimbursement of fees and expenses (the "November 9 Letter").[5]  In the November 9 Letter, the Debtor advised Law Debenture that the Debtor disputed the fees and expenses requested.  Moreover, in the November 9 Letter the Debtor indicated that Law Debenture "did not make a 'substantial contribution' in NorthWestern's Chapter 11 case such that any fees and expenses incurred by or on behalf of Law Debenture should be allowed [to] pursuant to Section 503 of the Bankruptcy Code."

9.    In response to the November 9 Letter, Law Debenture exercised its Indenture Trustee Charging Lien and demanded that the full amount of all distributions to Class 8(b) holders be put immediately in the name of Law Debenture Trust Company of New York in order to effectuate the exercise of such charging lien.[6]

10.    In a letter dated November 15, 2004, the Debtor reiterated that "the activities of Law Debenture did not add to or benefit the bankruptcy estate."[7]  Law Debenture responded in a letter dated November 23, 2004 (the "November 23 Letter").[8]  As in its previous correspondence, Law Debenture failed to provide any additional information regarding its fees and expenses, in particular, whether its actions substantially contributed to the Debtor's case, nor did Law Debenture contest the applicability of Section 503 of the Bankruptcy Code.

11.    In connection with Distributions to holders of Allowed Class 8(b) Claims under Section 4.8(b) of the Plan, on or about December 23, 2004, mindful of its obligation to deliver shares of Common Stock and Warrants to holders of Class 8(b) claims who elected, or were deemed to have elected, Option 1 under Section 4.8(b) of the Plan and Law Debenture Trust

---

[5] A copy of the November 9, 2004 letter is attached as Exhibit B to the Denniston Affidavit.
[6] See November 10 Letter.
[7] A copy of the November 15, 2004 letter is attached as Exhibit C to the Denniston Affidavit.

4

Company of New York's exercise of its Indenture Trustee Charging Lien, the Debtor authorized

its transfer agent, LaSalle Bank National Association, to transfer (i) physical stock certificates

issued in the name of "Law Debenture Trust Company of New York" 136,965 shares of

Common Stock and (ii) physical warrant certificate in the name of "Law Debenture Trust

Company of New York" 254,241 Warrants to purchase shares of Common Stock pursuant to the

Indenture Trustee Charging Lien under Section 5.18 of the Debtor's Plan.

**<u>Actions Taken by Law Debenture During the Bankruptcy Proceeding</u>**

12.    The following table summarizes pleadings filed by Law Debenture during the

course of the Debtor's bankruptcy proceeding and the outcome of such actions:

| <u>Date Filed</u> | <u>Pleading</u> | <u>Outcome</u> | <u>Comments</u> |
|---|---|---|---|
| 4/16/04 | Complaint filed Against NorthWestern Corp.[Docket No. 1123] | Initiated Adv. Proc. 04-53324. The adversary proceeding is currently stayed. | While a member of the Committee, Law Debenture along with Magten initiated an adversary proceeding against the Debtor which seeks to remove the Montana operations assets from the Debtor's estate to the harm of all the Debtor's other creditors. On August 20, 2004, in its opinion, the Bankruptcy Court held that in order to pursue a recovery Law Debenture would need to prove under applicable law that one of the releases given in connection with the "going flat" transaction was obtained through actual fraud or as part of a fraudulent scheme.[9] |
| 5/3/04 | Objection to Motion to Approve Disclosure Statement[Docket No. 1186] | Overruled; Order (I) Approving the Debtor's First Amended Disclosure Statement, (II) Authorizing Solicitation of Votes, (III) Scheduling a Hearing on Confirmation of the Joint Plan of Reorganization, (IV) Establishing Notice Requirements Regarding the | |

