**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>NORTHWESTERN CORPORATION,<br><br>Debtor. | Chapter 11<br>Case No. 03-12872 (JLP) |
| LAW DEBENTURE TRUST COMPANY OF NEW YORK,<br>Appellant<br><br>v.<br><br>NORTHWESTERN CORPORATION,<br><br>Appellee. | Civ. Action No. 05-603-JJF |

## APPELLANT REPLY

Law Debenture Trust Company of New York, as Indenture Trustee By its Attorneys,

SMITH, KATZENSTEIN & FURLOW LLP
Kathleen M. Miller (DE No. 2898)
Etta R. Wolfe (DE No. 4164)
800 Delaware Avenue, 10th Floor
Wilmington, DE 19899 (Courier 19801)
Telephone: (302) 652-8400
Facsimile: (302) 652-8405

- and -

NIXON PEABODY LLP
Amanda D. Darwin (BBO No. 547654)
John V. Snellings (BBO No. 548791)
Lee Harrington (DE No. 4046)
Christopher M. Desiderio
100 Summer Street
Boston, MA 02110
Telephone: (617) 345-1000
Facsimile: (617) 345-1300

Dated: March 16, 2007

# INDEX


I. PRELIMINARY STATEMENT ........................................ 1

II. FACTS ........................................ 1

III. ARGUMENT ........................................ 2

1. The Second Amended Plan Called for Payment of Fees in Full ........................................ 2

2. The Bankruptcy Court's Decision is Internally Inconsistent And Failed to Take Into Consideration Fees and Expenses Which the Debtor Never Objected To ........................................ 3

3. The Indenture Trustee Substantially Contributed to the Debtor's Estate. ........................................ 7

4. Debtor's Objection was Inconsistent with the Treatment of Other Indenture Trustees in the Bankruptcy Case. ........................................ 13

IV. CONCLUSION ........................................ 15

# TABLE OF AUTHORITIES

## CASES

In re Revere Cooper and Brass Incorporated, et al., 60 B.R. 892 (Bankr. S.D.N.Y. 1986) ........ 9

## FEDERAL STATUTES

11 U.S.C. § 503 ........ *passim*

11 U.S.C. § 704 ........ 11

11 U.S.C. § 501 ........ 10

11 U.S.C. § 1107 ........ 11

## I. PRELIMINARY STATEMENT

Law Debenture Trust Company of New York, as Indenture Trustee and Guarantee Trustee, by and through its undersigned counsel, submits its reply brief in support of its appeal of the Order Granting in Part and Denying in part the Request for Payment of Administrative Expenses pursuant to 11 U.S.C. § 503 by Law Debenture Trust Company of New York as successor trustee for the 8.45% Cumulative Preferred, Series A (the "Administrative Expense Order"), which was entered by United States Bankruptcy Judge John L. Peterson on July 5, 2005. Appellant Designation No. 95.

As fully discussed in the Indenture Trustee's Appellant Brief, the Administrative Expense Order was clearly erroneous and arbitrary. The Administrative Expense Order does not address the fact that the Indenture Trustee's efforts substantially contributed to the Debtor's estate; that the Second Amended Plan called for the payment of fees and expenses in full; and that the treatment of Law Debenture is inconsistent with the treatment of other indenture trustees in the bankruptcy case and the treatment required by the terms of the QUIPS Indenture. Accordingly, the Indenture Trustee requests that this Court vacate the Administrative Expense Order and grant its fees and expenses in full.

## II. FACTS

As the Court is already familiar with the history of this case, and Law Debenture, the successor Trustee (in such capacity, the "Indenture Trustee" or "Law Debenture") to the Bank of New York, under that certain Indenture dated as of November 1, 1996, as amended, (the "QUIPS Indenture") pursuant to which the Montana Power Company ("Montana Power") issued certain 8.5% Junior Subordinated Debentures (the

"QUIPS Debentures") to Montana Capital I (the "Property Trust") has already fully set out the relevant facts in this case in its brief filed with this Court on November 22, 2006 (the "Appellant Brief"), Law Debenture fully incorporates the facts in its Appellant Brief by reference as if fully set forth herein.[1]

## III. ARGUMENT

The Bankruptcy Court erred in entering the Administrative Expense Order because as such the order does not address the facts that: the Second Amended Plan called for the payment of fees in full; the Indenture Trustee's efforts substantially contributed to the Debtor's estate; and the treatment of the Indenture Trustee is inconsistent with the treatment of other indenture trustees in the bankruptcy case along with other details more fully discussed herein. Accordingly, the Indenture Trustee requests that this Court vacate the Administrative Expense Order and grant the Indenture Trustee's fees in full. In addition to the arguments laid out below, Law Debenture fully incorporates its arguments presented in its Appellant Brief by reference as if fully set forth herein.