[8]  A copy of the November 23, 2004 letter is attached as <u>Exhibit D</u> to the Denniston Affidavit.
[9]  On October 4, 2004, the Law Debenture and Magten Asset Management Corporation amended the Complaint (the "<u>Amended Complaint</u>"). The Amended Complaint added a count seeking a declaration that all documents executed in furtherance of the alleged fraudulent transfer are void under the Public Utility Holding Company Act of 1935, as codified in title 15 of the United States Code, 15 U.S.C. §§ 79z-6 ("<u>PUHCA</u>"). The Debtor has moved to dismiss this portion of the Amended Complaint. This proceeding has been stayed as a result of the appeal of the Confirmation Order.

| | | Confirmation Hearing and Approving the Firm and Manner of Notice, and (V) Granting Related Relief Respecting the Debtor's First Amended Plan of Reorganization. [Docket No. 1373]. | |
|---|---|---|---|
| 8/2/04 | Objection to Confirmation [Docket No. 1803] | Overruled [Confirmation Order, pp. 33-47]. | See discussion of Confirmation Order below. |
| 8/18/04 | Emergency Motion to Adjourn Confirmation Hearing [Docket No. 1919] | Denied. | Law Debenture's motion requested adjournment of the August 25, 2004 hearing in order to review an amendment to the Plan, pursuant to the settlement with Harbert and Wilmington Trust Company, whereby the holders of Allowed Class 8(b) Claims would receive an increased distribution. The Court held that the August 25, 2004 hearing go forward as scheduled. Transcript of August 20, 2004 Hearing, p. 30. |
| 8/25/04 | Objection to (A) Debtor's Second Amended and Restated Disclosure Statement and Summary Disclosure Statement; and (B) Proposed Resolicitation Procedures [Docket No. 1989] | Overruled.  Order (A) Approving the Debtor's Second Amended and Restated Disclosure Statement and Summary Disclosure Statement; (B) Setting Record Date for Voting Purposes; (C) Authorizing Resolicitation of Votes; (D) Scheduling a Continued Hearing on Confirmation of Second Amended and Restated Plan of Reorganization; (E) Establishing Notice Requirements Regarding Continued Confirmation Hearing and Approving the Form and Manner of Notice, and (F) Granting Related Relief [Docket No. 2033]. | |
| 9/3/04 | Objection to the Motion for an Order Authorizing it to Enter Agreements for Exit Financing Facility and to Pay Fees and Expenses and Incur Indemnification Obligations in Connection Therewith Pursuant to Sections 105(a), 107(b) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9018 [Docket No. 2044] | Overruled [Confirmation Order, pp. 33-47]. | See discussion of Confirmation Order below. |
| 9/21/04 | Supplemental Objection to Confirmation of Debtor's | Overruled [Confirmation Order, pp. 33-47]. | The Court overruled Law Debenture's objections in their entirety.  Specifically, the |

| | | | |
|---|---|---|---|
| | Second Amended Plan [Docket No. 2104] | | Court held: (i) the Debtor's classification was reasonable; (ii) the "going flat" transaction is all one transaction and that but for the "going flat" transaction the Debtor would have no liability on the QUIPS Notes; (iii) the releases provided for in the Plan, including, but not limited to, the D&O Trust Channeling Injunction and the D&O Insurance Entity Injunction are appropriate and necessary; (iv) that it would be unfair to withhold payments to creditors while the QUIPS Litigation claims were being litigated; and (v) **that neither Magten nor Law Debenture took any action to impose a constructive trust with respect to the Montana Assets.** Moreover, the Court held Law Debenture belatedly raised an objection based on PUHCA and that such objection should be overruled as Law Debenture failed to present any evidence in connection with the PUHCA objection. |
| 10/1/04 | Objection to the Claim of HSBC Bank as Indenture Trustee [Docket No. 2149] | Withdrawn [Docket No. 2301]. | While Law Debenture withdrew the objection to HSBC Bank's claim, both the Debtor and HSBC Bank were forced to file responsive pleadings to the objection. |