### 1. The Second Amended Plan Called for Payment of Fees in Full.

The solicitation of acceptance for the Second Amended Plan was premised on the representations of the Debtor that the indenture trustees' fees and expenses would be paid in full and would not effect the recoveries of the QUIPS holders. The Plan proposed to include the payment of indenture trustee's fees and expenses as part of the distributions to be made to holders of claims and solicited acceptances to the Plan

[1] All capitalized terms not otherwise defined herein shall have the meaning prescribed to them in the Appellant's Brief.

from these holders by proposing distributions of New Common Stock in the Reorganized Debtor net of accrued indenture trustee fees and expenses.

Notwithstanding the plain language of the Plan and the Debtor's own representations to the Bankruptcy Court that the TOPrS and the QUIPS would "receive the same distribution if each respective class accepts the Plan," the Debtors disavowed any liability whatsoever for the Indenture Trustee's fees and expenses in the bankruptcy case.

Instead, the QUIPS holders received dramatically less than the TOPrS holders because the Indenture Trustee was required to seek reimbursement through its charging lien from the distributions of New Common Stock made to QUIPS holders.

The Debtors' opportunism and cavalier disregard of representations made to the Bankruptcy Court in October 2004 is further highlighted by its treatment of the fees and expenses of the other indenture trustees in this case. All of the fees and expenses of the other indenture trustees in this case were paid in full by the Debtor's estate on the Effective Date and could not and were not subject to review under Section 503(b). Because those indenture trustees were already compensated for the very work for which the Indenture Trustee seeks compensation, they did not object to the Second Amended Plan and did not continue to prosecute litigation following confirmation of the Plan.

**2. The Bankruptcy Court's Decision is Internally Inconsistent And Failed to Take Into Consideration Fees and Expenses Which the Debtor Never Objected To.**

In its decision, the Bankruptcy Court allowed two categories of fees sought by the Indenture Trustee: $67,088.66 for fees incurred while participating on the Committee and $45,000 for the annual administration fee. Appellant Designation No. 95.

However, upon further review of the entire Fee Application, it is clear that the Court's denial of certain categories of fees and expenses were clearly erroneous in that the denial was inconsistent with the Court's rationale for allowing these fees and with the fact that the Debtor had no real objection to other fees.

**a. Local Counsel Fees: $8,047.50**

On a closer reading, the Debtor's objection is devoid of any specific reference of an objection to the Indenture Trustee's local counsel fees and expenses. Indeed, they were a mere $8,047.50. The Debtor's blunderbuss objection and the Court's sweeping opinion simply ignored the simple fact that these fees were a necessary expense and should have been allowed as a matter of course. The denial is completely without merit. Pursuant to the local rules, the Indenture Trustee was required to retain local counsel in order to participate in the Bankruptcy Case. The Indenture Trustee could not have participated on the Committee, appeared before the Bankruptcy Court, or made any other contribution to the estate without the retention of local counsel. It is absurd for the Debtor to dispute this *de minimis* expense which is clearly required by law. Therefore, the fees attributed to local counsel should be allowed in their entirety.

**b. The filing of Proofs of Claims and Review and Analysis of General Bankruptcy Matters: $32,113.50 and $88,735.00, respectively**

The Bankruptcy Court also denied fees in the amount of $32,113.50 which were incurred in by the Indenture Trustee in preparing proofs of claim and fees for $88,735.00 for the review and analysis of general bankruptcy matters. If the Indenture Trustee's time on the Creditor's Committee is reimbursable—certainly fulfilling his duties in filing proofs of claims on behalf of the QUIPS is as well. The Indenture Trustee's preparation of these claims resulted in a clear and recognizable benefit to the

estate as it relieved the thousands of holders of QUIPS from having to prepare and file individual proofs of claim, which in turn (i) relieved the Debtor from having to process all of those individual proofs of claim; (ii) relieved the Debtor from providing certain notices to each of the QUIPS holders during the course of the case; and (iii) relieved the Debtor from having to make individual distributions to those holders. Therefore, the Indenture Trustee's fees incurred in connection with the preparation of proofs of claim should be allowed in full.