## Request for Fees and Expenses

13.    Law Debenture seeks reimbursement of $1,025,070.36 in fees and expenses which it claims to have incurred in the Debtor's case.  The request includes $958,075.87 for professional fees, $21,994.49 for expenses and $45,000 for an annual administration fee.  In particular, Law Debenture seeks reimbursement for the following services provided by Nixon Peabody LLP ("Nixon Peabody"):

| Description | Hours | Fees |
|---|---|---|
| Communications with QUIPS Holders and General Trust Indenture Administration | 150.10 | $65,326.50 |
| Participation on Creditors Committee and Related Matters | 173.70 | $67,088.60 |
| Review and Analysis of General Bankruptcy Matters | 155.30 | $88,735.00 |
| Preparation of Proofs of Claims | 71.40 | $32,113.50 |
| Bankruptcy Litigation | 262.60 | $114,511.00 |
| Plan and Disclosure Statement Matters | 1,058.30 | $452,688.90 |
| **TOTALS** | **1,871.40** | **$820,463.50** |

7

14.     Law Debenture asserts that the Plan expressly provides for payment of its fees and expenses.  As stated above, the Plan provides that:

> the Reorganized Debtor is hereby authorized to pay the Indenture Trustees' Fees and Expenses in full and in Cash, in an amount to be agreed upon among the Debtor and each of the Indenture Trustees.  **In the event that the parties cannot reach agreement on the amount thereof, any disputed amount shall be determined by the Court, pursuant to Section 503 of the Bankruptcy Code, and in accordance with the terms of the applicable Indenture.**  Confirmation Order, ¶ 16 (emphasis added). <u>See also</u>, Plan, § 5.18. [10]

15.     Section 907 of the QUIPS Indenture provides that the Company (as defined in the QUIPS Indenture):

> except as otherwise expressly provided herein, reimburse the Trustee upon its request for all reasonable expenses, disbursements and advances reasonably incurred or made by the Trustee in accordance with any provision of this Indenture (including reasonable compensation and the expenses and disbursements of its agents and counsel), except to the extent that any such expense, disbursement or advance may be attributable to the Trustee's negligence, willful misconduct or bad faith;

16.     In letters dated November 30 and December 21, 2004, the Debtor requested detailed analysis of the services provided in EACH of the categories provided by Law Debenture including breakouts of detailed time descriptions by category and professional service provider. As of the date hereof, the Debtor has not received any detailed breakouts supporting Law Debentures categorization of the services provided by its professionals. [11]

17.     Specifically, the Debtor, in its November 30 Letter, requested additional information segregating Law Debenture's fees and expenses.  The Debtor requested that "all fees and expenses related to the QUIPS Litigation be segregated from fees and expenses reasonably

---

[10] Law Debenture states that the "express language of the Plan provides for payment of fees and reimbursement of the expenses sought by this Request." The Fee and Expense Request fails to note that in the event the Debtor and Law Debenture cannot agree on the amount of fees and expenses the disputed amount shall be determined by the Court, pursuant to Section 503 of the Bankruptcy Code and the terms of the applicable Indenture.

[11] Attached to the Denniston Affidavit as <u>Exhibits E</u> and <u>F</u> are the November 30, 2004 (the "<u>November 30 Letter</u>")and December 21, 2004 (the "<u>December 21 Letter</u>") letters, respectively.

and necessarily incurred in this case by Law Debenture in the ordinary course." In its December 21 Letter, the Debtor reiterated its requests for additional information. The Debtor noted while Law Debenture provided the summary categories as described in its Fee and Expense Request, such Fee and Expense Request "failed to provide any detailed analysis and/or back-up related to the purpose of the actual services delivered."[12] In its December 21 Letter, the Debtor indicated that "[u]pon receipt of the specific detailed information . . . the Debtor timely will conduct a reasonableness review of such fees and expenses." As stated in its letters, without additional information, the Debtor cannot determine whether Law Debenture's analysis and segregation of its fees and expenses is reasonable.