Further, in a December 21, 2004 letter, the Debtor stated that the fees associated with the review and analysis of general bankruptcy matters and the preparation of proofs of claim seemed reasonable and requested further documentation to be provided. See December 21, 2004, Letter from Karol K. Denniston. Appellant Designation No. 76, Exhibit F. Thereafter, the Indenture Trustee provided the Debtor with the requested information, after which point the Debtor never raised any further objection to such fees. Accordingly, the fees incurred in connection with the review and analysis of general bankruptcy matters and the preparation of proofs of claim should be allowed in their entirety.

**c. Communications with QUIPS Holders and Officer Fees: $65,326.50 and $129,564.87, respectively**

Likewise, the Bankruptcy Court's denial of the Indenture Trustee's fees in the amount of $65,326.50, which were amassed in connection with communications with the QUIPS Holders and the Law Debenture Officer Fees in the amount of $129,564.87 are without basis. The Court allowed Law Debenture's fees in connection with its participation on the Committee and its annual administration fee on the basis that such actions "substantially contributed to the estate." Appellant Designation No. 95. It is

unfathomable that the Court could allow fees for the annual administration fee and deny the fees that are associated with such administration in the same breath. These fees were the result of necessary tasks of the Indenture Trustee and are directly related to the administration of QUIPS Indenture. There is no rationale that justifies such an inconsistent determination with respect to the Indenture Trustee's fees.

Further, these fees provided a clear and recognizable benefit to the estate in that it alleviated the Debtor from having to communicate with the individual QUIPS holders throughout the duration of this case. In addition, the Indenture Trustee was required to provide these services pursuant to the terms of the indenture itself, which in turn required the Debtor to pay for such services. The Debtor is a party to the QUIPS Indenture and willingly obligated itself by its signature to pay, in accordance with that QUIPS Indenture, all of the fees accrued thereunder by the Trustee, and to reimburse all of the Indenture Trustee's reasonable fees and expenses, including the fees and expenses of its counsel. It is clear that by the terms of the QUIPS Indenture, these fees would have been incurred, and would have been reimbursed by the Debtor outside of the bankruptcy context and the Debtor has not provided any reason as to why these fees should not be paid in the bankruptcy context. Again, the inconsistency in the Bankruptcy Court's decision to allow fees associated with Committee membership and the administrative fee but disallow the fees associated with those very activities requires that the Administrative Order be vacated and those fees for communication with the QUIPS and the Law Debenture Officer Fees be allowed in full.

d. **Expense Reimbursement: $21,994.49**

Further, the expense reimbursement of $21,994.49 sought by the Indenture Trustee was likewise denied. These costs expended by the Indenture Trustee were reasonable and necessary in its participation in the Bankruptcy Case and were required as a direct result of its fiduciary duties under the applicable Indenture and its participation on the Committee. There has been no argument, let alone any showing, that the requested expense reimbursements are were unnecessary or did not contribute to the Debtor's estate, and therefore, the Indenture Trustee's request for the reimbursement of its expenses should be allowed in their entirety.

3. **<u>The Indenture Trustee Substantially Contributed to the Debtor's Estate.</u>**

The Appellee argues that the Appellant "did not substantially contribute to the Debtor's case" because the "Appellant's activities in this case were detrimental to the Debtor and other creditors of the Debtor's estate, were intended to harass the Debtor in furtherance of Appellant's litigation . . ." Appellee Brief, pgs. 19-22. What the Appellee fails to mention is that the basis for the QUIPS litigation was a direct result of the treatment of the QUIPS claims under the Second Amended Plan.

If Law Debenture and the QUIPS holders had been granted the same treatment as the TOPrS holders under its Second Amended Plan all of the QUIPS Litigation could have been avoided. The Debtor's own actions prescribed Law Debenture's conduct in this case. It is clear that the fees the Indenture Trustee accumulated are a direct result of its fiduciary duty to the QUIPS holders and because of the role that the Debtor made Law Debenture play.