18.    Law Debenture has failed to provide any information from which to determine that the amount requested is reasonable and whether such amount bears an appropriate relationship to the reason for which Law Debenture is entitled to reimbursement.[13] Despite the Debtor's repeated requests for additional information and attempts to resolve the fee request consensually, Law Debenture has failed to provide sufficient information for the Debtor to determine whether the fees and expenses requested are reasonable under the Indenture and Section 503 of the Bankruptcy Code.

19.    Despite the Debtor's request for additional information regarding the fees and expenses requested, Law Debenture has made no attempt to show that it has complied with the provisions of the QUIPS Indenture, Section 5.18 of the Plan or Section 503 of the Bankruptcy Code. While Law Debenture has presented no evidence regarding compliance with the QUIPS

---

[12] See December 21 Letter.
[13] See COLLIER ON BANKRUPTCY, ¶ 503.11[5]. See also, *In re United States Lines, Inc.*, 103 B.R. 427, 432 (Bankr. S.D.N.Y. 1989) ("[s]ince only part of the services made a 'substantial contribution,' differentiation is required. It is well settled uncertainties arising because of inadequate records must be resolved against the applicant"). In this case, while a member of the Committee, Law Debenture initiated an adversary proceeding against the Debtor which seeks to remove the Montana operation assets from the Debtor's estate. Law Debenture cannot establish that such action substantially contributed to the Debtor's case.

9

Indenture and Section 5.18 of the Plan, in the event the Court determines that Law Debenture has complied with the QUIPS Indenture and the Plan, Law Debenture cannot, and indeed has not made any attempt to, meet the criteria for reimbursement of expenses or payment of professional compensation as set forth in Sections 503(b)(3) and 503(b)(4) of the Bankruptcy Code.

## APPLICABLE LAW

20.    Section 503(b)(3) of the Bankruptcy Code provides that administrative expense claims may be allowed for "the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by - - (D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in **making a substantial contribution** in a case under chapter 9 or 11 of this title." 11 U.S.C. §503(b)(3)(D) (emphasis added).[14]  In this case, Law Debenture has made no attempt to establish that its actions substantially contributed to the Debtor's case.  In fact, Law Debenture by initiating the QUIPS Litigation seeks to harm the Debtor's estate and its creditors by removing assets from the Debtor's estate.

21.    Section 503(b)(4) of the Bankruptcy Code provides for reasonable compensation for professional services of an attorney or accountant of an entity whose expense is allowable under Section 503(b)(3), based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual necessary expenses incurred by such attorney or accountant.

22.    Section 503(b)(5) of the Bankruptcy Code provides that an indenture trustee may be entitled to allowance of an administrative expense for reasonable compensation for services

---

[14] Compensation for services rendered by an indenture trustee is governed by Section 503(b)(5).

rendered by the indenture trustee in making a substantial contribution to a case under chapter 9 or chapter 11.

23.     Applicants seeking allowance of administrative expenses under Section 503(b) have the burden of establishing entitlement to such an award. See *Lebron v. Mechem Financial, Inc.*, 27 F.3d 937 (3d Cir. 1994) and *In re Buckhead America Corp.*, 161 B.R. 11 (Bankr. D. Del. 1993). In *Lebron*, the court held that before an applicant may be reimbursed or compensated under 11 U.S.C. §503, it must be shown that "the efforts of the applicant resulted in an actual and demonstrable benefit to the debtor's estate and the creditors." *Lebron*, 27 F.3d at 944, citing *In re Lister*, 846 F.2d 55, 57 (10th Cir. 1988). The *Lebron* court further stated:

> A creditor should be presumed to be acting in his or her own interest unless the court is able to find that his or her actions were designed to benefit others who would foreseeably be interested in the estate. In the absence of such a finding, there can be no award of expenses even though there may have been an incidental benefit to the chapter 11 estate.