The Appellee further ignores that fact that despite the adversarial environment created as a result of the Second Amended Plan, the Indenture Trustee was successful in delivering approximately $20 million out of the $70 million QUIPS notes to the settlement proposed under the Plan. The Indenture Trustee's efforts were directly responsible for the Debtor's ability to settle approximately 25% of the outstanding QUIPS claims. This wrangling of the QUIPS holders to get this consent provided an undeniable benefit to the Debtor's estate as discussed in further detail below. Further, none of the fees being requested were incurred on behalf of Magten as the Appellee seems to suggest in its brief. All of these fees were on account of and on behalf of the QUIPS holders as a whole.

As stated in the Appellant Brief, it is clear that in each of its actions in this case, the Indenture Trustee was not acting for its own benefit. The Indenture Trustee was acting solely as a fiduciary for the holders of the QUIPS and its actions provided a benefit received by the estate. It is also clear that the Indenture Trustee's actions assisted the Debtor in confirming a Chapter 11 plan for the reasons stated above. As a result, the fees and expenses of the Indenture Trustee are allowable under § 503(b) (3) (d) and the fees and expenses of its counsel are reimbursable under § 503(b) (4).

As more fully discussed in the Appellant Brief, over the course of its involvement with the NorthWestern Chapter 11 reorganization proceeding, Law Debenture, in its capacity as Indenture Trustee, has contributed to the reorganization process similar to customary contributions made by indenture trustees in such proceedings. Accordingly, the fees and expenses it has incurred in the course of the

Chapter 11 case are appropriately paid pursuant to the Plan or as an expense of administration.

The Debtor's own actions reveal that it viewed the role of the Indenture Trustee for the QUIPS as providing a substantial benefit to the reorganization process. The Debtor paid The Bank of New York, Law Debenture's predecessor as Indenture Trustee for the QUIPS, all of its fees and expenses associated with the QUIPS Indenture including those stemming from its own conflict of interest that let to the necessary successorship to Law Debenture. There is simply no credible reason why Law Debenture should be treated any differently than The Bank of New York relative to this or any other aspect of its services.

The Debtor has admitted the importance and thereby the benefit to the Debtor that the Indenture Trustee is providing by continuing to serve as Indenture Trustee for the QUIPS. That admission is evident in the very terms of the Second Amended Plan of Reorganization that specifically requires that the Indenture Trustee continue to serve post-confirmation as Indenture Trustee for the QUIPS. The Second Amended Plan states, and the Order Confirming the Second Amended Plan repeats, that "... [the] QUIPS Indenture and all other agreements that govern the rights of holders of the Unsecured Subordinated Notes represented by the QUIPS Notes shall continue in effect solely for the purposes of allowing the Indenture Trustee, agent or servicer thereunder to make the distributions to be made on account of such Claims under the Plan, as provided in the Plan, and allowing such Indenture Trustee, agent or servicer to enforce its Indenture Trustee Charging Lien, as more particularly described in Section 5.18 of the Plan." See Appellant Designation No. 54, Section 5.18 of the Plan and pages 67-68 of the

Confirmation Order. [2] The Confirmation Order goes on to provide that, so long as the Indenture Trustee shall remain the plaintiff in the Adversary Proceeding, the QUIPS holders need not join the lawsuit, thereby ratifying and confirming the Indenture Trustee's ongoing role as class representative even after the Effective Date.

The Debtor is a party to the QUIPS Indenture and willingly obligated itself by its signature to pay, in accordance with that QUIPS Indenture, all of the fees accrued thereunder by the Trustee, and to reimburse all of the Indenture Trustee's reasonable fees and expenses, including the fees and expenses of its counsel, regardless of a substantial contribution standard. In the Plan, the Debtor chose to require that the Indenture Trustee continue to serve as such. It is the height of hypocrisy to require servitude on the one hand and refuse compensation for the services required on the other hand. It is the inescapable conclusion that these services have been, and must continue to be, a substantial benefit to the Debtor and to its reorganization.