24.     Under the relevant case law, an applicant seeking reimbursement of expenses under Section 503(b) of the Bankruptcy Code bears the burden of showing that the tasks performed for which reimbursement is sought must transcend the creditor's own self interest and be performed for the benefit of the estate. Law Debenture's Fee and Expense Request flatly fails to describe any substantial contribution to the Debtor's case and wholly ignores the facts that Law Debenture's activities in this case were adverse to the Debtor, were apparently controlled by a disgruntled QUIPs holder, Magten Asset Management Corporation ("Magten") for the sole purpose of disrupting and preventing the Debtor's eventual successful reorganization. If anything, Law Debenture's actions and the legal fees incurred as a direct result of these actions increased the Debtor's reorganization costs by millions of dollars.

11

## Law Debenture Did Not Make a Substantial Contribution

25.    The "substantial contribution" requirement under Section 503(b)(3)(D) imposes

two strict conditions on the right to receive compensation or reimbursement of expenses; it

requires both that the applicant's efforts made a "contribution" in the case, and that the

contribution be "substantial." Regardless of their effort level and regardless of their motivation,

applicants who do not meet both of the criteria described above are simply not entitled to

reimbursement. Law Debenture has not provided any evidence of substantial contribution.

Indeed, it cannot.

26.    In the *Lebron* case, the court held that before an applicant may be reimbursed or

compensated under Section 503(b) of the Bankruptcy Code, the applicant must show that its

efforts "resulted in an **actual and demonstrable benefit to the debtor's estate and the**

**creditors.**" *Lebron*, 27 F.3d at 944, citing *In re Lister*, 846 F.2d 55, 57 (emphasis added). The

court then determined whether the creditor made a substantial contribution within the meaning of

Section 503(b)(3)(D) of the Bankruptcy Code. The *Lebron* court concluded by stating that

activities which primarily further the interest of the applicant are not reimbursable:

> the purpose of Section 503(b)(3)(D) is to encourage activities that
> will benefit the estate as a whole, and in line with the twin
> objections of § 503(b)(3)(D), **"substantial contribution" should
> be applied in a manner that excludes reimbursement in
> connection with activities of creditors and other interested
> parties which were designed primarily to serve their own
> interests and which, accordingly, would have been undertaken
> absent an expectation of reimbursement from the estate.**

*Lebron*, 27 F.3d at 944 (emphasis added). Despite the Debtor's request for additional

information, Law Debenture has failed to provide, and indeed, its Fee and Expense Request

noticeably omits, any evidence establishing that Law Debenture's actions resulted in an actual

and demonstrable benefit to the Debtor's estate.

12

27.    A review of its pleadings and the facts as evidenced by the docket in this proceeding establishes that Law Debenture cannot possibly establish that its actions resulted in actual and demonstrable benefit to the Debtor's estate and its creditors. In particular, Law Debenture requests $129,564.81 in fees for each Law Debenture officer[15] who provided services and $21,994.49 in expenses. The Fee and Expense Request clearly indicates that the actions taken by Law Debenture were designed primarily to serve its and Magten's interests. The following chart summarizes the categories of services and the justification for such fees as provided in paragraphs 15 through 27 of Law Debenture's Fee and Expense Request:

| Description | Law Debenture's Justification | Debtor's Response |
|---|---|---|
| Communications with QUIPS Holders and General Trust Indenture Administration | The Indenture Trustee Parties working on this matter undertook those tasks necessary to administer, preserve and enforce the rights under the Indenture. Request, ¶ 15. | For this category, Law Debenture has requested $65,326.50 in fees for services provided by Nixon Peabody. Law Debenture fails to provide what portion of the $129,564.81 in fees related to the services of Law Debenture's officers is related to "Communications with QUIPS Holders and General Trust Administration." Without additional information regarding the breakouts of detailed time descriptions by category and professional service provider, the Debtor cannot determine whether such fees and expenses are reasonable. |
| Participation on Creditors Committee and Related Matters | The Indenture Trustee Parties working on this matter undertook those tasks necessary to serve the Indenture Trustee during its tenure as a member of the Creditors Committee. Request, ¶16. | For this category, Law Debenture has requested $67,088.60 in fees for services provided by Nixon Peabody. Law Debenture fails to provide what portion of the $129,564.81 in fees related to the services of Law Debenture's officers is related to "Participation on Creditors Committee and Related Matters." Without additional information regarding the breakouts of detailed time descriptions by category and professional service provider, the Debtor cannot |