Section 501 of the Bankruptcy Code authorizes an indenture trustee to file a proof of claim; yet, the Administrative Expense Order denies fees and expenses associated with filing of such proofs. The Indenture Trustee Law filed a proof of claim in this case on behalf of the holders of QUIPS which relieved the thousands of holders of QUIPS from having to prepare and file individual proofs of claim and relieved the Debtor from having to process all of those individual proofs of claim, from providing certain

2 Courts have likewise found the routine services of an indenture trustee, rendered in accordance with the trust indenture, to be compensable as ordinary expenses of administration under § 503(a)(1) without the necessity of a showing of substantial contribution. See In re Revere Cooper and Brass Incorporated, et al., 60 B.R. 892, 896, Fn. 4 (Bankr. S.D.N.Y. 1986) ("Although routine, the court is of the view that the amounts sought as administrative fees ... and agency fees ... are compensable as ordinary expenses of administration under Code § 503(a)(1) without the necessity of a showing of substantial contribution. This is because these fees relate to ordinary and ongoing services necessary for the recordkeeping aspects of a public issue").

notices to each of the QUIPS holders during the course of the case and from now making individualized distributions to those holders. In light of the expense that the Debtor would otherwise incur to accomplish these tasks in favor of thousands of QUIPS holders, the estate is substantially benefited by the Indenture Trustee performing these tasks and is not being harmed by having to reimburse Law Debenture for the fees and expenses that it incurred in filing a proof of claim on behalf of the holders of QUIPS. Thus, the denial of the Indenture Trustee's fees and expenses relating to the filing of proof of claim was erroneous and should be reviewed as it clearly and undeniably provided a substantial benefit to the estate.

The continued existence of the QUIPS Indenture, as required by the Debtor both during this reorganization case and now post-confirmation, requires that the Indenture Trustee continue to perform the services required of it by the QUIPS Indenture. These services include communication with the holders of QUIPS. Had it not been for the participation by the Indenture Trustee, the Debtor-in-Possession, its counsel or the Creditors' Committee's counsel, would have been required to field these inquiries directly.[3] See § 704(7) of the Bankruptcy Code, made applicable to a Debtor-in-Possession by § 1107(a). In fact, both the attorneys for the Debtor and the Attorneys for the Creditors Committee fielded inquiries from creditors and asked the Bankruptcy Court

---

[3] See In re Essential Therapeutics, Inc., et al., Case # 03-11317, page 10 of the Memorandum Opinion of J. Walrath issued on April 21, 2004 (in allowing partial payment to a preferred stockholder who sought reimbursement for his fees and expenses including fees and expenses incurred by his counsel in a Chapter 11 reorganization case, the Court states that "Without this assistance, the Debtor's counsel would have had to devote significant time and resources to perform these services while they were busy with other matters. As a result, the Debtors were able to cut costs by focusing their efforts on their areas of expertise and allowing the Preferred Stockholders to assist where appropriate and beneficial to the estate").

to reimburse them for that service. Further, both the Debtor and Creditors Committee referred inquiries from QUIPS holders to Law Debenture.

It is unfair and discriminatory to allow payment as an administrative expense for the same role if played by a debtor's counsel or counsel to a creditors' committee, but to refuse that same treatment to an indenture trustee. By relieving the Debtor's counsel and counsel to the Creditors' Committee from this task, those key parties in the reorganization effort were freed up to focus their attention on the tasks at hand, i.e. the reorganization of the Debtor. If those attorneys had been required to deal with these creditor inquiries, which they would have been required to do, they surely would have sought compensation for the effort and been paid as an administrative expense for having done so. Therefore, it is clear that the estate was benefited by Law Debenture fielding such inquires. Accordingly, Jude Peterson's denial of those fees and expenses should be reversed.

By far, the most activity required of the Indenture Trustee revolved around the Debtor's efforts to formulate, negotiate and confirm a Chapter 11 Plan. The role of the Indenture Trustee in this plan process is informative on the issue of whether it provided a substantial benefit to the estate. The Indenture Trustee was not a creditor of the Debtor. Its only role was as the duly appointed representative for the holders of the QUIPS in the Chapter 11 proceeding. Accordingly, in pursuing the plan negotiation and confirmation process, Law Debenture was not working for its own benefit. The Indenture Trustee wanted to assure that whatever Plan resulted from the process was confirmable. In many of its positions taken during the Plan negotiation and approval process, the Indenture Trustee did not pursue issues raised and pursued by Magten.

However, the initial Plan of Reorganization proposed by the Debtor was simply not confirmable. Filing objections to this Plan allowed the Debtor to identify how the Plan needed to be changed in order to achieve confirmation.