---

[15] While providing a summary chart of Nixon Peabody's fees based on general categories, Law Debenture fails to provide a breakout of fees by general categories for both the time of Law Debenture's officers and for Smith Katzenstein. Despite its numerous requests for additional information, the Debtor has been unable to determine the portion of such fees which relate to the general categories provided by Law Debenture. See November 30 Letter and December 21 Letter.

| | | |
|---|---|---|
| | | determine whether such fees and expenses are reasonable. |
| Review and Analysis of General Bankruptcy Matters | Such efforts, assistance, cooperation, and participation was intended to facilitate efficient preservation and administration of the rights and claims under the Indenture in the context of the Debtor's reorganization efforts. Request, ¶17. | While this general category may be reasonable, the Debtor, despite numerous requests, does not have sufficient documentation to determine reasonableness. |
| Preparation of Proofs of Claims | The Indenture Trustee Parties working on this matter undertook those tasks necessary to prepare and assert the Indenture Trustee's claims in this case. Request, ¶18 | While this general category may be reasonable, the Debtor, despite numerous requests, does not have sufficient documentation to determine reasonableness. |
| Bankruptcy Litigation | The Indenture Trustee's role has been that of ensuring that all QUIPS holders are represented in the proceeding and that their interests are protected. Request, ¶23 | The initiation and participation in the QUIPS Litigation where Law Debenture seeks to remove the Montana operation assets from the Debtor's estate did not substantially contribute to the Debtor's case, and, in fact, harmed the Debtor's creditors and its estate. |
| Plan and Disclosure Statement Matters | Law Debenture filed necessary pleadings to ensure the treatment of the QUIPS claims under the First Amended Plan and subsequent versions of the Plan was consistent with the terms of the QUIPS Indenture and complied with applicable bankruptcy and non-bankruptcy law. Request, ¶26 | Law Debenture filed numerous objections to the Plan and Disclosure Statements – all of which were based on the same arguments. Each of Law Debenture's objections was overruled in its entirety. Law Debenture has failed to provide any information regarding the reasonableness of $452,688.90 in fees in connection with "Plan and Disclosure Statement Matters." |

28.    While Law Debenture has segregated the fees of Nixon Peabody into general categories it has failed to segregate the fees and expenses incurred by Law Debenture and/or Smith Katzenstein. Moreover, Law Debenture has failed to provide any analysis supporting its segregation. Instead Law Debenture relies on general invoices which do not segregate the fees and expenses into categories. Without such additional information, and despite requests for such information, the Debtor cannot determine whether the fees and expenses requested by Law Debenture are reasonable under the QUIPS Indenture, the Plan and Section 503 of the Bankruptcy Code.

29.    In its Fee and Expense Request, Law Debenture fails to provide any evidence that its actions substantially contributed to the Debtor's case. On the contrary, Law Debenture's

14

descriptions of services for which it seeks reimbursement are limited to actions necessary to protect the interest of the QUIPS holders. As indenture trustee under the QUIPS Indenture, Law Debenture was required to perform these actions in its fiduciary capacity and its duties to look out for the interests of the QUIPS holders. Courts have held that properly acting as a fiduciary is not necessarily the same as making a substantial contribution. See *Manufacturers Hanover Trust Co. v. Bartsch (In re Flight Transp. Corp. Sec. Litig.)*, 874 F.2d 576 (8th Cir. 1989).[16]

30.    While Law Debenture actively participated and filed numerous pleadings in the Debtor's case, each of the objections and/or motions were overruled and/or denied. None of the pleadings filed by Law Debenture benefited the Debtor's estate, in fact, the Debtor and other parties-in-interest were forced to respond to the pleadings which only increased the costs to the Debtor's estate and other parties-in-interest. Indeed, while members of the Committee, Law Debenture and Magten initiated the QUIPS Litigation which seeks to remove assets from the estate for the sole benefit of the holders of QUIPS Notes and to the detriment of the Debtor's other creditors. The Debtor cannot be expected to pay legal fees and costs that were incurred for the sole purpose of harassing the Debtor and disrupting the reorganization by seeking to remove a substantial portion of the Debtor's assets from the bankruptcy estate.