A significant number of the holders of QUIPS did vote to accept the Second Amended Plan of Reorganization as a result of the Indenture Trustee's efforts. Further, the Indenture Trustee worked to make the plan as good as possible and still confirmable so that all of the holders, whether they voted to accept or reject the plan, are benefited. This is exactly the role performed by Law Debenture in this case and that performance provided a substantial contribution to the reorganization process.

Finally, as discussed in greater detail in the Appellant Brief, Law Debenture is entitled to the fees and expenses incurred in filing and prosecuting a Complaint against the Debtor for a fraudulent transfer. It has been noted that taking a position adverse to the estate does not automatically disqualify a creditor or its representative from making a substantial contribution to the reorganization effort and for the reasons fully set out in the Appellant Brief, the Indenture Trustee's fees accumulated in connection with this task should be allowed in full.

4. **Debtor's Objection was Inconsistent with the Treatment Of Other Indenture Trustees in the Bankruptcy Case.**

As more fully discussed in the Appellant's Brief, the Bankruptcy Court's disallowance of the Indenture Trustee's fees and expense was arbitrary and capricious when compared to the treatment of the fees and expenses of other indenture trustees involved in the Bankruptcy Case.

The Appellee argues that the covenant of good faith simply does not apply to a plan of reorganization. It is clear that the Debtor must comply with the terms and

provisions of a confirmed plan of reorganization. To exclude a plan from the requirement of good faith and fair dealing would mean that a creditor would have little or no motivation to participate in the Plan process if a Debtor did not have to act in "good faith." Such result would be inapposite to the spirit of the Bankruptcy Code.

Under the Plan, the payment of the Indenture Trustee's reasonable fees and expenses and the recoveries ultimately obtained by QUIPS holders are not subject to the Debtor's whim. Any exercise of the Debtor's right to object to the Indenture Trustee's fees and expenses is subject to the covenant of good faith and fair dealing imposed by applicable federal and state law. That covenant prohibits the Debtor from interposing opportunistic, improperly motivated, bad faith objections calculated to gain leverage in pending litigation with the Indenture Trustee and the QUIPS holders who elected Option 2 under the Plan.

The Debtor's objection to Law Debenture's fees and expenses is plainly contrary to the covenant of good faith imposed by controlling federal and state law. The scope of the Debtor's objection to the Indenture Trustee's fee and expenses, the dramatically disparate treatment of Law Debenture's fees and expenses in this case, the substantial impact on recoveries to QUIPS holders if the Debtors objection was sustained, the absence of any other objection to those fees by the Fee Auditor, Plan Committee or any other party-in-interest and, lastly and perhaps most compellingly, the Debtor's admitted failure to even review the invoices and other documents the Indenture Trustee provided it in support of its fees and expenses, all lead to the inescapable conclusion that the Debtor's insistence that the Bankruptcy Court determine the amount of fees and expenses the estate pays Law Debenture on behalf of QUIPS holders under a "substantial

contribution" standard is improperly motivated and designed solely to obtain an unfair advantage in ongoing litigation with QUIPS holders who elected Option 2 under the Plan.

## IV. CONCLUSION

Accordingly, for the reasons set forth herein and in its Appellant Brief, it is respectfully submitted that this Court enter an order overruling the Administration Expense Order entered by the Bankruptcy Court enter an order allowing the Indenture Trustee's fees and expenses in full and granting such other and further relief as this Court deems just and proper.

Dated: March 16, 2007
Wilmington, Delaware

SMITH, KATZENSTEIN & FURLOW, LLP

Kathleen M. Miller (DE No. 2898)
Etta R. Wolfe (DE No. 4164)
800 Delaware Avenue, 10th Floor
Wilmington, DE 19899 (Courier 19801)
Telephone: (302) 652-8400
Facsimile: (302) 652-8405

- and –

NIXON PEABODY LLP
Amanda D. Darwin (BBO No. 547654)
John V. Snellings (BBO No. 548791)
Lee Harrington (BBO No. 548791)
Christopher M. Desiderio
100 Summer Street
Boston, MA 02110
Telephone: (617) 345-1000
Facsimile: (617) 345-1300

Counsel for Law Debenture Trust Company of New York, as Trustee and not individually