31.    The Debtor objects to the fees and expenses requested by Law Debenture in their entirety as Law Debenture has failed to establish that its actions resulted in an actual and demonstrable contribution to the Debtor's case. Moreover, Law Debenture acted solely in its own interest and failed to establish that it substantially contributed to the Debtor's estate.

---

[16] See also, Collier on Bankruptcy, ¶503.12[4]. The fiduciary duty owed by the indenture trustee is owed to the beneficiaries of the trust, not to the bankruptcy estate. Protecting the interest of the trust beneficiaries may or may not be beneficial to the estate.

**Professional Fees Not Reimbursable Under Section 503(b)(4)**

32.      An administrative expense priority is available under Section 503(b)(4) only to an entity whose expenses are allowable under Section 503(b)(3).[17] As discussed above, Law Debenture failed to establish, and cannot establish, that its actions substantially contributed to the Debtor's case under Section 503(b)(3). For the reasons set forth above, Law Debenture has not made a substantial contribution in the Debtor's case; therefore, Law Debenture is not entitled to compensation for the services provided by its professionals under Section 503(b)(4).

33.      Law Debenture requests $828,511 in professional fees in connection with the Debtor's bankruptcy case. Law Debenture fails to provide any detailed analysis of the services provided in each of the categories summarized by Law Debenture in paragraph 12 of the Fee and Expense Request. In particular, Law Debenture fails to provide breakouts of detailed time descriptions by category and professional service provider.[18] As Law Debenture has failed to establish substantial contribution to the Debtor's case and no information has been provided regarding the benefits to the estate, the Debtor objects to Law Debenture's request for reimbursement of professional fees in its entirety.

## CONCLUSION

34.      The Debtor objects to the fees and expenses of Law Debenture as Law Debenture has not substantially contributed to the Debtor's case under Section 503(b) of the Bankruptcy Code. Moreover, Law Debenture failed to present any evidence to establish that its request for fees and expenses of $1,025,070.36 is reasonable and resulted in actual and demonstrable benefit

---

[17] See COLLIER ON BANKRUPTCY, ¶ 503.11[2] ("[a]n entity cannot seek reimbursement of professional fees under section 503(b)(4) unless it has previously qualified or concurrently qualifies for reimbursement of expenses under section 503(b)(3)").
[18] In the November 30 Letter and the December 21 Letter, the Debtor requested detailed analysis of the services provided in each of the categories provided by Law Debenture including breakouts of detailed time descriptions by category and professional service provided.

to the Debtor's estate.  Therefore, the Debtor requests that the Court deny Law Debenture's Fee

and Expense Request in its entirety.

Dated:  Wilmington, Delaware
       December 31, 2004

                        Respectfully submitted,

                        PAUL, HASTINGS, JANOFSKY & WALKER LLP
                        600 Peachtree Street
                        Suite 2400
                        Atlanta, GA 30308
                        Jesse H. Austin, III
                        Karol K. Denniston
                        Telephone: (404) 815-2400

                        And

                        GREENBERG TRAURIG, LLP

                        Scott D. Cousins (No. 3079)
                        Victoria Watson Counihan (No. 3488)
                        William E. Chipman, Jr. (No. 3818)
                        The Brandywine Building
                        1000 West Street, Suite 1540
                        Wilmington, DE 19801
                        Telephone: (302) 661-7000

                        Counsel for NorthWestern Corporation

17